UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GREENWICH TAXI, INC., ACE TAXI SERVICE, INC., CASINO CAB COMPANY, INC., CURTIN MOTOR LIVERY SERVICE, INC., EAST HARTFORD CAB COMPANY, INC., EXECUTIVE 2000 TRANSPORTATION, LLC, FARMINGTON VALLEY CAB, LLC, GROTON CAB COMPANY, INC., LASSE'S LIVERY SERVICE, INC., SUBURBAN TRANSPORTATION, INC., TAXICABS AND LIVERY COUNCIL OF CONNECTICUT, INC., THE WATERBURY YELLOW CAB & SERVICE COMPANY, INC., TORRINGTON VALLEY CAB, LLC, UNION-LYCEUM TAXI COMPANY, INC., and YELLOW CAB COMPANY OF NEW LONDON & GROTON, INC. <br>           Plaintiffs <br><br>    v. <br><br> UBER TECHNOLOGIES, INC. and LYFT, INC. <br>           Defendants | C.A. No.: 3:14-cv-733 (AWT) <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> JUNE 10, 2014 |

### RICO CASE STATEMENT

Pursuant to this Court's Standing Order in Civil RICO Cases, the Plaintiffs in the above-captioned matter hereby submit the following RICO Case Statement.

1. *The alleged unlawful conduct that is claimed to be in violation of 18 U.S.C. §§ 1962(a), (b), (c) and/or (d).*

The Plaintiffs assert claims for violations of 18 U.S.C. §§ 1962(a), (b) and (c).

(a)     Since April 24, 2014, when the Defendants began their operations within the State of Connecticut, they have received and continue to receive income from their racketeering activity, and use this income to establish and operate the larger enterprises affecting interstate

1

commerce. Both Defendants have been using interstate wires including, but not limited to, the use of mobile communication networks, wireless communication networks, credit card processing transactions, bank to bank payments, and transfers of funds, to conduct their respective enterprises. The Defendants use the Internet to falsely market their services (as described more fully in the complaint); use wireless and other mobile communication services to provide their unlawful services; and use smartphones, mobile communications, credit card processing transactions, bank to bank payments, and transfers of funds to receive payments from customers and provide payments to their employees and/or drivers.

By way of the foregoing conduct, the Defendants have violated and are continuing to violate the federal Wire Fraud statute, 18 U.S.C. § 1343. Through their repeated and regular wire fraud violations, the Defendants have been deriving income by enlisting layperson drivers who do not possess public service licenses and lawfully operating Connecticut taxi and livery drivers to transport the Defendants' customers, thereby diverting all credit card payments by the customers through the Defendants' own collections systems, along with collecting illegal fees from those payments.

The Defendants then use a portion of the income illegally derived from the diverted Connecticut customer's fares in their ongoing operation of their unlawful transportation systems, which, upon information and belief, are engaged in and affect interstate commerce through the making of trips between states, such as Connecticut and New York. The Defendants' investment of the proceeds of their racketeering activity in their ongoing operations causes injury to the Plaintiffs by utilizing greater marketing and technological advances to dispatch on demand taxi and black car service, which inevitably leads to greater interest in and the expansion of the Defendants' network of affiliated vehicles. This network of illegal taxi or "gypsy" operators to

substitute for lawfully operating taxi and livery drivers diverts business from licensed and legally operating taxi and livery vehicles that are operated under taxi and livery authorities leased from the Plaintiffs, causing substantial economic injury to the Plaintiffs and their drivers.  The Defendants' conduct in using illegal profits from diverted Connecticut taxi and livery fares to develop their own fleets of Defendant-affiliated vehicles that take business from licensed Connecticut taxi and livery vehicles, violates 18 U.S.C. § 1962(a), which makes it "unlawful for any person who has received any income derived … from a pattern of racketeering activity … to use or invest … any part of such income" in the "operation of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

  (b)  The Defendants have acquired or maintained their interest or control over the enterprises that affect interstate commerce by continuing to operate through a pattern of racketeering activity, as described above.  The Defendants use fraudulent misrepresentations as to the legality of their operations, the existence and extent of insurance coverage, the safety of their vehicles and drivers, and their status as "ridesharing" companies, to expand their Connecticut customer base and increase the demand for the Defendant-affiliated vehicles in Connecticut.  This increased demand permits the Defendants to induce lawfully operating taxi and livery drivers in Connecticut, including some drivers operating under taxi and livery authorities leased from the Plaintiffs, to enter into contracts with the Defendants.  The number of the Defendant-affiliated vehicle drivers in Connecticut is expanding and the Defendants are therefore increasing their influence as a public transportation service in Connecticut, to the detriment of lawfully operating companies such as the Plaintiffs.

