# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____

GREENWICH TAXI, INC., ACE TAXI SERVICE,        :
INC., CASINO CAB COMPANY, INC., CURTIN          :
MOTOR LIVERY SERVICE, INC., EAST                :    Case  No.: 3:14-cv-733 (AWT)
HARTFORD CAB COMPANY, INC., EXECUTIVE           :
2000 TRANSPORTATION, LLC, FARMINGTON            :
VALLEY CAB, LLC, GROTON CAB COMPANY,            :
INC., LASSE'S LIVERY SERVICE, INC.,             :
SUBURBAN TRANSPORTATION, INC., TAXICABS         :
AND LIVERY COUNCIL OF CONNECTICUT, INC.,        :
THE WATERBURY YELLOW CAB & SERVICE              :
COMPANY, INC., TORRINGTON VALLEY CAB,           :
LLC, UNION-LYCEUM TAXI COMPANY, INC. and        :
YELLOW CAB COMPANY OF NEW LONDON &              :
GROTON, INC.,                                   :
                                                :
                Plaintiffs,                     :
        vs.                                      :
                                                :
UBER TECHNOLOGIES, INC. and LYFT, INC.,         :
                                                :
                Defendants.                     :
                                                :    November 14, 2014
                                                :
_____

# MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS BY DEFENDANT LYFT, INC.

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

I.      Plaintiffs' First Amended Complaint............................................................... 2

II.     The Legislative and Administrative Process.................................................... 4

ARGUMENT ................................................................................................................. 5

I.      Plaintiffs Fail To Satisfy Applicable Pleading Standards................................ 5

II.     All of Plaintiffs' Claims Fail Because They Constitute an Impermissible Attempt to
        Enforce DOT Regulations Which Confer No Private Right of Action. ............................ 6

III.    Plaintiffs Fail to State a Claim Under the Lanham Act (Counts I and II). ....................... 7

        A.  Plaintiffs Fail to Plead an Actionable Misrepresentation of Fact by Lyft,
            Let Alone One That Materially Deceived Consumers................................... 8

        B.  Plaintiffs Do Not Plead Any Injury Proximately Caused By a Misrepresentation..... 11

IV.     Plaintiffs Do Not State a Claim for Violation of CUTPA (Count III)............................ 12

V.      Plaintiffs Fail to Plead Intentional Interference with Contractual Relations (Count IV).  14

VI.     Plaintiffs Fail to State a Claim Under RICO (Counts V, VI, and VII). ........................... 16

        A.  Plaintiffs Fail to Allege Any Specific Conduct By Lyft Violative of The Statute. .... 16

        B.  Plaintiffs Fail to Adequately Allege Mail or Wire Fraud. ......................................... 17

        C.  Plaintiffs Have Not Adequately Pleaded the Existence of an Enterprise. .................. 19

        D.  Plaintiffs Have Failed to Plead Causation. .............................................................. 20

VII.    Alternatively, the Court Should Dismiss or Stay This Case under the *Burford*
        Abstention Doctrine. ................................................................................................... 21

CONCLUSION................................................................................................................ 23

# TABLE OF AUTHORITIES

## CASES

*Achtman v. Kirby, McInerney & Squire, LLP*,
  464 F.3d 328 (2d Cir. 2006) ......................................................................................... 5

*American Disposal Servs., Inc. v. O'Brien*,
  839 F.2d 84 (2d Cir. 1988) ..................................................................................... 21, 22

*Anza v. Ideal Steel Supple Corp.*,
  547 U.S. 451 (2006) ............................................................................................... 20, 21

*Appeleton v. Board of Educ. of the Town of Stonington*,
  254 Conn. 205, 757 A.2d 1059 (2000) ................................................................. 14, 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................. 5, 11

*Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.*,
  No. 3:08 CV 01958 (CFD), 2010 WL 1882316 (D. Conn. May 10, 2010) ............... 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................... 16

*Bergman v. Town of Hamden*,
  No. 3:10-cv-1315 (WWE), 2011 WL 337347 (D. Conn. Jan. 31, 2011) ............... 14, 15

*Bethpage Lutheran Serv., Inc. v. Weicker*,
  965 F.2d 1239 (2d Cir. 1992) ....................................................................................... 21

*Boston Cab Dispatch, Inc. v. Uber Techs., Inc.*,
  No. 13 CV 10769 (MNG), 2014 WL 1338148 (D. Mass. Mar. 27, 2014) .......... 10, 12

*Broder v. Cablevision Sys. Corp.*,
  418 F.3d 187 (2d Cir. 2005) ........................................................................................... 6

*Caires v. JP Morgan Chase Bank, N.A.*,
  880 F. Supp. 2d 288 (D. Conn. 2012) ........................................................................... 4

*Corcoran v. Ardra Ins. Co.*,
  842 F.2d 31 (2d Cir. 1988) ........................................................................................... 22

*Daigneault v. Eaton Corp.*,
  No. Civ. A. 06 CV 1690 (JCH), 2008 WL 2604929 (D. Conn. June 16, 2008) ....... 20

*Dauphinais v. Cunningham*,
  395 Fed. App'x 745 (2d Cir. 2010) ............................................................................... 6

*Dial A Car, Inc. v. Transportation Inc.*,
  82 F.3d 484 (D.C. Cir. 1996) .................................................................................... 9, 10

*East Point Sys., Inc. v. Maxim*,
  No. 3:13-cv-00215 (VLB), 2014 WL 523632 (D. Conn. Feb. 7, 2014) ................... 13

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004) ........................................................................... 19

*Francis v. Donahoe*,
   No. 13 CV 359 (SRU), 2014 WL 1292191 (D. Conn. Mar. 31, 2014) ..................... 8

*Global Discount Travel Servs., LLC v. Trans World Airlines, Inc.*,
   960 F. Supp. 701 (S.D.N.Y. 1997) .................................................................. 10

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*
   *Local No. 70 of Alameda Cnty.*, 415 U.S. 423 (1974) .......................................... 21

*Gross v. Waywell*,
   628 F. Supp. 2d 475 (S.D.N.Y. 2009) ............................................................. 18

*Hanlin Group, Inc. v. Power Auth. of State of N.Y.*,
   703 F. Supp. 305 (S.D.N.Y. 1989), *aff'd*, 923 F.2d 844 (2d Cir. 1990) ................. 21

*Knoll v. Schectman*,
   275 Fed. App'x 50 (2d Cir. 2008) .................................................................. 18

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014) ............................................................................. 8, 10