The foregoing conduct of the Defendants violates 18 U.S.C. § 1962(b), which "prohibits any person from acquiring or maintaining … any … control over an enterprise through a pattern of racketeering activity," thereby causing substantial economic harm to the Plaintiffs.

(c)     The Defendants, through the operation of their own enterprises, derive income, which is then used to establish and operate the larger enterprises affecting interstate commerce.  The Defendants have insinuated themselves into the operations of approved Connecticut taxi and livery service operators, including the Plaintiffs and their drivers, by unlawfully generating demand for its services in Connecticut, as described above, and entering into contracts with a growing number of lawfully operating Connecticut taxi and livery drivers.  In doing so, the Defendants' are violating 18 U.S.C. § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  In so doing, the Defendants and their drivers have caused significant economic harm to the Plaintiffs.

2. *The identity of each defendant and the alleged misconduct and basis of liability of each defendant.*

    Uber Technologies, Inc. – 800 Market Street, San Francisco, California 94103

    Lyft, Inc. – 548 Market Street, Suite 68514, San Francisco, California 94104

With regard to the alleged misconduct and basis of liability of the Defendants, please see the description set forth in Section 1 above.

3. *The identity of the alleged wrongdoers, other than the defendants listed in response to paragraph 2, and the alleged misconduct of each wrongdoer.*

The Defendants' principals, owners, employees, representatives and other associated entities, including, but not limited to, any and all of the following:

Travis Kalanick – Co-Founder and Chief Executive Officer at Uber

Ryan Graves – Co-Founder and Head of Operations at Uber

Oscar Salazar – Advisor and member of founding team at Uber

Conrad Whelan – Systems Engineer and member of founding team at Uber

Logan Green – Co-Founder and Chief Executive Officer at Lyft

John Zimmer – Co-Founder of Lyft

The founders have engaged and continue to engage in misconduct by establishing their rogue taxi and livery operations and continuing to act in such ways to further the operation of each of the Defendant companies despite the fact that they knew or should have known and/or acted in reckless disregard of the fact that doing so would violate a multitude of state and federal laws and regulations and local ordinances across the country – and specifically in Connecticut – concerning the operation of transportation-for-hire to the public.  Upon information and belief, despite both companies being the subject of cease and desist orders, fines and penalties in other states, and the fact that the above-named individuals know or should know of such orders, fines and penalties, they have continued to act so as to benefit and further each of the Defendants' goals and businesses with little or no regard for the potential consequences of doing so.

4. *The identity of the alleged victims and the manner in which each victim was allegedly injured.*

The victims are each of the Plaintiffs, their owners, drivers, employees and other representatives. The Plaintiffs are legally established taxi and livery companies, who operate in the State of Connecticut, and who have invested substantial capital in complying with a compendium of federal, state and local laws, regulations and rules developed over the last 90 years, which protect customers, ensure public safety and reasonable fares, and provide non-discriminatory service. Each of the Plaintiffs, their owners, drivers and employees and other representatives, have been, and continue to be, injured by the Defendants' illegal racketeering operations in all of the following ways:

First, the Defendants' investment of the proceeds of their racketeering activity in their ongoing operations causes injury to the Plaintiffs by allowing them to utilize greater marketing and technological advances, which inevitably leads to greater interest in and the expansion of the Defendants' network of affiliated rogue taxi and livery operators, the expansion of their Connecticut customer base and increase the demand for the Defendant-affiliated rogue taxi and livery vehicles in Connecticut. This network of rogue taxi and livery operators divert business from licensed and legally operating taxi and livery vehicles whose authorities are leased from the Plaintiffs, causing substantial economic injury to the Plaintiffs and their drivers.

Second, as a direct result of the Defendants' racketeering activities, the Defendants have insinuated themselves into the operations of approved Connecticut taxi and livery service operators, including the Plaintiffs and their drivers, by unlawfully generating demand for its services in Connecticut and entering into contracts with a growing number of lawfully operating Connecticut taxi and livery drivers. Additionally, the income derived from the racketeering

activity is used to establish and operate the larger enterprises affecting interstate commerce, to the detriment of the Plaintiffs.

5. *A description of the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim, which shall include the following information:*

    a. *The alleged predicate acts and the specific statutes which were allegedly violated;*

The Defendants' predicate acts involve wire fraud via the Internet and other mobile communications systems to transmit fraudulent misrepresentations as to the legality of their operations, the existence and extent of insurance coverage, fares, the safety of their vehicles and drivers, and their status as "ridesharing" companies, to expand a fleet of Defendant-affiliated vehicles, Connecticut customer base and increase the demand for the Defendant-affiliated vehicles in Connecticut. The Defendants' improper and illegal conduct constitutes a continuous and ongoing violation of 18 U.S.C. § 1343.