*Lipton v. Nature Co.*,
   71 F.3d 464 (2d Cir. 1995) ........................................................................... 7, 9

*Lundy v. Catholic Health Sys. of Long Is. Inc.*,
   711 F.3d 106 (2d Cir. 2013) .......................................................................... 16

*McBrearty v. Vanguard Group, Inc.*,
   353 Fed. App'x 640 (2d Cir. 2009) ................................................................. 20

*McLaughlin v. CitiFinancial Auto Credit, Inc.*,
   No. 3:09 CV 1844 (MRK), 2010 WL 2377089 (D. Conn. June 11, 2010) ............... 19

*Mendelsohn v. D'Souza*,
   No. 3:11 CV 1514 (VLB), 2012 WL 3043157 (D. Conn. July 25, 2012) .................. 6

*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993) .......................................................................... 17

*Omega Eng'g, Inc. v. Eastman Kodak Co.*,
   30 F. Supp. 2d 226 (D. Conn. 1998) ............................................................. 6, 12

*Pederson v. Office of Personnel Mgmt.*,
   881 F. Supp. 2d 294 (D. Conn. 2012) ............................................................... 4

*Provencher v. Enfield*,
   284 Conn. 772, 936 A.2d 625 (2007) ................................................................ 6

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
   30 F.3d 339 (2d Cir. 1994) ........................................................................... 20

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*,
   84 F.3d 629 (2d Cir. 1996) ........................................................................... 18

*Smith v. Local 819 I.B.T. Pension Plan*,
   291 F.3d 236 (2d Cir. 2002) .................................................................... 5

*South Cherry St., LLC v. Hennessey Grp. LLC*,
   573 F.3d 98 (2d Cir. 2009) ..................................................................... 5

*Spool v. World Child Int'l Adoption Agency*,
   520 F.3d 178 (2d Cir. 2008) ............................................................ 17, 18

*In re Trilegiant Corp., Inc.*,
   11 F. Supp. 3d 82 (D. Conn. 2014) ........................................................ 18

*Valenzuolo v. City of New Haven*,
   No. 3:11 CV 1336 (JBA), 2012 WL 4344386 (D. Conn. Sept. 21, 2012) ................. 6

*Vaughn v. Air Line Pilots Ass'n*,
   377 Fed. App'x 88 (2d Cir. 2010) ........................................................ 19

*ZeebaaS, LLC v. Koelewyn*,
   No. 3:11-cv-11 (VLB), 2012 WL 2327693 (D. Conn. June 19, 2012) .................... 15

## OTHER AUTHORITIES

15 U.S.C. § 1125(a)(1) ...................................................................... 7

18 U.S.C. § 1961(4) ........................................................................ 19

18 U.S.C. § 1961(5) ........................................................................ 16

Conn. Gen. Stat. § 42-110b(a) ............................................................. 12

Fed. R. Civ. P. 9(b) .................................................................. 17, 18

Fed. R. Civ. P. 12(b)(1) .................................................................... 2

Fed. R. Civ. P. 12(b)(6) ................................................................ 2, 21

Fed. R. Evid. 201 ........................................................................... 2

Public Act N. 14-199 .................................................................. *passim*

## PRELIMINARY STATEMENT

Plaintiffs, taxicab and livery companies operating in Connecticut, seek to use this action to stifle competition and usurp the Connecticut legislature's efforts to draft regulations that would govern the services provided by Lyft, Inc. ("Lyft") and Uber Technologies, Inc. ("Uber").  On June 12, 2014, the Connecticut legislature passed Public Act N. 14-199, directing the Department of Transportation ("DOT") to conduct a study to "(1) review how emerging technologies, such as smartphone applications, currently fit into the regulatory scheme, and (2) offer recommendations as to how and if such technologies and the businesses offering them should be regulated to ensure the safety of the riding public."

Apparently unsatisfied with the pace of legislative action, Plaintiffs attempt to short circuit that process by asserting claims that rest upon the inaccurate premise that Lyft violates existing DOT regulations governing taxicabs and livery vehicles and that such DOT violations support claims under RICO, Lanham Act, Connecticut Unfair Trade Practices Act ("CUTPA"), and common law.  Plaintiffs should not be allowed to force-fit inapplicable regulations onto the services of Lyft and Uber and then deputize themselves to enforce those regulations.  The Court should instead defer to the process begun by Connecticut's legislature which, when it set out to determine how to regulate these new technologies and businesses, implicitly determined that the current regulatory scheme should not be precipitously applied to Lyft and Uber.  The bodies of government responsible for regulating such businesses should be given the opportunity to do so, not Plaintiffs.

Nonetheless, in their Amended Complaint, Plaintiffs broadly assert that "Defendants" do not comply with Connecticut statutes and regulations that govern the taxicab and livery industry.  Yet there is no dispute that Plaintiffs lack standing to enforce or bring claims based upon these statutes and regulations.  Nor can Plaintiffs establish that these laws and

regulations would even apply to Lyft given Plaintiffs' admission that "Lyft does not even offer a 'taxicab' vehicle or service." (Amended Complaint, ¶ 37.) In tacit recognition that they cannot directly assert claims based upon these statutes and regulations, Plaintiffs instead attempt to assert a variety of causes of action under inapplicable federal and state law.

Plaintiffs, however, fall far short of pleading the necessary factual allegations to state the elements of those claims. The handful of allegations specifically directed at Lyft focus on innocuous aspects of Lyft's business model, not on any wrongful conduct by Lyft or conduct that has proximately caused any injury to Plaintiffs. In an effort to overcome their inability to allege any actual wrongdoing by Lyft, Plaintiffs improperly rely on generalized allegations against "Defendants" as if they were not separate businesses and on wholly conclusory assertions of misconduct that are legally insufficient to support their claims.

For all of these reasons, Plaintiffs' claims against Lyft should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

## STATEMENT OF FACTS

### I.    Plaintiffs' First Amended Complaint.

Plaintiffs are members of the taxicab and livery industry who are upset that innovative technologies have created new transportation alternatives for Connecticut consumers. (Amended Complaint, ¶ 1.) The crux of Plaintiffs' Amended Complaint is their allegations that Defendants' transportation networking platforms violate Connecticut laws and regulations. (*Id.*) Notably, Plaintiffs do not allege how Lyft is actually violating any statutes or regulations or causing any harm to Plaintiffs. Rather, Plaintiffs make broad generalizations about "Defendants" – two separate companies – and imply that their actions must somehow violate various regulations. (*Id.* at ¶ 32.)