The wire fraud goes beyond the Defendants' use of the Internet and other mobile communications systems to make fraudulent misrepresentations, and also beyond credit card processing transactions, bank to bank payments, and transfers of funds to receive payments from customers and provide payments to their employees and/or drivers. For example, the use of the applications themselves demonstrate additional predicate acts of wire fraud. Both the Defendants' drivers and the users/customers begin by downloading the Defendants' applications to his or her phone. The driver opens the application. At some point thereafter the user opens the application, which displays a map of the user's location (or designated pickup point), displays the available vehicles in the neighborhood, and states how long the user will have to wait for each type of car. Depending on how much the user wants to spend and how many cars in each price range are nearby, the user then chooses the type of car he or she wants. The

Defendants' out-of-state computer systems then select the Defendant-affiliated car and send a message to the driver notifying the driver of the user's on demand "virtual hail," commonly known as a "flag down." The user is provided with the driver's name and photograph, and receives a text message with the driver's projected arrival time and cellular phone number. It is expected that discovery will uncover more detail as to how the predicate acts are actually committed.

> b. *The dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts;*

The Defendants' improper and illegal conduct has been continuous and ongoing since the Defendants began operating in Connecticut in April of 2014. With respect to specific dates, the Plaintiffs intend to conduct discovery, through which it is anticipated that more precise dates and instances will be able to be provided, but individual customers can and do access the Defendants' phone applications and Internet websites at all times of the day.

The participants in the predicate acts are the corporate Defendants, their owners, agents, employees and other representatives, along with the enlisted participation of a number of Connecticut resident drivers and legally operating taxicab and livery drivers.

The Defendants' predicate acts primarily involve the use of the Internet and other mobile communication systems to make fraudulent misrepresentations as to the legality of their operations, the existence and extent of insurance coverage, fares, the safety of their vehicles and drivers, the reasonableness of their rates and their status as "ridesharing" companies.

    c. *If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made shall be identified;*

The Defendants' improper and illegal conduct has been continuous and ongoing since the Defendants began operating in Connecticut in April of 2014. For further information, please refer back to descriptions provided in subsections (a) and (b) of this Section 5.

    d. *Whether there has been a criminal conviction for violation of the predicate acts;*

No.

    e. *Whether civil litigation has resulted in a judgment in regard to the predicate acts;*

The Plaintiffs are not aware of any judgment entered in any state as of this date regarding the predicated acts.

    f. *The manner in which the predicate acts form a "pattern of racketeering activity"; and*

Please see the descriptions set forth in Section 1 and subsection (a) of Section 5 above.

    g. *Whether the alleged predicate acts relate to each other as part of a common plan, and if so, a detailed description of the common plan.*

Please see the description set forth in Section 1 above. The Defendants' goal is to invest the illegally acquired income into the expansion of the Defendant-affiliated vehicles and its own business enterprises in an effort to eliminate competition offered by authorized and legally operating Connecticut taxicab and livery drivers and to create a deregulated transportation system in Connecticut despite the Legislative enactments securing and preserving a regulated taxi and livery industry in the state for the protection of consumers.

6. *A detailed description of the alleged enterprise for each RICO claim, which shall include:*

   a. *The names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise;*

Uber Technologies, Inc. and Lyft, Inc., each is an enterprise itself.

   b. *The structure, purpose, function and course of conduct of the enterprise;*

Please see the description set forth in Section 1 above.

   c. *Whether any defendants are employees, officers or directors of the alleged enterprise;*

No.

   d. *Whether any defendants are associated with the alleged enterprise;*

Yes, the Defendants each constitute an enterprise.

   e. *Whether plaintiff contends that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise; and*

Each of the Defendants is an enterprise itself.

   f. *If any defendants are alleged to be the enterprise itself, or members of the enterprise, an explanation as to whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.*

Please see the description set forth in Section 1 above.  The Defendants, along with their principals, owners, employees and other representatives, including, but not limited to, those referenced in Section 3 above, are perpetrators of the racketeering activities.

7. *Whether plaintiff contends that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.*

The Defendant enterprises, as part of their regular activities and business, engage in a pattern of racketeering activity with respect to the taxi services they provide.