Notably, the numerous conclusory assertions against "Defendants" made throughout Plaintiffs' Amended Complaint stand in stark contrast to the minimal and innocuous factual allegations made specifically with regard to Lyft.  The one-hundred and fifteen paragraph Amended Complaint contains only fourteen factual allegations specifically concerning Lyft, and those do nothing more than describe Lyft's business model.  For example, Plaintiffs allege that:

- "Lyft operates in largely the same way [as Uber], but at the present time does not appear to offer the same variety in vehicles and services as Uber. Very recently, however, Lyft announced its 'Plus' service, which is aimed at providing 'premium' service 'centered around comfort and . . . affordability.'  This week Lyft Plus launched in … Connecticut." (*Id.* at ¶ 31.)

- "Lyft does not even offer a 'taxicab' vehicle or service." (*Id.* at ¶ 37.)

- "Lyft hopes that consumers will view their vehicles as affordable and more convenient alternatives to authorized taxicab and livery vehicles . . . [Lyft and Uber affiliated vehicles] … are hailed by smart phone app on an 'on demand' (taxicab) or 'prescheduled' (livery) basis, assigned to customers through the same Uber or Lyft computer systems, and have fares determined by their respective metering devices." (*Id.* at ¶ 38.)

- "[U]pon information and belief, Lyft only engages in a pre-approval inspection and does not have a regular program for rechecking vehicle condition, licensing or insurance.  In fact, to be approved by Lyft, all that is required mechanically of your car is that it be manufactured in 2000 or later and be in 'good working condition.'" (*Id.* at ¶ 42.)

- "Lyft appears to only require personal auto insurance, but it does offer a 'first-of-its kind' $1M liability insurance policy." (*Id.* at ¶ 44.)

- "Lyft's method of ensuring it has 'qualified' drivers consists of a slightly more rigorous process [than Uber], ….  Lyft's method includes: a criminal background check, DMV check, pre-approval vehicle inspection, excess liability inspection, zero-tolerance drug and alcohol policy, a star rating system, and a 'driver orientation process' that takes only 'a few days.' (*Id.* at ¶ 48.)

- "As one could expect, Lyft has a similar stance [as Uber] regarding driver safety, and requires a waiver of liability as reflected in its own Terms of Service. (*Id.* at ¶ 50.)

3

- "Lyft relatively recently [announced] a new service . . . its Happy Hour program lowers prices when demand is low."  (*Id.* at ¶ 58.)

- "Lyft Plus will offer amenity consoles and various other features, all of which encourage a party atmosphere…. Lyft Plus' vehicles do not appear to have partitions…"  (*Id.* at ¶ 59.)

- "Lyft engages in the same [surge pricing] practice [as Uber], but also recently introduced its Happy Hour, …."  (*Id.*)

- "Legally operating Connecticut taxicab and livery drivers are also free to sign up with Lyft, …."  (*Id.* at ¶ 60.)

- "Lyft is similar [to Uber]; by charging $1 'Pickup' fee and $1 'Trust & Safety' fee."  (*Id.*)

Additionally, Plaintiffs never describe any injury or damage to any individual Plaintiff caused by any specific act or wrongdoing by Lyft.  These few factual allegations combined with Plaintiffs' conclusory assertions of illegality fail to meet even the minimal pleading standards on a motion to dismiss.

## II.    The Legislative and Administrative Process.

On June 12, 2014, the legislature passed Public Act N. 14-199, by which the Connecticut legislature directed the DOT to conduct a study to "(1) review how emerging technologies, such as smartphone applications, currently fit into the regulatory scheme, and (2) offer recommendations as to how and if such technologies and the businesses offering them should be regulated to ensure the safety of the riding public." [1]  The legislature directed that the DOT study "shall be conducted with input from the taxicab, the motor vehicle in livery service and the for-hire transportation services industries regarding the current regulatory scheme."  (*Id.*)

---

[1] The Court may take judicial notice of matters of public record.  Fed. R. Evid. 201, *Pederson v. Office of Personnel Mgmt.*, 881 F. Supp. 2d 294, 327 n.7 (D. Conn. 2012) (holding that Court may take judicial notice of statutes); *Caires v. JP Morgan Chase Bank, N.A.*, 880 F. Supp. 2d 288, 304 (D. Conn. 2012) (holding that "it is well established that a district court may rely on matters of public record in deciding a motion to dismiss, including case law and statutes") (internal citation and quotation marks omitted).

The findings, conclusions and recommendations of that study shall be presented to the General Assembly standing committee on transportation on or before February 1, 2015.  (*Id.*)

## ARGUMENT

## THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

### I.      Plaintiffs Fail To Satisfy Applicable Pleading Standards.

In deciding a motion to dismiss, the Court "assume[es] all 'well-pleaded factual allegations' to be true."  *South Cherry St., LLC v. Hennessey Grp. LLC*, 573 F.3d 98, 104 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  However, "'[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.'"  *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).  "Legal conclusions," "bare assertions," and "conclusory" allegations are "not entitled to be assumed true" and are insufficient as a matter of law.  *Iqbal*, 556 U.S. at 678-79.

Accordingly, the Court, faced with a motion to dismiss, should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id*. at 679.  These pleadings should be disregarded:  "while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id*.  Only if the complaint contains well-pleaded factual allegations should the trial court "then determine whether they plausibly give rise to an entitlement to relief."  *Id*.

Here, Plaintiffs have failed to allege any of their causes of action with the required factual allegations, requisite specificity, or plausibility.

**II.    All of Plaintiffs' Claims Fail Because They Constitute an Impermissible Attempt to Enforce DOT Regulations Which Confer No Private Right of Action.**

Each of Plaintiffs' causes of action rest upon the incorrect premise that Lyft's services violate Connecticut DOT regulations.[2]  Plaintiffs, however, lack standing to enforce these regulations.  "Under Connecticut law, there is a 'well settled fundamental premise . . . that private enforcement does not exist unless expressly provided in the statute.  To overcome that presumption, the plaintiff bears the burden of demonstrating that such an action is created implicitly in the statute.'" *Valenzuolo v. City of New Haven*, No. 3:11 CV 1336 (JBA), 2012 WL 4344386, at * 2 (D. Conn. Sept. 21, 2012) (quoting *Provencher v. Enfield*, 284 Conn. 772, 777-78, 936 A.2d 625, 629 (2007)).  *See also Dauphinais v. Cunningham*, 395 Fed. App'x 745, 746 (2d Cir. 2010) (affirming dismissal of claim brought under Connecticut statute that lacked an express private right of action); *Mendelsohn v. D'Souza*, No. 3:11 CV 1514 (VLB), 2012 WL 3043157, at *4 (D. Conn. July 25, 2012) (refusing to infer private cause of action from Connecticut statute that did not expressly provide one).