8.  *The alleged relationship between the activities of the enterprise and the pattern of racketeering activity, including a description of the manner in which the racketeering activity differs, if at all, from the usual and daily activities of the enterprise.*

Upon information and belief, the racketeering activities of the Defendant enterprises do not differ from the usual and daily activities of each enterprise.

9.  *The benefits, if any, the alleged enterprise receives or has received from the alleged pattern of racketeering.*

As discussed in more detail above, the Defendant enterprises are the recipients of the payments made by customers and agents without regard to the laws of the State of Connecticut with respect to, among other things, driver qualifications, the amount of the fares that a customer can be charged, and diverse other safety and operational requirements.

10. *The effect of the activities of the enterprise on interstate or foreign commerce.*

Each of the Defendant enterprises conduct activities in diverse states including, among others, Connecticut, California, Illinois, Massachusetts, New York and Texas.  Upon information and belief, the services provided by the Defendant enterprises also include interstate transportation, such as trips from Connecticut to New York or other states.

11. *If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:*

    a. *The identity of the individual(s) who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and*

The individuals who primarily receive the income derived from the pattern of racketeering activity include, but are not limited to, those identified in Section 3 above. Additional names are expected to be identified after the Plaintiffs have engaged in discovery.

    b. *The use or investment of such income.*

Defendants' investment of the proceeds of their racketeering activity in their ongoing operations allows them to engage in greater marketing and technological advances, which inevitably leads to greater interest in and the expansion of the Defendants' network of affiliated vehicles, the expansion of their Connecticut customer base, an increase in demand for the Defendant-affiliated vehicles in Connecticut, and the ability to expand into other states, territories and countries.

12. *If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.*

The Defendants, who are enterprises themselves and were established as such, engage in continuous, repeated racketeering activities as part of their usual and daily activities.

13. *If the complaint alleges a violation of 18 U.S.C. § 1962(b), provide the following information:*

    a. *The individuals who are employed by or associated with the enterprise; and*

The primary individuals employed by or associated with the two enterprises include, but are not limited to, those identified in Section 3 above. Additional names are expected to be identified after the Plaintiffs have engaged in discovery.

    b. *Whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).*

The identified persons are the enterprises' owners, agents, employees and other representatives, and are therefore responsible and liable for the roles they play in furthering the goals and businesses of their respective entities.

14. *If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.*

Not applicable.

15. *The alleged injury to business or property.*

The Plaintiffs have suffered, and will continue to suffer, damages to their business, reputation and good will, and have lost sales and profits that the Plaintiffs would have made but for the Defendants' illegal racketeering activity, in an amount to be proven at trial.

16. *The direct causal relationship between the alleged injury and the violation of the RICO statute.*

Please see the description of the direct causal relationship set forth in Section 4 above.

17. *The damages sustained for which each defendant is allegedly liable.*

The Plaintiffs have suffered, and will continue to suffer, damages to their business, reputation and good will, and have lost sales and profits that the Plaintiffs would have made but for the Defendants' illegal racketeering activity, in an amount to be proven at trial.  Further, the Plaintiffs seek treble damages for the losses they have sustained and continue to sustain as a result of the conduct of the Defendants' wrongful activities.

18. *A description of other federal causes of action alleged in the complaint, if any, and citation to the relevant statutes.*

   i.   Misrepresentation of Services in Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B)

   ii.  Misrepresentation of Services in Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)

19. *A description of all pendent state claims alleged in the complaint, if any.*

   i.   Unfair and Deceptive Trade Practices in Violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq*.

   ii.  Common law Intentional Interference with Contractual Relationships

20. *Any additional information plaintiff feels would be helpful to the Court in processing the RICO claim.*

The Plaintiffs intend to conduct discovery, through which it is anticipated that significant, additional evidence supporting the Plaintiffs' claims will be obtained.  Therefore, the Plaintiffs reserve the right to amend this statement to provide the Court with additional information from

such discovery that will help in the processing of the RICO claims asserted herein and in the Verified Complaint.

                              THE PLAINTIFFS,

BY: _____/s/_____
      Mary Alice Moore Leonhardt (ct02966)
      mmooreleonhardt@rms-law.com
      Glenn E. Coe (ct05372)
      gcoe@rms-law.com
      Rome McGuigan, P.C.
      One State Street, 13th Fl.
      Hartford, CT 06103
      Tel. (860) 549-1000
      Fax (860) 724-3921
      Their Attorneys

**CERTIFICATION**

I hereby certify that on the 10th day of June, a copy of the foregoing was filed electronically and served by mail the 11th day of June on parties unable to accept electronic filing. Notices of this will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to parties unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____/s/_____
Mary Alice Moore Leonhardt