Rather than assert claims based on DOT regulations that they lack standing to directly enforce, Plaintiffs instead attempt to circumvent their lack of standing by asserting claims under RICO, the Lanham Act, CUTPA and Connecticut common law that nonetheless rest upon supposed violations of DOT regulations by Defendants.  (Amended Complaint, ¶¶ 32, 36-41, 44-45, 56-60, 74, 77, 81, 85, 88, 95, 100.)  Neither state nor federal law permits such an end run around the private right of action requirement.  *See e.g. Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 200-201 (2d Cir. 2005) (holding that alleged violation of statute that did not

---

[2] Amended Complaint, ¶¶ 74, 77 (basing Lanham Act claims on Defendants' alleged misrepresentations concerning its legal rights and obligations under Connecticut laws); *Id.* at ¶ 81 (basing CUTPA claim on alleged misrepresentations regarding compliance with Connecticut laws); *Id.* at ¶ 85 (basing tortious interference claim on alleged inducement of taxicab and livery drivers to violate state law); *Id.* at ¶¶ 88, 95, 100 (basing RICO claims on alleged violations of Connecticut laws and regulations by Defendants and their drivers).

provide for a private cause of action could not serve as basis for common law claim).

Furthermore, Plaintiffs effort to manufacture their authority to enforce DOT regulations against Lyft and Uber is particularly inappropriate given that the DOT has declined to do so and the legislature has directed study of the issue.  The determination as to whether any activity of Lyft violates applicable statutes or regulations lies in the first instance with the DOT, the agency imbued by the legislature with the power to enforce these laws.  Plaintiffs' assertion that Lyft violates these laws and regulations is merely an expression of Plaintiffs' opinion, which cannot form the basis for a claim.

Where, as here, Plaintiffs do not and cannot allege the essential elements of these alternative claims, this fundamental defect warrants dismissal of the entire Amended Complaint.

## III.    Plaintiffs Fail to State a Claim Under the Lanham Act (Counts I and II).

Plaintiffs' first and second causes of action assert claims for false advertising (Count I) and false association (Count II) under the Lanham Act.  To plead a claim of false advertising under the Lanham Act, a plaintiff must allege facts to show that:

> (1)  The defendant has made a false or misleading statement of fact. (2)  The false or misleading statement of fact in issue has actually deceived a substantial segment of the audience for the advertisement or has the capacity to deceive such segment.  (3) The deception caused by the statement in issue is material because it is likely to influence purchasing decisions.  (4)  The plaintiff has been injured as a result of the defendant's false claims because of a potential decline in sales or loss of goodwill. (5) The advertised goods traveled in interstate commerce.

*Omega Eng'g, Inc. v. Eastman Kodak Co.*, 30 F. Supp. 2d 226, 255 (D. Conn. 1998).

To state a claim for false association under the Lanham Act, Plaintiffs must plead facts to show a "misrepresentation likely to cause confusion as to the source of the manufacturer of a product."  15 U.S.C. § 1125(a)(1); *Lipton v. Nature Co.*, 71 F.3d 464, 473 (2d Cir. 1995).

In addition, to plead injury, a plaintiff must plead facts that would "show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 134 S. Ct. 1377, 1391 (2014) (explaining that proximate cause between the injury and the deception must exist).

Here, Plaintiffs fail to plead any specific misrepresentation by Lyft, let alone facts to show they have suffered an injury flowing directly from any misrepresentation.

### A.   Plaintiffs Fail to Plead an Actionable Misrepresentation of Fact by Lyft, Let Alone One That Materially Deceived Consumers.

Plaintiffs' Lanham Act claims fail to plead any facts specific to Lyft and instead improperly lump together both Defendants – two different companies, operating two different businesses – and recite a litany of conclusory bad acts without alleging any facts specifically concerning Lyft.  (Amended Complaint, ¶¶ 74, 77.)  As a result, the purported misrepresentations underlying the claims against Lyft are fatally unclear and, accordingly, cannot set forth a plausible claim.  *See e.g. Francis v. Donahoe*, No. 13 CV 359 (SRU), 2014 WL 1292191, at *5 (D. Conn. Mar. 31, 2014) (granting motion to dismiss because conclusory statements of wrongful conduct "fail to meet the plausibility standard set forth in *Twombly* and *Iqbal*").

Given the broadest reading of Plaintiffs' Lanham Act claims, the Amended Complaint appears to allege four types of "misrepresentations" by "Defendants" collectively. Defendants purportedly misrepresent: (1) their ability to operate legally in Connecticut, (2) their relationship to existing taxicab companies, (3) their insurance coverage, and (4) the safety of their platforms' users.  (Amended Complaint, ¶¶ 42, 44, 74, 77.)  However, Plaintiffs fail to allege a single statement by Lyft regarding any of these purported misrepresentations.  To the

contrary, the Amended Complaint's few allegations specific to Lyft contradict Plaintiffs' generalized claims of misrepresentations.

    *Legality to Operate.*  In their first Lanham Act claim, Plaintiffs allege that "Defendants" falsely represent, in commercial advertising and promotion, that their vehicles operate legally.  (*Id.* at ¶ 74).  Plaintiffs, however, have not alleged any statements made by Lyft that it operates in conformity with Connecticut DOT regulations.  Indeed, Plaintiffs appear to allege that Lyft promotes itself as providing a ride-sharing platform, which is not covered by current DOT laws and regulations.  (*Id.* at ¶ 37.)

    To the extent Plaintiffs argue that Lyft, simply by offering its services in Connecticut, implicitly represents that it is acting in conformity with these laws and regulations, their claim is still legally flawed.  There has not been and Plaintiffs do not allege that there has been any judicial, administrative or even legislative finding that Lyft fails to comply with any Connecticut statute or regulation.  Thus, any such representation by Lyft that it was in compliance with applicable regulations would, at most, constitute an expression of opinion, not an actionable misrepresentation of fact.  This is especially true in Connecticut where the Connecticut legislature has directed the DOT to conduct a study to "(1) review how emerging technologies, such as smartphone applications, currently fit into the regulatory scheme, and (2) offer recommendations as to how and if such technologies and the businesses offering them should be regulated to ensure the safety of the riding public."  Public Act N. 14-199; *see Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995) (holding that subjective assertions, as opposed to literal assertions of fact, by defendant regarding its product are not actionable); *Dial A Car, Inc. v. Transportation Inc.*, 82 F.3d 484, 485 (D.C. Cir. 1996) (considering taxicab regulations related to corporate account services, which the Taxicab Commission had not yet decisively interpreted,

and refusing to allow a "contested question of statutory interpretation rather than a clearly established fact" to form the basis of a Lanham Act claim); *see also Boston Cab Dispatch, Inc. v. Uber Techs., Inc.*, No. 13 CV 10769 (MNG), 2014 WL 1338148, at *6 (D. Mass. Mar. 27, 2014) (dismissing plaintiffs' Lanham Act claim premised on alleged misrepresentation by Uber that its service is lawful because the complaint "[did] not identify a representation in which Uber states explicitly or conveys by necessary implication that Uber assigned taxis are operating lawfully") (internal quotation marks omitted).

For the same reason, Plaintiffs' contrary belief that Lyft is in violation of such regulations is also merely an expression of Plaintiffs' opinion that cannot establish that Lyft has made a false statement.  *See Global Discount Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 706 (S.D.N.Y. 1997) (denying Lanham Act claim because plaintiff's attempt to characterize defendant's statements as false was "simply" an attempt to use "the Lanham Act to try and enforce its preferred interpretation") (quoting *Dial A Car, Inc.*, 82 F.3d at 489).  In the absence of any determination by DOT that Defendants violate applicable regulations, and given the Connecticut Legislature's decision to evaluate how best to regulate this new business model, Plaintiffs' Lanham Act claims, premised on their preferred interpretation of these statutes, cannot be maintained.  *See* Public Act N. 14-199.  The issue of how best to regulate Lyft and Uber is a political question best left to the legislature and regulators.

*Insurance and Safety Misrepresentations.*  Similarly, Plaintiffs fail to identify any false statements made by Lyft concerning its insurance.  Plaintiffs focus on alleged statements by Lyft that it "offer[s] a 'first-of-its kind' $1M liability insurance policy" (Amended Complaint, ¶ 44) and that it takes steps to qualify drivers to use the service (*id.* at ¶ 48).  Yet, Plaintiffs fail to allege how either of these alleged statements is false or misleading.  Indeed, Plaintiffs admit that

they know nothing about Lyft's insurance or safety procedures other than what is provided in Lyft's Terms of Service, and merely speculate regarding Lyft's alleged deficiencies.  (*Id.*)  Mere conjecture and speculation do not form a proper basis for this cause of action.  *See Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully").  For all of these reasons, Plaintiffs claim for false representation under the Lanham Act fails.

<u>*Relationship to Established Taxi and Livery Companies.*</u>  Plaintiffs' False Association claim (Count II) rests on the general allegation that "Defendants" are "fabricating a nonexistent 'partnership' with legally owned and operated taxicab and livery companies." (Amended Complaint, ¶ 77.)  Absent from this claim, however, are any specific factual allegations regarding how Lyft fabricates such a relationship.  To the contrary, Plaintiffs make allegations that flatly contradict any notion that Lyft has fabricated a partnership with Plaintiffs' taxicab and livery companies.  Plaintiffs plead that "Lyft *does not even offer a 'taxicab' vehicle or service*" (*Id.* at ¶ 37), and "hopes that consumers will view their vehicles as affordable and more convenient *alternatives* to authorized taxicab and livery vehicles." (*Id.* at ¶ 38) (emphasis added).  Thus, rather than demonstrating that Lyft attempts to confuse consumers into believing that it is associated with the Plaintiffs, the Amended Complaint instead demonstrates precisely the opposite.  The Amended Complaint fails to allege a claim for false association.

**B.**     **Plaintiffs Do Not Plead Any Injury Proximately Caused By a Misrepresentation.**

Plaintiffs' Lanham Act claims also fail to plead an injury proximately caused by any alleged misrepresentation by Lyft.  "To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations."

11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014).  Here,

Plaintiffs fail to describe *any* injury to *any* of the Plaintiffs, must less how that injury was

proximately caused by a misrepresentation by Lyft.  Rather, each of Plaintiffs' Lanham Act

claims concludes with the boilerplate statement that "Defendants' misrepresentations have

caused harm to the Plaintiffs."  (Amended Complaint, ¶¶ 75, 78.)  This failure, too, warrants a

dismissal.  *See Boston Cab Dispatch, Inc.*, 2014 WL 1338148 at *4-5 (dismissing Lanham Act

claims against Uber for failure to plead causal connection between alleged Lanham Act

violations and damages).

## IV.     Plaintiffs Do Not State a Claim for Violation of CUTPA (Count III).

The same pleading deficiencies that doom Plaintiffs' Lanham Act claims also

doom Plaintiffs' claim under CUTPA.  "CUTPA prohibits individuals from engaging in unfair

methods of competition and unfair or deceptive acts or practices in the conduct of trade or

commerce."  *Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.*, No. 3:08 CV 01958 (CFD),

2010 WL 1882316, at *9 (D. Conn. May 10, 2010) (citing Conn. Gen. Stat. § 42-110b(a)).  In

determining whether a plaintiff has pled facts to state a claim under CUTPA, the court should

consider:

> (1) whether the practice, without necessarily having been
> previously considered unlawful, offends public policy as it has
> been established by statutes, the common law, or otherwise—
> whether, in other words, it is within at least the penumbra of some
> common law, statutory, or other established concept of unfairness;
> (2) whether it is immoral, unethical, oppressive, or unscrupulous;
> (3) whether it causes substantial injury to consumers (competitors
> or other businessmen).

*Omega Eng'g, Inc. v. Eastman Kodak Co.*, 30 F. Supp. 2d 226, 260 (D. Conn. 1998).

Here, Plaintiffs assert that Defendants violate CUTPA by: (1) falsely claiming a

relationship to existing taxicab and livery companies, (2) falsely claiming that they only collect a

$1 fee and pay the full gratuity to the drivers, (3) falsely claiming their ability to operate legally

in Connecticut, (4) falsely claiming that their vehicles do not need to be licensed and regulated as

taxicabs, and (5) by unfairly competing with Plaintiffs.  (Amended Complaint, ¶ 81.)  Plaintiffs

fail to allege facts with sufficient particularity to state a claim based on any of these conclusory

assertions.  *East Point Systems, Inc. v. Maxim*, 13-cv-00215, 2014 WL 523632 *7 (D. Conn. Feb.

7, 2014) (dismissing CUTPA claims for failure to plead fraud with particularity).

> *Relationship with Established Taxicab and Livery Companies.*  Plaintiffs'

Amended Complaint makes the undifferentiated allegation that "Defendants" falsely claim a

relationship with existing taxicab and livery companies.  (Amended Complaint, ¶ 81.)  As

discussed above, Plaintiffs fail to allege any incidents of Lyft or its drivers representing to a

consumer that they are associated with the taxicab or livery service provided by Plaintiffs.

(*Supra* Section III.)  Instead, Plaintiffs allege that Lyft is not a taxicab company and seeks to

portray itself as an alternative to taxicab and livery companies offered by Plaintiffs.  (Amended

Complaint, ¶ 37-38.)  Such allegations contradict Plaintiffs' conclusory CUTPA assertions and

demonstrate that Plaintiffs have not alleged a plausible claim.

> *Fees.*  Plaintiffs' Amended Complaint makes the undifferentiated allegation that

"Defendants" falsely claim that they only collect a $1 fee and pay the full gratuity to the vehicle

drivers.  (*Id.* at ¶ 81.)  However, Plaintiffs fail to identify any particular statement concerning

fees or gratuities by Lyft, and to the extent they say anything at all on the subject, actually

contradict themselves by acknowledging that Lyft discloses the fees it collects.  (*Id.* at ¶ 60.)

Furthermore, Plaintiffs fail to allege how any alleged misrepresentation regarding a $1 fee or

gratuity sharing causes any injury to Plaintiffs.

_Legal Operation and Unfair Competition_.  As with Plaintiffs' Lanham Act claims, Plaintiffs' CUTPA claim rests on the allegation that by operating in Connecticut, Defendants are falsely implying that they operate in conformity with DOT regulations and by "unlawfully operating," Defendants are allegedly "unfairly competing with the Plaintiffs."  (_Id._ at ¶ 81.)  As explained above, Plaintiffs' contentions are merely inactionable statements of opinion.  The recent enactment of Public Act N. 14-199 only serves to emphasize that Defendants' activities and the current regulatory scheme in Connecticut are best addressed by the Connecticut General Assembly, not by Plaintiffs.

**V.      Plaintiffs Fail to Plead Intentional Interference with Contractual Relations (Count IV).**

Plaintiffs' Amended Complaint lacks the requisite factual allegations to establish a claim against Lyft for intentional interference.  To state a claim for intentional interference with contractual relations, Plaintiffs must plead: "(1) the existence of a contractual or beneficial relationship, (2) the defendants' knowledge of that relationship, (3) the defendants' intent to interfere with the relationship, (4) the interference was tortious, and (5) a loss suffered by the plaintiff was caused by the defendant's tortious conduct."  _Appeleton v. Board of Educ. of the Town of Stonington_, 254 Conn. 205, 212-13, 757 A.2d 1059, 1063 (2000) (citation omitted).  Since not every act that disturbs a contract is actionable; a claim for tortious interference also requires Plaintiffs to "allege that defendants committed tortious conduct such as fraud, misrepresentation, intimidation or malice."  _Bergman v. Town of Hamden_, No. 3:10-cv-1315 (WWE), 2011 WL 337347, at *3 (D. Conn. Jan. 31, 2011) (citation omitted).

Plaintiffs' intentional interference claim rests on two sets of allegations.  Plaintiffs allege that "Defendants" interfered with unspecified "contractual relationships" between Plaintiffs and their drivers by "inducing" them to use "Defendants'" services.  (Amended

Complaint, ¶ 85.)  Plaintiffs further allege that "Defendants" interfere with Plaintiffs' contracts with credit card companies by "requiring" taxicab and livery drivers to use a system for receiving payments other than the credit card machines in their vehicles.  (*Id.*)  Neither allegation states a claim for tortious interference.

First, Plaintiffs fail to identify a single specific contract or contractual provision between or among any of the fifteen Plaintiffs, any taxicab or livery driver, or a credit card processing company.  *See Appeleton*, 757 A.2d. at 1063 (existence of a contract is a necessary element of a tortious interference claim).  Second, Plaintiffs fail to allege that Lyft had knowledge of any such contract or contractual provision.  *ZeebaaS, LLC v. Koelewyn*, No. 3:11-cv-11 (VLB), 2012 WL 2327693, at *5 (D. Conn. June 19, 2012) (in order to plead a plausible claim for tortious interference with contract, a complaint must allege more than "a naked assertion" of defendant's knowledge of a contract).  Third, Plaintiffs fail to allege any tortious conduct by Lyft intended to interfere with any particular contract or contractual provision.  To the contrary, Plaintiffs allege nothing more than that "Defendants" make their services available to anyone who wants to use them, including individuals who may also work as taxicab or livery drivers.  Providing drivers with the option of using Lyft or Uber in addition to or in lieu of logging additional hours for Plaintiffs is not tortious and cannot constitute unlawful interference.  Finally, Plaintiffs have not, as they must, alleged any injury caused by Lyft's alleged tortious interference.  *Bergman*, 2011 WL 337347 at * 3 (dismissing tortious interference claim, in part, because plaintiffs failed to allege an "actual injury").

Each of these failures requires dismissal of Plaintiffs' tortious interference with contract claim.  *ZeebaaS, LLC*, 2012 WL 2327696 at *5.

**VI.**   **Plaintiffs Fail to State a Claim Under RICO (Counts V, VI, and VII).**

Desperate to identify *something* unlawful about Defendants' business operations, Plaintiffs' Amended Complaint also attempts to state several RICO violations.  Plaintiffs' RICO claims suffer from the same defects as their Lanham Act claims.  "To establish a civil RICO claim, a plaintiff must allege '(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity,' as well as 'injury to business or property as a result of the RICO violation.'"  *Lundy v. Catholic Health Sys. of Long Is. Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (internal citation omitted).  Pursuant to 18 U.S.C. § 1961(5), "the pattern of racketeering activity must consist of two or more predicate acts of racketeering."  *Id.*  To survive a motion to dismiss, each of these elements must be supported by specific factual allegations regarding conduct by Lyft, not mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  Here, Plaintiffs do not plead facts sufficient to plausibly state each element of their RICO claim.

**A.**     **Plaintiffs Fail to Allege Any Specific Conduct By Lyft Violative of The Statute.**

Plaintiffs' RICO claims should be dismissed because Plaintiffs fail to plead any specific facts demonstrating that Lyft engaged in conduct prohibited by the statute.  Instead, in both the Amended Complaint and the required RICO statement,[3] Plaintiffs rely on undifferentiated conclusory assertions that impermissibly lump Lyft and Uber together without any facts indicating coordination between the two separate companies (which themselves are competitors).  Where a plaintiff fails to "allege[] what any particular Defendant did to advance

_____

[3] Pursuant to the Court's standing order, Plaintiffs were required to "state in detail" information regarding their RICO claims, including the alleged misconduct and basis of liability of each defendant, specific predicate acts, the dates of such acts and the participants in each.

the RICO scheme," the claims are inadequate and fail to satisfy the pleading requirements.

*Lundy*, 711 F.3d at 119.  For this reason alone, Plaintiffs' RICO claims should be dismissed.

### B.    Plaintiffs Fail to Adequately Allege Mail or Wire Fraud.

Plaintiffs' Amended Complaint attempts to state three RICO claims.  Count V

alleges that Defendants unlawfully derive income from racketeering activity, while Counts VI

and VII allege that Defendants exercise control over or conduct racketeering activity.  The

problem for Plaintiffs is that they fail to identify any unlawful predicate acts in support of either

claim.  Plaintiffs premise each of their claims on an allegation that "Defendants" "us[e] the

internet to transmit fraudulent misrepresentations of (sic) Connecticut consumers about fares in

the Defendants' vehicles and false claims of an association between the Defendants and the

Plaintiffs," (Amended Complaint, ¶¶ 88, 95, 100) apparently claiming that this amounts to wire

fraud.[4]

To properly plead a claim for wire fraud, Plaintiffs must allege: (1) two predicate

communications, via interstate commerce, that constitute a pattern of racketeering activity, (2)

the contents of the communications, (3) who was involved in the communications, (4) where and

when the communications took place, and (5) why the communications were fraudulent.  *Mills v.*

*Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir. 1993).  Each of these elements must be pled

with particularity because the predicate acts supporting Plaintiffs' wire fraud claims sound in

fraud.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake."); *Spool v. World Child Int'l*

---

[4] Plaintiffs' fifth cause of action makes the conclusory assertion that Defendants violated the
wire fraud statute by making "fraudulent representations" through the internet.  (Amended
Complaint, ¶ 88.)  Plaintiffs' other two RICO claims lack even a conclusory assertion of the
necessary predicate acts.  (*See id.* at ¶ 94-102.)  Plaintiffs' RICO case statement for these
remaining two claims appears to rely upon a conclusory assertion of wire fraud.  (RICO case
statement, p. 7.)

*Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008); *Knoll v. Schectman*, 275 Fed. App'x 50, 51 (2d Cir. 2008).

Plaintiffs have not adequately pled that Lyft engaged in even a single predicate act of racketeering.  First, rather than identify specific acts by Lyft, Plaintiffs allege that "Defendants" collectively made "hundreds, if not thousands" of unspecified "fraudulent representations" via the internet. (Amended Complaint, ¶ 88.)  Such improper group pleading cannot support a claim of wire fraud.  "[G]roup pleading" that does not "indicate individually which of the … defendants actually engaged in the particular predicate acts of mail or wire fraud offenses that Plaintiffs allege constitutes a pattern of racketeering [activity]" – is insufficient because it does not "comply with requirements of RICO or the particularity standards of Rule 9(b)." *Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009).  Similarly, "hyperbolic conclusory allegation[s] devoid of factual content asserting" that "'thousands' of communications were sent between the various Defendants without describing the contents or details of any one mail or wire communication that was fraudulent" fail to adequately allege any acts of mail or wire fraud. *In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 101 (D. Conn. 2014).

Plaintiffs' RICO claims also fail because Plaintiffs fail to identify anything fraudulent about these unspecified communications, or allege any facts demonstrating fraudulent intent.  "[P]laintiffs must allege facts that give rise to a strong inference of fraudulent intent" to satisfy their pleading obligations under RICO. *In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d at 100 (internal quotations omitted).  To meet this requirement, Plaintiffs must "(1) alleg[e] facts to show that defendants had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (quoting *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 622 (2d Cir. 1996)).

18

While Plaintiffs liberally sprinkle the term "fraudulent" throughout their claims (Amended

Complaint, ¶¶ 80, 90, 95), they do not allege any *facts* evidencing either a fraudulent motive or

circumstantial evidence of conscious misbehavior.  Mere conclusory assertions do not satisfy

Plaintiffs' obligation to show a strong inference of fraudulent intent.  *Vaughn v. Air Line Pilots

Ass'n*, 377 Fed. App'x 88, 90 (2d Cir. 2010).

C.     **Plaintiffs Have Not Adequately Pleaded the Existence of an Enterprise.**

Plaintiffs RICO claims also fail to adequately plead facts to establish an

"enterprise."  While a RICO enterprise includes "any … group of individuals associated in fact

although not a legal entity, 'a solitary entity cannot, as a matter of law, simultaneously constitute

both the RICO 'person' whose conduct is prohibited and the entire RICO 'enterprise.'"

*McLaughlin v. CitiFinancial Auto Credit, Inc.*, No. 3:09 CV 1844 (MRK), 2010 WL 2377089,

*4 (D. Conn. June 11, 2010); *see also First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385

F.3d 159, 173 (2d Cir. 2004); 18 U.S.C. § 1961(4).  In other words, the civil RICO defendant

must be distinct from the RICO enterprise.

While the Amended Complaint lacks any specificity regarding the alleged

enterprise, in their RICO case statement Plaintiffs assert that "[e]ach of the Defendants is an

enterprise itself," that the "Defendant enterprises, as part of their regular activities and business,

engage in a pattern of racketeering activity with respect to the taxi services they provide," and

that "the racketeering activities of the Defendant enterprises do not differ from the usual and

daily activities of each enterprise."  (RICO case statement, p. 10-11.)  Plaintiffs also assert, again

only in their RICO case statement, that "Defendants' principals, owners, employees,

representatives and other associated entities," including Lyft's two founders, are also alleged

wrongdoers, although not named as defendants in the Amended Complaint.  (*Id.* at p. 5.)

19

Not only are these statements impermissibly vague, but they also make clear that Plaintiffs' RICO claims improperly rest on the assertion that Lyft is both the RICO 'person' whose conduct is prohibited *and* the enterprise.  As a matter of law, this is inadequate.  *See McLaughlin*, 2010 WL 2377089; *Daigneault v. Eaton Corp.*, No. Civ. A. 06 CV 1690 (JCH), 2008 WL 2604929, at *3 (D. Conn. June 16, 2008) ("[A] RICO plaintiff cannot artfully bypass RICO's distinctiveness requirement 'by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant.'") (quoting *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994)).  Even accepting those statements as true for the purposes of this motion, Plaintiffs fail to adequately allege the existence of an enterprise involving Lyft.

**D.   Plaintiffs Have Failed to Plead Causation.**

Plaintiffs' RICO claims also suffer from Plaintiffs' failure to plead a sufficient causal connection between Plaintiffs' alleged injuries and Lyft's alleged RICO violations.  As the Supreme Court explained in *Anza v. Ideal Steel Supply Corp.*, "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led *directly* to the plaintiff's injuries."  547 U.S. 451, 461 (2006) (emphasis added).

In a case involving allegations similar to those here, the Supreme Court rejected the plaintiff's RICO claim against a competitor where it alleged that the competitor's failure to adhere to applicable tax laws allowed the competitor to undercut the plaintiff's prices.  *Id.*  The Supreme Court held that proximate cause had not been pled because the cause of plaintiff's asserted injury was "a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)" by not paying taxes.  *Id.* at 458; *see also McBrearty v. Vanguard Group, Inc.*, 353 Fed. App'x 640, 641 (2d Cir. 2009) (in order to demonstrate the causation requirement, Plaintiffs "must show that they were injured 'by reason of' the alleged

20

racketeering activity. . . that is, that the defendant's RICO violation proximately caused

plaintiffs' injuries").  Plaintiffs' attempt to plead proximate cause in the instant case suffers from

the same legal defect.  As in *Anza*, Plaintiffs' asserted harms arise from "a set of actions"

(operating a ridesharing platform that competes with Plaintiffs) that is distinct from the alleged

RICO violation (allegedly failing to adhere to assertedly applicable DOT regulations).  *See Anza*,

547 U.S. at 460 ("A RICO plaintiff cannot circumvent the proximate cause requirement simply

by claiming that the defendant's aim was to increase market share at a competitor's expense").

Such allegations do not sufficiently plead a causal connection between Plaintiffs' alleged injury

and any "Defendants'" alleged wrongdoing.

## VII.   Alternatively, the Court Should Dismiss or Stay This Case under the *Burford* Abstention Doctrine.

As an alternative to dismissal under Rule 12(b)(6), this Court may abstain from

exercising jurisdiction pursuant to the *Burford* abstention doctrine.  Plaintiffs' claims rest upon

Connecticut DOT laws and regulations and the relief sought in this action would interfere with

the Connecticut legislature's own review of the existing regulatory scheme.

In determining whether to abstain under the *Burford* doctrine, courts in the

Second Circuit consider: (1) the degree of specificity of the state regulatory scheme, (2) the

necessity for discretionary interpretation of state statutes, and (3) whether the subject matter of

the litigation is traditionally one of state concern.  *Hanlin Group, Inc. v. Power Auth. of State of

N.Y.*, 703 F. Supp. 305, 308 (S.D.N.Y. 1989), *aff'd*, 923 F.2d 844 (2d Cir. 1990).  As the Second

Circuit has explained, *Burford* abstention is proper to "avoid resolving difficult state law issues

involving important public policies or avoid interfering with state efforts to maintain a coherent

policy in an area of comprehensive regulation or administration."  *Bethpage Lutheran Serv., Inc.

v. Weicker*, 965 F.2d 1239, 1243 (2d Cir. 1992), *quoting American Disposal Servs., Inc. v.*

21

*O'Brien*, 839 F.2d 84, 87 (2d Cir. 1988); *see also Corcoran v. Ardra Ins. Co.*, 842 F.2d 31, 37 (2d Cir. 1988) (abstention is appropriate where there is a novel question implicating a state's complex administrative and judicial system for regulating and liquidating domestic insurance companies).

Each of the *Burford* factors supports abstention in this case.  Although Plaintiffs have framed some of their claims as arising under federal law, Plaintiffs predicate RICO and Lanham Act claims are based on Defendants' alleged collective failure to comply with Connecticut laws and regulations and alleged misrepresentations about their ability to operate legally under those laws and regulations.  The applicability of and Defendants' compliance with these laws and regulations is an unsettled issue of state law within the purview of the DOT, the agency charged with responsibility for enforcing them.  In addition, the Connecticut General Assembly has commenced the process of evaluating the application of existing laws to these new forms of business and the need for new laws to regulate them.  A decision by the Court concerning these unsettled issues would tend to undermine that process and interject the Court into an area of regulatory oversight better left to the DOT and the legislature.  Under these circumstances, abstention is appropriate to allow the state regulatory regime time to decide the very questions of which Plaintiffs seek judicial resolution.

## CONCLUSION

For each of the foregoing reasons, Lyft respectfully requests that the Court grant Lyft's motion to dismiss the Amended Complaint with prejudice and for such other and further relief to which it may be entitled.[5]

Dated: November 14, 2014          Respectfully submitted,

**LYFT, INC.**

By:  /s/ Noah M. Weissman

**BRYAN CAVE LLP**
Noah M. Weissman (ct28473)
Mary Beth Buchanan, admitted *pro hac vice*
Megan A. Pierson, admitted *pro hac vice*
1290 Avenue of the Americas
New York, New York 10104
Tel: (212) 541-2298, Fax: (212) 541-4630
nmweissman@bryancave.com
mbuchanan@bryancave.com
megan.pierson@bryancave.com

Stephen V. Manning (ct07224)
O'Brien, Tanski & Young LLP
500 Enterprise Dr., Suite 4B
Rocky Hill, CT 06067
Tel: (860) 525-2700, Fax: (860) 247-7861
svm@otylaw.com

---

[5] Almost six months ago, Plaintiffs raised in their original complaint the possibility of seeking a temporary restraining order.  Plaintiffs never filed a motion to obtain that interim relief, and certainly, at this late juncture, cannot establish the need for such emergency relief.  Furthermore, a temporary restraining order "should be restricted to serving [the] underlying purpose of preserving the *status quo* and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."  *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).  Here, granting Plaintiffs a temporary restraining order would change the status quo by forcing an end to Lyft's business in Connecticut before a trial on the merits.  Given that no motion is pending, this issue is not before the Court.  Lyft raises this objection in an abundance of caution and in order to preserve its objections thereto.

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on November 14, 2014, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

          //s// Noah M. Weissman
          Noah M. Weissman (ct28473)
          BRYAN CAVE LLP
          1290 Avenue of the Americas
          New York, New York 10104
          Tel: (212) 541-2298
          Fax: (212) 541-4630
          nmweissman@bryancave.com