UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GREENWICH TAXI, INC., ACE TAXI SERVICE, INC., CASINO CAB COMPANY, INC., CURTIN MOTOR LIVERY SERVICE, INC., EAST HARTFORD CAB COMPANY, INC., EXECUTIVE 2000 TRANSPORTATION, LLC, FARMINGTON VALLEY CAB, LLC, GROTON CAB COMPANY, INC., LASSE'S LIVERY SERVICE, INC., SUBURBAN TRANSPORTATION, INC.,  TAXICABS AND LIVERY COUNCIL OF CONNECTICUT, INC., THE WATERBURY YELLOW CAB & SERVICE COMPANY, INC., TORRINGTON VALLEY CAB, LLC, UNION-LYCEUM TAXI COMPANY, INC., and YELLOW CAB COMPANY OF NEW LONDON & GROTON, INC., <br><br>              Plaintiffs, <br><br>       v. <br><br> UBER TECHNOLOGIES, INC. and LYFT, INC. <br><br>              Defendants. | C.A. No.: 3:14-cv-733 (AWT) <br><br><br> **DEFENDANT UBER TECHNOLOGIES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** <br><br><br><br><br><br><br><br><br> November 14, 2014 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

PLAINTIFFS' ALLEGATIONS ................................................................................. 3

ARGUMENT ............................................................................................................... 4

I.  Plaintiffs Fail to State a Lanham Act Claim for False Advertising ..................... 4

    A.  Plaintiffs Cannot Premise Their Lanham Act Claim on Violations of Local Transportation Laws .................................................................................. 5

    B.  Plaintiffs Fail to Allege Uber Made Any Misrepresentations ................... 7

    C.  Plaintiffs Fail to Plead That Uber's Alleged Misrepresentation Proximately Caused Their Alleged Injuries ................................................................... 9

II.  Plaintiffs Fail to State a Lanham Act Claim for False Association .................... 12

    A.  Plaintiffs Fail to Allege They Have Recognizable Trademarks ............... 13

    B.  Plaintiffs Fail to Allege That Uber "Used" Their Trademarks ................ 13

III.  Plaintiffs Fail to State a Claim Under the Connecticut Unfair Trade Practices Act ("CUTPA") ....................................................................................................... 16

    A.  Plaintiffs' CUTPA Claim Fails for the Same Reasons that Their Lanham Act Claims' Fail ...................................................................................... 16

    B.  Plaintiffs' CUTPA Claim Should Also be Dismissed for Failure to Satisfy Rule 9(b)'s Heightened Pleading Standard .............................................. 16

    C.  Plaintiffs Have Not Pled Substantial Injury .......................................... 17

    D.  Plaintiffs' Allegations Fail to Allege Conduct Which Rises to the Level of a CUTPA Violation Under the Cigarette Rule ........................................... 19

    E.  Plaintiffs' CUTPA Claim Must Also Be Dismissed For Failure to Allege that Uber's Acts Were the Proximate Cause of the Plaintiffs' Injuries ...... 20

IV.  Plaintiffs Fail to State a Claim for Intentional Interference with Contractual Relationships ..................................................................................................... 21

    A.  Plaintiffs Fail to Identify Any Tortious Conduct by Uber ...................... 21

B.    Plaintiffs Have Failed to Allege That Uber Interferes With Plaintiffs' Contracts With Credit Card Companies ...................................................24

C.    Plaintiffs Have Failed to Allege that Uber Intended to Interfere With Plaintiffs' Contracts ...........................................................................24

D.    Plaintiffs Have Failed to Identify Any Specific Contracts That Uber Was Aware of and Interfered With .................................................................25

E.    Plaintiffs Have Failed to Allege That They Suffered Actual Loss .........................27

V.    Plaintiffs Fail to State Claims for Violations of RICO .......................................................28

A.    Plaintiffs Fail to Allege a Pattern of Racketeering Activity Sufficient to Meet Rule 9(b) ..........................................................................................28

B.    Plaintiffs Fail to State a Claim Under Each of the Three RICO Subsections ..........30

1.    Plaintiffs Fail to State a Claim Under Section 1962(a), the "Use or Invest" Provision ....................................................................30

2.    Plaintiffs Fail to State a Claim Under Section 1962(b), the "Interest in or Control Over" Provision ...................................................32

3.    Plaintiffs Fail to State a Claim Under Section 1962(c), the "Conduct of Enterprise" Provision .................................................34

VI.    The Court Should Abstain From Deciding This State and Municipal Issue ......................39

CONCLUSION ..........................................................................................................................42

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*4 K & D Corp. v. Concierge Auctions, LLC*,
No. 13 CIV. 2527 JGK, 2 F. Supp. 3d 525 (S.D.N.Y. 2014) ................................... 38

*AGC, Inc. v. Baillargeon*,
CV10601844S, 2011 WL 1176141 (Conn. Super. Ct. Mar. 9, 2011) ...................... 23

*ALPO Petfoods, Inc. v. Ralston Purina Co.*,
720 F. Supp. 194 (D.D.C. 1989) ........................................................................... 8

*Allen v. New World Coffee, Inc.*,
No. 00 CIV 2610 (AGS), 2002 WL 432685 (S.D.N.Y. Mar. 19, 2002) ........................... 32, 34

*Allstate Ins. Co. v. Seigel*,
312 F. Supp. 2d 260 (D. Conn. 2004) .......................................................... 31, 32, 34

*Am. Car Rental, Inc. v. Comm. Of Consumer Protection*,
273 Conn. 296 (2005) ........................................................................................... 18

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ................................................................................ 11, 36, 37

*Appleton v. Bd. of Educ. of Town of Stonington*,
254 Conn. 205, 757 A.2d 1059 (2000) ................................................................. 27

*Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*,
287 Conn. 208, 947 A.2d 320 (2008) .................................................... 17, 18, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................... 11, 18

*Bacarella Transp. Servs., Inc. v. Rightway Logistics, LLC*,
3:08-CV-1487(PCD), 2009 WL 322871 (D. Conn. Feb. 10, 2009) .......................... 22

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
886 F. Supp. 377 (S.D.N.Y. 1995) ....................................................................... 7

*Bio Tech. Gen. Corp. v. Genentech, Inc.*,
267 F.3d 1325 (Fed. Cir. 2001)............................................................................. 7

*Boston Cab Dispatch, Inc. v. Uber Technologies, Inc.*,
No. CIV.A. 13-10769-NMG, 2014 WL 1338144 (D. Mass. Feb. 28, 2014)............................ 12

*Boston Cab Dispatch, Inc. v. Uber Technologies, Inc.*,
CIV.A. 13-10769-NMG, 2014 WL 1338148 (D. Mass. Mar. 27, 2014) ............................ 11, 12

*Boyle v. United States*,
556 U.S. 938, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009)....................................... 33

*Bulldog New York LLC v. Pepsico, Inc.*,
    No. 3:08CV1110 AWT, 2014 WL 1284903 (D. Conn. Mar. 31, 2014) .................................. 25

*City of New York v. Smokes–Spirits.com, Inc.*,
    541 F.3d 425 (2d Cir. 2008) ................................................................................................ 34

*Corra v. Sunwood Condo. Ass'n, Inc.*,
    CV126009466S, 2012 WL 6583030 (Conn. Super. Ct. Nov. 26, 2012) ........................... 21, 22

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013) ................................................................................................ 34

*DeFalco v. Bernas*,
    244 F.3d 286 (2d Cir. 2001) ............................................................................................ 28, 34

*DiTeresi v. Stamford Health Sys. Inc.*,
    FSTCV065001340S, 2011 WL 4424399 (Conn. Super. Ct. Sept. 2, 2011) ........................... 17

*Dial A Car, Inc. v. Transp., Inc.*,
    82 F.3d 484 (D.C. Cir. 1996) ............................................................................................ 5, 6

*Direct Mail Jobs, LLC v. Hughes*,
    HHBCV085009794, 2011 WL 3672086 (Conn. Super. Ct. July 29, 2011) ........................... 22

*Doctor's Associates, Inc. v. QIP Holder LLC*,
    CIV.A306CV1710VLB, 2010 WL 669870 (D. Conn. Feb. 19, 2010) .................................... 4

*Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*,
    871 F.2d 697 (7th Cir. 1989) .............................................................................................. 13

*Downes-Patterson Corp. v. First Nat'l Supermarkets, Inc.*,
    64 Conn. App. 417, 780 A.2d 967 (2001) ................................................................ 21, 25, 27

*Downstream Envtl., L.L.C. v. Gulf Coast Waste Disposal Auth.*,
    No. 05-CV-1865, 2006 WL 1875959 (S.D. Tex. July 5, 2006) ........................................... 37

*Dworkin Constr. Corp. v. Shremshock-Yoder Architects, Inc.*,
    380352, 1996 WL 469742 (Conn. Super. Ct. Aug. 2, 1996) ................................................ 26

*E. Point Sys., Inc. v. Maxim*,
    No. 3:13-CV-00215 VLB, 2014 WL 523632 (D. Conn. Feb. 7, 2014) ................................ 16

*Eamiello v. Liberty Mobile Homes Sales, Inc.*,
    208 Conn. 620, 546 A.2d 805 (1988) ................................................................................. 20

*Fabri v. United Tech. Inter'l, Inc.*,
    387 F.3d 109 (2d Cir. 2004) ........................................................................................... 17, 19

*Ferro v. Metro. Ctr. for Mental Health*,
    No. 13 CIV. 2347 PKC, 2014 WL 1265919 (S.D.N.Y. Mar. 27, 2014) ............................... 11

*Flava Works, Inc. v. Gunter, Inc.*,
    No. 10 C 6517, 2011 WL 1791557 (N.D. Ill. May 10, 2011) ............................................. 14

*GICC Capital Corp. v. Tech. Fin. Grp., Inc.*,
   67 F.3d 463 (2d Cir. 1995)..................................................................28

*Gaynor v. Hi-Tech Homes*,
   149 Conn. App. 267 (2014) ...............................................................19

*Glazer v. Dress Barn, Inc.*,
   274 Conn. 33 (2005) ..........................................................................18

*Gristede's Foods, Inc. v. Unkechauge Nation*,
   532 F. Supp. 2d 439 (E.D.N.Y. 2007) ...............................................38

*Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*,
   No. 12 CIV. 8205, 2013 WL 3943267 (S.D.N.Y. July 31, 2013) ...........2

*Hemi Grp., LLC v. City of New York, N.Y.*,
   559 U.S. 1, 130 S. Ct. 983, 175 L. Ed. 2d 943 (2010) ...................36, 39

*Holiday Inns, Inc. v. 800 Reservation, Inc.*,
   86 F.3d 619 (6th Cir. 1996) ...........................................................13, 14

*Holmes v. Sec. Investor Prot. Corp.*,
   503 U.S. 258 (1992)........................................................................9, 36

*Hudson United Bank v. Cinnamon Ridge Corp.*,
   81 Conn. App. 557 (2004) .................................................................19

*Ideal Steel Supply Corp. v. Anza*,
   652 F.3d 310 (2d Cir. 2011)...............................................................36

*Indiaweekly.com, LLC v. Nehaflix.com, Inc.*,
   596 F. Supp. 2d 497 (D. Conn. 2009) ..................................................7

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010).................................................................33

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990)...............................................................10

*Katzman v. Victoria's Secret Catalogue*,
   167 F.R.D. 649 (S.D.N.Y. 1996) .........................................................29

*Katzman v. Victoria's Secret Catalogue, Div. of The Ltd., Inc.*,
   113 F.3d 1229 (2d Cir. 1997)...............................................................29

*L.S. v. Webloyalty.com, Inc.*,
   3:10-CV-1372 CSH, 2014 WL 3547640 (D. Conn. July 17, 2014) .........7

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014)....................................................................9, 11

*Manzo v. Uber Technologies, Inc.*,
   13 C 2407, 2014 WL 3495401 (N.D. Ill. July 14, 2014) .......................6

*McLaughlin Ford, Inc. v. Ford Motor Co.*,
192 Conn. 558 (1984) ................................................................................................ 18

*Midwest Grinding Co. v. Spitz*,
976 F.2d 1016 (7th Cir. 1992) .................................................................................... 2

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993) ...................................................................................... 29

*Mohegan Tribe of Indians of Connecticut v. Mohegan Tribe & Nation, Inc.*,
255 Conn. 358, 769 A.2d 34 (2001) ......................................................................... 16

*Moore v. PaineWebber, Inc.*,
189 F.3d 165 (2d Cir. 1999) ...................................................................................... 29

*Nat'l Org. for Women, Inc. v. Scheidler*,
510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) ............................................. 31

*Neidig v. Heilig*,
CV064021341S, 2007 WL 4215479 (Conn. Super. Ct. Nov. 7, 2007) .................... 23

*New York Transp., Inc. v. Naples Transp., Inc.*,
116 F. Supp. 2d 382 (E.D.N.Y. 2000) ..................................................................... 29

*Nosik v. Bowman, No. CV000379089*,
2002 WL 1842662 (Conn. Super. Ct. July 12, 2002) ............................................... 20

*Ouaknine v. MacFarlane*,
897 F.2d 75 (2d Cir. 1990) ........................................................................................ 31

*Parola v. Citibank (S. Dakota) N.A.*,
894 F. Supp. 2d 188 (D. Conn. 2012) ....................................................................... 21

*Plainville Elec. Products Co. v. Vulcan Advanced Mobile Power Sys., LLC*,
638 F. Supp. 2d 245 (D. Conn. 2009) ................................................................. 28, 29

*Proven Methods Seminars, LLC v. Am. Grants & Affordable Hous. Inst., LLC*,
No. Civ. S-07-01588, 2008 WL 269080 (E.D. Cal. Jan. 29, 2008) .......................... 38

*Reves v. Ernst & Young*,
507 U.S. 170, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993) ....................................... 35

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
30 F.3d 339 (2d Cir. 1994) ........................................................................................ 35

*Robert S. Weiss & Associates, Inc. v. Wiederlight*,
208 Conn. 525 (1988) ................................................................................................ 22

*S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp.*,
84 F.3d 629 (2d Cir. 1996) ........................................................................................ 29

*Sanford Hall Agency, Inc. v. Dezanni*,
CV044000576, 2004 WL 3090673 (Conn. Super. Ct. Dec. 2, 2004) ....................... 22

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994) ..................................................................... 7

*Siemiatkoski v. Windsor Fed. Sav. & Loan Ass'n*,
  X07CV065001791S, 2008 WL 4379060 (Conn. Super. Ct. Sept. 10, 2008) ........... 23

*Standard Petroleum Co. v. Fox*,
  CV094028045S, 2009 WL 4282080 (Conn. Super. Ct. Nov. 2, 2009) .................. 24

*The Sports Auth., Inc. v. Prime Hospitality Corp.*,
  89 F.3d 955 (2d Cir. 1996) ...................................................................... 13

*Time, Inc. v. Petersen Pub. Co. L.L.C.*,
  173 F.3d 113 (2d Cir. 1999) .................................................................... 13

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
  497 F.3d 144 (2d Cir. 2007) ............................................................... 9, 10

*In re Trilegiant Corp., Inc.*,
  No. 3:12-CV-00396 VLB, 2014 WL 1315244 (D. Conn. Mar. 28, 2014) ............... 28

*In re Trilegiant Corp., Inc.*,
  11 F. Supp. 3d 82 (D. Conn. Mar. 28, 2014) ...................................... 16, 28

*Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*,
  155 F. Supp. 2d 1 (S.D.N.Y. 2001)
  277 F.3d 253 (2d Cir. 2002) .................................................................... 13

*USA Certified Merchants, LLC v. Koebel*,
  262 F. Supp. 2d 319 (S.D.N.Y. 2003) ....................................................... 31

*United States v. 43.47 Acres of Land*,
  45 F. Supp. 2d 187 (D. Conn. 1999) ............................................. 39, 40, 41

*United States v. 43.47 Acres of Land, More or Less,*
  *Situated in Cnty. of Litchfield, Town of Kent*,
  896 F. Supp. 2d 151 (D. Conn. 2012) ....................................................... 41

*United States v. Autuori*,
  212 F.3d 105 (2d Cir. 2000) .................................................................... 29

*United States v. Turkette*,
  452 U.S. 576, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981) ............................... 33

*United States v. Western Pac. R.R.*,
  352 U.S. 59, 77 S. Ct. 161, 1 L. Ed. 2d 126 (1956) .................................... 39

*United States Fire Ins. Co. v. United Limousine Serv., Inc.*,
  303 F. Supp. 2d 432 (S.D.N.Y. 2004) ....................................................... 32

*Volunteer Firemen's Ins. Servs., Inc. v. McNeil & Co.*,
  221 F.R.D. 388 (W.D.N.Y. 2004) ............................................................... 7

*Votto v. Am. Car Rental*,
  273 Conn. 478 (2005) ............................................................................ 18

*Webster Fin. Corp. v. McDonald,*
    No. CV084016026S, 2009 WL 416059 (Conn. Super. Ct. Jan. 28, 2009) ........................ 27, 28

*Yellow Grp. LLC v. Uber Technologies Inc.,*
    12 C 7967, 2014 WL 3396055 (N.D. Ill. July 10, 2014) .......................................................... 6

## Statutes

15 U.S.C. § 1125(a)(1)(A) .................................................................................................... 12, 13

15 U.S.C. § 1125(a)(1)(B) ...................................................................................................... 4, 11

15 U.S.C. § 1127 ....................................................................................................... 13, 14, 15

15 U.S.C. § 45(a)(1) ................................................................................................................... 18

15 U.S.C. § 45(n) .................................................................................................................. 18, 19

18 U.S.C. § 1961(4) ................................................................................................................... 33

18 U.S.C. § 1962 ........................................................................................................................ 28

18 U.S.C. § 1962(a) ................................................................................................ 128, 30, 31, 32, 36

18 U.S.C. § 1962(a)-(c) .............................................................................................................. 28

18 U.S.C. § 1962(b) ............................................................................................... 28, 32, 33, 34, 36

18 U.S.C. § 1962(c) ................................................................................................... 28, 34, 35, 36

Conn. Agencies Regs. § 13b-96-50 ....................................................................................... 5, 40

Conn. Agencies Regs. § 13b-96-51 ....................................................................................... 5, 40

Conn. Gen. Stat. § 13b-3 ............................................................................................................ 40

Conn. Gen. Stat. § 13b-32 .......................................................................................................... 40

Conn. Gen. Stat. § 13b-95 ....................................................................................................... 6, 41

Conn. Gen. Stat. § 14-3 .............................................................................................................. 40

Conn. Gen. Stat. § 42-110b(a) ................................................................................................... 17

Conn. Gen. Stat. § 42-110b(b) ................................................................................................... 18

Federal Rule of Civil Procedure 8 ......................................................................................... 7, 17

Federal Rule of Civil Procedure 8(a) ........................................................................................... 9

Federal Rule of Civil Procedure 9(b) .................................................................. 7, 9, 16, 17, 28

## INTRODUCTION

Plaintiffs are Connecticut-based taxicab and livery companies that allege Uber unfairly competes against them by offering a mobile-phone application that allows consumers to easily request transportation from third-party transportation providers.  But there is nothing unfair or illegal about what Uber does.  This lawsuit is merely an attempt by Plaintiffs to use the courts to beat back a legitimate business, which provides a useful service to consumers frustrated with outdated transportation options, so that Plaintiffs can cling to the status quo.

The Amended Complaint includes a laundry list of alleged violations of transportation regulations, all based on a dubious premise—that the regulations, drafted before technology companies like Uber even existed, apply to Uber.  This premise is, at a minimum, subject to reasonable debate, and the proper forum for this debate is before the state agencies specifically tasked with interpreting and enforcing Connecticut's transportation laws, not federal court. Indeed, the Connecticut legislature recently tasked the Connecticut Department of Transportation and other agencies with studying the same issue raised in this suit—whether the existing regulatory structure applies to companies like Uber.  This lawsuit is not the proper place to make, in advance of the conclusion of the ongoing political and regulatory process, the determination that the existing regulations apply to smartphone-based transportation request services.

Plaintiffs have also failed to plead the elements of their claims.  *First*, Plaintiffs assert a Lanham Act claim for false advertising, but they fail to allege the existence of even a single false advertisement.  Nor do they allege facts showing how any purported misrepresentations *to consumers* proximately caused any alleged harm suffered by Plaintiffs.

*Second*, Plaintiffs assert a claim for false affiliation under the Lanham Act, alleging that Uber confuses consumers by falsely associating itself with Plaintiffs' taxicab and livery trademarks.  This claim fails because Plaintiffs fail to allege that they have any valid trademarks or

property interests in their identities and because, as Plaintiffs admit, Connecticut consumers cannot request transportation from taxicabs through the Uber smartphone application ("app"), so it is impossible for Uber to "use" Plaintiffs' purported trademarks.

*Third*, Plaintiffs assert a violation of the Connecticut Unfair Trade Practices Act (CUTPA), but this claim should be dismissed for similar reasons as the Lanham Act false-advertising claim: they allege no misrepresentations, no proximate cause, and no unfair conduct.

*Fourth*, Plaintiffs claim that Uber intentionally interfered with their contractual relations with taxicab and livery drivers, as well as their contracts with credit-card processing companies that place their machines in taxicabs. This claim should be dismissed because, among other things, Plaintiffs fail to plead facts showing Uber acted tortiously rather than simply establishing Uber's own business; they fail to allege Uber specifically intended to interfere with their contracts; and they fail to allege Uber caused any breaches or other harm to Plaintiffs.

*Fifth*, Plaintiffs' three claims for civil violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act should be dismissed. Plaintiffs' use of the RICO statute against a technology company like Uber is a classic case of overreaching "civil RICO plaintiffs [who] persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions."[1] A civil RICO claim in this context does not pass the straight-face test, and Plaintiffs fail to plead facts meeting several elements of their RICO claims, including predicate acts of wire fraud and proximate causation.

*Sixth*, the Court should abstain from deciding this state-law transportation issue under the doctrine of primary jurisdiction. The question of whether Uber should be allowed to operate in Connecticut is a regulatory and political question, not one for this Court to decide. For these

---

[1] *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, No. 12 CIV. 8205, 2013 WL 3943267, at *9 (S.D.N.Y. July 31, 2013) (quoting *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992)).

reasons and the others described below, the Court should dismiss the Amended Complaint with prejudice.

## PLAINTIFFS' ALLEGATIONS

Plaintiffs are "taxicab and livery service operators" operating in Connecticut.  Am. Compl. ¶¶ 1, 2–16.  They claim that they have invested "substantial capital" in complying with federal, state and local laws.  Am. Compl. ¶ 1.  According to Plaintiffs, however, Uber does not comply with those laws and otherwise misrepresents the nature of its service.  Am. Compl. ¶ 1.

Uber provides a smartphone application that allows users all over the world to easily request transportation services from third-party transportation providers.  *See* Am. Compl. ¶¶ 29–30.  Uber "own[s] no taxicabs or livery cars . . .,"  Am. Compl. ¶ 28, and similarly owns "no cars, no Certificates, no Permits, no plates, and employ[s] no drivers," *id.* ¶ 32.

Plaintiffs claim that Uber offers three transportation-request options  in Connecticut: uberX, UberBlack, and UberSUV.  Am. Compl. ¶ 29.  The uberX option enables users of the app to request transportation services from third-party transportation providers who do not have commercial driver's licenses and who use their personal vehicles.  *Id.*  This is the least expensive transportation option that users can request through the app.  *See id.*  The UberBlack and UberSUV options, on the other hand, enable users of the app to request transportation services from third-party transportation providers who drive more expensive livery cars (also known as "black cars") or luxury SUVs.  *Id.*  Plaintiffs allege that the non-commercial vehicles requested through the uberX platform, as well as the vehicles requested through UberBlack and UberSUV, "function as taxicabs and livery vehicles."  Am. Compl. ¶ 34.  Plaintiffs admit that the uberTAXI request option, in which users of the app can request transportation from a commercially licensed taxicab, is not currently available in Connecticut.  Am. Compl. ¶ 29 (stating "UberTAXI and

UberLUX[] are currently not available in the State of Connecticut"); *see also* ¶ 37 ("UberTAXI is not even available in Connecticut right now, and may not ever be"), ¶ 63 (same).

Plaintiffs assert seven causes of action against Uber.  Count I asserts a violation of the Lanham Act for allegedly false representations about Uber's ability to operate legally in Connecticut.  Am. Compl. ¶¶ 73–75.  Count II asserts a violation of the Lanham Act for Uber's alleged false partnership with "legally owned and operated taxicab and livery companies."  *Id.* at ¶ 77.  Count III asserts a claim under the Connecticut Unfair Trade Practices Act for a variety of alleged misrepresentations and for allegedly operating illegally.  *Id.* at ¶ 81. Count IV asserts a claim for common-law intentional interference with contractual relationships.  *Id.* at ¶ 85.  And Counts V through VII assert violations of RICO.  *Id.* at ¶¶ 88–102.

## ARGUMENT

### I.        Plaintiffs Fail to State a Lanham Act Claim for False Advertising

Count I of the Amended Complaint asserts a Lanham Act false-advertising claim.  This section of the "Lanham Act prohibits any 'false or misleading representation of fact which . . . in commercial advertising or promotion, misrepresents the nature [or] characteristics . . . of another person's goods, services, or commercial activities."  *Doctor's Associates, Inc. v. QIP Holder LLC*, CIV.A306CV1710VLB, 2010 WL 669870, at *15 (D. Conn. Feb. 19, 2010) (quoting 15 U.S.C. § 1125(a)(1)(B)).[2]  Plaintiffs base their false-advertising claim on the allegation that Uber "represent[s] to consumers in its commercial advertising and promotion that the Defendants'

---

[2]   15 U.S.C. § 1125(a)(1)(B) states: "(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-- . . . (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

vehicles are operating lawfully in Connecticut . . . ."  Am. Compl. ¶ 74.  This bare allegation fails

to state a claim under the Lanham Act for the reasons that follow.

A.     **Plaintiffs Cannot Premise Their Lanham Act Claim on Violations of Local Transportation Laws**

The Lanham Act is not a "handy device to reach and decide all sorts of local law

questions."  *Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484, 490 (D.C. Cir. 1996).  Under *Dial A*

*Car* and other established precedent, Plaintiffs cannot use the Lanham Act to enforce their

subjective interpretation of local transportation laws.  In *Dial A Car*, the D.C. Circuit held that a

limousine company could not use the Lanham Act to enforce limousine regulations against two

taxicab companies that were using their taxicabs as a limousine service.  82 F.3d at 485–88.  The

limousine company alleged that the taxicab companies, by using taxicabs for limousine-like

service, were violating a limousine regulation of the D.C. Taxicab Commission.  *Id.* at 485–86.

But the regulation did not have a private right of action, so the plaintiffs tried to enforce the

regulation indirectly by pleading a false-advertising claim under the Lanham Act based on the

taxicab companies' alleged misrepresentation that they could operate legally.  *Id.* at 486.

The D.C. Circuit saw the limousine company's claim for what it really was: "the alleged

misrepresentation of fact upon which [the plaintiff] has premised its Lanham Act claim is more

appropriately viewed as a disagreement about the proper interpretation of local taxicab regulations

promulgated by the D.C. Taxicab Commission."  *Id.* at 485.  And because the taxicab commission

had not yet resolved the conflicting interpretations, the "misrepresentation" at issue was "a

contested question of statutory interpretation rather than a clearly established fact," and therefore

the "statements at issue cannot form the basis of a Lanham Act claim."  *Id.*

The holding in *Dial A Car* applies squarely here.  Like that case, here the regulations vest

enforcement authority in the Connecticut DMV, *see* Conn. Agencies Regs. §§ 13b-96-50, 51, not

private entities such as Plaintiffs.  Like the plaintiffs in *Dial A Car*, Plaintiffs here are "simply

using the Lanham Act to try to enforce [their] preferred interpretation of [local taxicab regulations] instead of adjudicating the issue before the Commission." *Dial A Car*, 82 F.3d at 488.  And also like in *Dial A Car*, Plaintiffs here allege Uber misrepresents that it complies with local regulations, but as the D.C. Circuit held, "[i]nstead of bringing this claim in federal court, [Plaintiffs] should be forced to take [their] arguments to the [taxicab commission] and lobby the [c]ommission to crack down on [Uber's] activities." *Id.* at 490.  Other courts have similarly applied *Dial A Car* to dismiss claims asserted by taxicab companies against Uber.  *Manzo v. Uber Technologies, Inc.*, 13 C 2407, 2014 WL 3495401, at *4 (N.D. Ill. July 14, 2014) (holding that plaintiff could not use false-advertising claims "'as a backdoor method' to bring a claim that Uber violates Chicago taxi and livery regulations"); *Yellow Grp. LLC v. Uber Technologies Inc.*, 12 C 7967, 2014 WL 3396055, at *7 (N.D. Ill. July 10, 2014) (holding claims based on alleged misrepresentations regarding compliance with regulations are precluded by *Dial A Car*).

Indeed, it is not even clear that Connecticut's transportation laws apply to a technology company like Uber.  As Plaintiffs allege, Uber does not own any cars or employ any drivers.  Am. Compl. ¶¶ 28, 32.  And the definitions in the regulations that Plaintiffs cite do not appear to apply to smartphone-based transportation-request services.  *See, e.g.,* Conn. Gen. Stat. § 13b-95 (defining "taxicab" to "include[] any motor vehicle . . . accepting or soliciting passengers . . . for hire," but not referencing any smartphone-based request service).  It is, at the very least, debatable whether the existing transportation laws, created before companies like Uber existed, even apply to Uber.  In other words, just as the court in *Dial A Car* held, Uber cannot be liable for alleged statements of opinion regarding legal interpretation.  *Dial A Car*, 82 F.3d at 489 (stating "it would be unthinkable for a federal court to suggest that a regulated taxicab company can be held liable under the Lanham Act for failing to anticipate the *court's* subsequent interpretation of a municipal

6

regulation") (emphasis in original).  "[N]o matter which view is right, there is no dispute that such a question is within the jurisdiction of the" local taxicab regulators.  *Id.* at 488.

Plaintiffs' false-advertising Lanham Act claim should be dismissed on this ground alone.

### B.        Plaintiffs Fail to Allege Uber Made Any Misrepresentations

Plaintiffs' Lanham Act claim for false advertising also fails because Plaintiffs have not pled even a single, concrete misrepresentation.  There is a split in authority regarding whether the heightened pleading standard of Federal Rule of Civil Procedure 9(b) or whether Rule 8 applies to false advertising claims, but no matter what standard applies, Plaintiffs fail to meet it.[3]  To satisfy Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  And to satisfy Rule 8, a plaintiff must, at a minimum, state the content of the alleged misrepresentations.  *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 886 F. Supp. 377, 383 (S.D.N.Y. 1995) *aff'd sub nom. Bio Tech. Gen. Corp. v. Genentech, Inc.*, 267 F.3d 1325 (Fed. Cir. 2001).

In Count I, Plaintiffs allege that "[b]y representing to consumers in its commercial advertising and promotion that the Defendants' vehicles are operating lawfully in Connecticut, *as stated above*, the Defendants" are liable for false advertising under the Lanham Act.  Am. Compl. ¶ 74 (emphasis added).  But there are no specific misrepresentations quoted anywhere in the Amended Complaint.  The closest that Plaintiffs come to quoting an alleged misrepresentation from Uber is in paragraph 46:

---

[3]   *Compare L.S. v. Webloyalty.com, Inc.*, 3:10-CV-1372 CSH, 2014 WL 3547640, at *6–7 (D. Conn. July 17, 2014) (applying Rule 9(b) to false advertising claim in which defendant allegedly misled consumers into enrolling in "rewards" program) *and Volunteer Firemen's Ins. Servs., Inc. v. McNeil & Co.*, 221 F.R.D. 388, 393 (W.D.N.Y. 2004) (applying Rule 9(b) to false-advertising claim under the Lanham Act) *with Indiaweekly.com, LLC v. Nehaflix.com, Inc.*, 596 F. Supp. 2d 497, 502 n.3 (D. Conn. 2009) (declining to follow *Volunteer Firemen's Ins. Servs.*, but doing so in context of trademark-infringement case, not false advertising).

Uber *previously* attempted to reassure customers that, despite Uber's relaxed standards for selecting partners, it took steps to weed out unsuitable drivers: "We carefully select the fleet partners we work with and ensure that they have proper licensing and insurance." (formerly available at http://support.uber.com/entries/22346733-how-does-uber-select-drivers).  Uber, however, has since removed even this reassurance on its website since last accessed on April 3, 2013.

Am. Compl. ¶ 46 (emphasis added).[4]

This allegation fails to adequately allege a misrepresentation for several reasons.  First, Plaintiffs allege Uber "previously" made this representation, which they "last accessed" on April 3, 2013, *id.*, a year before Uber began offering its application in Connecticut, Am. Compl. ¶ 27 (stating Uber became available in Connecticut on April 24, 2014).  Plaintiffs therefore fail to allege the representation existed when Uber made its app available in Connecticut or that any Connecticut consumers were exposed to it.[5]  Second, even if the representation had been made during a relevant time period, Plaintiffs fail to allege that this representation was false "at the time" it was made.  *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 720 F. Supp. 194, 205 n. 12 (D.D.C. 1989) (stating the challenged statements must be allegedly "false or misleading *at the time they are made*") (emphasis in original) (reversed on other grounds).  Third, taken out of context, it is unclear which service (uberX, UberBlack, UberTAXI) was the subject of the representation, and different regulations apply to different services, making it unclear how to determine whether the statement is accurate.  Fourth, on its face nothing about this alleged representation relates to Connecticut.

---

[4]   Plaintiffs also make the vague allegation that "The Defendants nonetheless falsely assure their customers that their drivers are fully licensed with the appropriate insurance," Am. Compl. ¶ 66, which appears to be based on the same allegation set forth in ¶ 46.

[5]   This is particularly true, given that the representation was allegedly contained in a relatively obscure link that would not be readily accessible from Uber's homepage Plaintiffs allege the representation appeared at http://support.uber.com/entries/22346733-how-does-uber-select-drivers. Am. Compl. ¶ 46.

Plaintiffs must also plead that the alleged misrepresentations at issue "involved an inherent or material quality of the product," *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 n.3 (2d Cir. 2007), which they completely fail to allege, even in conclusory fashion.  Plaintiffs' Lanham Act claims should be dismissed for this reason as well.

Plaintiffs have failed to meet Rule 9(b) or even the notice-pleading standard in Rule 8(a). Plaintiffs fail to identify what Uber represented to Connecticut consumers that Plaintiffs believe is misleading, and Uber therefore has no notice of what representations are at issue here.

### C.    Plaintiffs Fail to Plead That Uber's Alleged Misrepresentation Proximately Caused Their Alleged Injuries

Plaintiffs fail to allege facts showing that the claimed misrepresentation proximately caused them harm, and the Court should dismiss the Lanham Act claim for this reason as well.  In order to state a claim under the Lanham Act, a plaintiff must "plead (and ultimately prove) an injury to a commercial interest in sales or business reputation *proximately caused* by the defendant's *misrepresentations*."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014) (emphasis added).  "[T]he proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct."  *Id.* at 1390.  A plaintiff cannot establish proximate cause "if the harm is purely derivative of 'misfortunes visited upon a third person by the defendant's acts.'"  *Id.* (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).[6]

In order to allege proximate cause, Plaintiffs would have to plead an untenable chain of events.  First, Plaintiffs would have to allege that Uber actually made a misrepresentation, which

---

[6]    Because all false-advertising claims involve consumer deception, "the intervening step of consumer deception is not fatal to the showing of proximate causation."  *Lexmark*, 134 S. Ct. at 1391.  Still, a plaintiff "ordinarily must show economic or reputational injury flowing *directly* from the deception wrought by the defendant's advertising; and [] that occurs when deception of consumers causes them to withhold trade from the plaintiff."  *Id.* (emphasis added).

as described above, they have failed to do.  Second, Plaintiffs would have to allege that the representation was material to consumers, s*ee Time Warner Cable*, 497 F.3d at 153 n.3, which they also failed to do.  Third, they must allege facts tying this representation to some harm they suffered.  But doing so is impossible, as reflected by the fact that they do not and cannot allege that consumers chose to use Uber's app because of the alleged representation regarding compliance with Connecticut's transportation laws as opposed to, for example, the simple convenience requesting transportation through the app, and that those consumers who chose Uber because of the representation would have instead sought transportation from a driver working for Plaintiffs Greenwich Taxi or East Hartford Cab Company as opposed to some other taxicab company that is not a plaintiff in this lawsuit or some other mode of transportation.  Moreover, because the taxi fares go to the drivers and not to the Plaintiffs directly, Am. Compl. ¶ 85(i), Plaintiffs have not even attempted to allege how much any such lost fares affected Plaintiffs' lease or rental revenue.

A further obstacle to pleading proximate causation is that there are 15 plaintiffs in this case.  Am. Compl. ¶¶ 2–16.  There are no allegations whatsoever tracing the effect of Uber's alleged representations back to any particular Plaintiff.  Instead, the Amended Complaint treats all the Plaintiffs as a single unit, akin to a class action, without any factual or legal justification for doing so.  Including 15 plaintiffs, each of which must establish that Uber's alleged representations proximately caused their injuries, only heightens the difficulty for Plaintiffs to adequately plead proximate causation.  *Cf. Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990) (where multiple plaintiffs who allegedly, among other things, suffered similar injuries from the defendants and were represented by the same counsel, trial court acted properly in ensuring that each plaintiff's claim was considered individually).

Plaintiffs' alleged injury "might instead have resulted from 'any number of [other] reasons,'" *Lexmark*, 134 S. Ct. at 1394 (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458-59 (2006)), and Plaintiffs would have to identify how much of their lost revenue was due to the alleged misrepresentation, as opposed to the myriad other factors that could affect their businesses, such as general economic conditions, the quality of Plaintiffs' services, other non-actionable representations that Uber made to users, or the mere availability of Uber's application in Connecticut. Trying to tease out how much of Plaintiffs' alleged drop in revenue came from this one alleged misrepresentation would involve an impermissible amount of "'speculative . . . proceedings'" and "'intricate, uncertain inquiries.'" *Lexmark*, 134 S. Ct. at 1394 (quoting *Anza*, 547 U.S. at 459-60);[7] *see also Ferro v. Metro. Ctr. for Mental Health*, No. 13 CIV. 2347 PKC, 2014 WL 1265919, at *4 (S.D.N.Y. Mar. 27, 2014) (granting motion to dismiss RICO claim based on misrepresentations because "plaintiffs' alleged harm is too attenuated from the alleged" misrepresentations).[8] It is simply implausible that Plaintiffs have been injured in some measurable way by this particular alleged representation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating claim must be "plausible on its face").

The District of Massachusetts dismissed a Lanham Act claim against Uber for similar reasons. *Boston Cab Dispatch, Inc. v. Uber Technologies, Inc.*, CIV.A. 13-10769-NMG, 2014 WL 1338148, at *1, *7 (D. Mass. Mar. 27, 2014) (dismissing Lanham Act § 1125(a)(1)(B) claim

---

[7] The Supreme Court ultimately held in *Lexmark* that the plaintiff had alleged proximate cause. *Lexmark*, 134 S. Ct. at 1394. But the plaintiff there had alleged the defendant made misrepresentations directly disparaging the plaintiff's products, which Plaintiffs here have not alleged. *Id.* at 1393. The defendant had also allegedly disparaged the products of third party remanufacturers that used the plaintiff's components, so "there is likely to be something very close to a 1:1 relationship between the number of" remanufacturers' products sold and the number of plaintiff's components sold (or not sold). *Id.* at 1394. There is no similar 1:1 relationship at issue here.

[8] Although *Ferro* was a RICO case, the Supreme Court in *Lexmark* relied heavily on its opinion in *Anza*, an opinion address proximate cause for RICO claims, for its discussion of proximate cause in the context of the Lanham Act. *Lexmark*, 134 S. Ct. at 1394

with prejudice).  The taxicab and limousine plaintiffs in that case failed to connect any alleged

misrepresentations by Uber to damage to their businesses: Although they pled harm to their

businesses, "[t]here is no reference to any diversion of sales, any lost customers or any lessening

of goodwill or harm to plaintiffs' reputation *as a result of this misrepresentation*" regarding the

amount of a gratuity.  *Boston Cab Dispatch, Inc. v. Uber Technologies, Inc.*, No. CIV.A. 13-

10769-NMG, 2014 WL 1338144, at *15 (D. Mass. Feb. 28, 2014) *report and recommendation*

*adopted in part, rejected in part on other grounds*, No. CIV.A. 13-10769-NMG, 2014 WL

1338148 (D. Mass. Mar. 27, 2014) (emphasis added).  The court accordingly held that there was

an "absence of harm as a result of any such misrepresentations" and dismissed the Lanham Act

claim on that basis.  *Id.*

## II.    Plaintiffs Fail to State a Lanham Act Claim for False Association

In addition to their false-advertising claim, in Count II Plaintiffs allege a claim for false

affiliation under the Lanham Act.  Am. Compl. ¶¶ 76–78.  They claim that Uber falsely represents

it is "affiliated with, connected with, associated with, sponsored by and approved by legally

owned and operated taxicab and livery companies including the Plaintiffs."  Am. Compl. ¶ 77

(citing 15 U.S.C. § 1125(a)(1)(A)).[9]  This conclusory allegation fails to state a claim under the

Lanham Act for the reasons that follow.

---

[9]   15 U.S.C. § 1125(a)(1)(A) states: "(1) Any person who, on or in connection with any
goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or
device, or any combination thereof, or any false designation of origin, false or misleading
description of fact, or false or misleading representation of fact, which-- (A) is likely to cause
confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of
such person with another person, or as to the origin, sponsorship, or approval of his or her goods,
services, or commercial activities by another person . . . shall be liable in a civil action by any
person who believes that he or she is or is likely to be damaged by such act."

### A.     Plaintiffs Fail to Allege They Have Recognizable Trademarks

To state a claim under § 1125(a)(1)(A), Plaintiffs must allege they have "a valid mark that is entitled to protection under the Lanham Act." *The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996).  Plaintiffs have failed completely in this regard.  Plaintiffs do not allege any facts establishing that any Plaintiff has valid, protectable trademarks or other intellectual property, and their false-affiliation Lanham Act claim should be dismissed.  *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 155 F. Supp. 2d 1, 21 (S.D.N.Y. 2001) *aff'd in part and remanded,* 277 F.3d 253 (2d Cir. 2002) (dismissing Lanham Act claim because plaintiff lacked valid trademark); *Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*, 871 F.2d 697, 700 (7th Cir. 1989) (dismissing Lanham Act claim because plaintiff had no commercial interest in trade name).

### B.     Plaintiffs Fail to Allege That Uber "Used" Their Trademarks

A fundamental requirement for Lanham Act liability is that the defendant actually "use[] in commerce" the plaintiff's trademarks.  15 U.S.C. § 1125(a)(1)(A) (prohibiting persons from "us[ing] in commerce any word, term, name, symbol, or device, or any combination thereof"); 15 U.S.C. § 1127 (defining "trademark" as "any word, name, symbol, or device, or any combination thereof"); 15 U.S.C. § 1125(a)(1)(A) (defining "use in commerce" as follows: "a mark [is] used in commerce . . . on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce."); *Time, Inc. v. Petersen Pub. Co. L.L.C.*, 173 F.3d 113, 117 (2d Cir. 1999) (stating plaintiff must prove "that the defendant's *use* of [the mark] is likely to cause confusion") (emphasis added).  "[T]he defendants' use of a protected mark or their use of a misleading representation is a *prerequisite* to the finding of a Lanham Act violation." *Holiday Inns, Inc. v. 800 Reservation, Inc*., 86 F.3d 619, 626 (6th Cir. 1996).

13

Courts have interpreted this "use" requirement to mean that the defendant must affirmatively use the trademark.  *See Holiday Inns, Inc.*, 86 F.3d at 626  (dismissing claim where, even though there was consumer confusion, defendant never actually used the plaintiff's marks); *Flava Works, Inc. v. Gunter, Inc.*, No. 10 C 6517, 2011 WL 1791557, at *7 (N.D. Ill. May 10, 2011) (holding that even though defendant's website "often contains" plaintiff's marks, that alone was insufficient to establish "use in commerce").  Mere association, without affirmative use of the mark, is insufficient.  *See id.*

Here, Plaintiffs fail to allege that Uber uses their marks.  First, Plaintiffs allege repeatedly that uberTAXI is not even available in Connecticut.  Am. Compl. ¶ 29 (stating "UberTAXI and UberLUX[] are currently not available in the State of Connecticut"); ¶¶ 37, 63.  Thus, in Connecticut it is not even possible to request transportation from a taxicab through the Uber app. Because Plaintiffs admit that Uber does not even offer the uberTAXI option in Connecticut, Plaintiffs have not and cannot plead Uber affirmatively used their trademarks.

Second, Plaintiffs do not allege that Uber uses Greenwich Taxi's, or any other Plaintiffs', trademarks in any of Uber's advertising or marketing materials.  Plaintiffs do not allege that Uber uses their trademarks on its website or its app.  In short, Plaintiffs fail to allege any "use in commerce" of their trademarks as that term is defined under the Lanham Act.  15 U.S.C. § 1127 (defining "use in commerce" as "used or displayed in the sale or advertising of services and the services are rendered in commerce").

Third, despite their claim that uberTAXI is not available in Connecticut, Plaintiffs allege that "Uber also 'partners' with legally operating Connecticut taxicab and livery drivers, who make an illegal side deal with Uber to take its customers while simultaneously working a normal shift with his or her authorized company."  Am. Compl. ¶ 60.  But they fail to allege that Uber is aware of or permits Connecticut taxicabs to provide transportation through its application.  Indeed,

Plaintiffs allege that Uber's request service is intended for non-commercial vehicles (uberX) and livery vehicles (UberBlack and UberSUV).  Am. Compl. ¶ 60.  It thus appears that Plaintiffs are alleging that taxicab drivers[10] are "illegal[ly]" sneaking onto Uber's transportation-request service, but the fact that taxicab drivers are allegedly using uberX improperly cannot be a "use" by Uber of Plaintiffs' trademarks.  Uber cannot "use" Plaintiffs trademarks when Plaintiffs admit that the services offered in Connecticut are specifically designed for personal vehicles and livery vehicles, not taxicabs.  Am. Compl. ¶ 29.

Fourth, to the extent Plaintiffs are attempting to allege that Uber "uses" Plaintiffs' trademarks when a rider requests transportation through the app and a taxicab inexplicably[11] shows up to transport the consumer, thereby causing the consumer to believe that Uber and the taxicab company are associated, this too fails to state a claim.  The Lanham Act defines "use in commerce" as "used or displayed in the sale or advertising of services and the services are rendered in commerce."  15 U.S.C. § 1127.  Thus, a "use in commerce" would only occur if Uber "used or displayed" Plaintiffs' marks "in the *sale or advertising* of services . . . ."  *Id.* (emphasis added).  But even when a taxicab appears in response to a request made through the uberX or UberBlack platforms, Uber still has not used Plaintiffs' marks "in the sale or advertising of services."  The request has already occurred, and a taxicab showing up *after the request* is not a sale or advertisement.

Plaintiffs' false-association Lanham Act claim should be dismissed.

---

[10]   Plaintiffs also allege that livery drivers, in addition to taxicab drivers, are using the Uber app.  Am. Compl. ¶ 60.  Although livery drivers can use the UberBlack platform to receive transportation requests, as discussed above Plaintiffs fail to allege that the Plaintiff livery companies have any valid trademarks or trade dress interests in their presumably unmarked, black vehicles.

[11]   It is inexplicable because, as Plaintiffs admit, uberTAXI is not available in Connecticut, so a consumer would expect a non-commercial vehicle when requesting uberX or a livery vehicle when requesting UberBlack or UberSUV.  *See* Am. Compl. ¶ 29.

### III. Plaintiffs Fail to State a Claim Under the Connecticut Unfair Trade Practices Act ("CUTPA")

#### A. Plaintiffs' CUTPA Claim Fails for the Same Reasons that Their Lanham Act Claims' Fail

Plaintiffs' CUTPA claim is based on the same allegations as their Lanham Act claims – namely, that Defendants falsely affiliated with taxicab and livery authority owners and operators and falsely advertised their ability to operate legally in Connecticut and in compliance with Connecticut law. *Compare* Am. Compl. ¶ 81 (i-iv), *with id.* ¶¶ 73-78. Given that Plaintiffs have failed to state a viable Lanham Act claim, however, *see supra* §§ I-II, their CUTPA claim necessarily fails as well. *See Mohegan Tribe of Indians of Connecticut v. Mohegan Tribe & Nation, Inc.*, 255 Conn. 358, 360 n.4, 769 A.2d 34, 37 n.4 (2001). For this reason alone, Plaintiffs' CUTPA claim should be dismissed.

#### B. Plaintiffs' CUTPA Claim Should Also be Dismissed for Failure to Satisfy Rule 9(b)'s Heightened Pleading Standard

Although a CUTPA claim need not contain the elements of fraud, where a plaintiff in federal court bases such a claim on allegations of fraud, as the Plaintiffs have done here, they must satisfy the particularity requirement of Rule 9(b). *In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 120 (D. Conn. Mar. 28, 2014); *E. Point Sys., Inc. v. Maxim*, No. 3:13-CV-00215 VLB, 2014 WL 523632, at *9 (D. Conn. Feb. 7, 2014). Here, Plaintiffs vaguely enumerate several actions, sounding in fraud, as the basis for their CUTPA claim – namely, that Uber falsely claims an affiliation with lawfully operating taxicab and livery companies; falsely claims that Uber collects a $1 fee and "pay[s] the full gratuity" to drivers who offer transportation requested through Uber; falsely claims that Uber's application is legal under Connecticut law or that drivers who offer transportation requested through Uber do not need to be licensed; and that Uber unfairly competes by not incurring the expense of complying with Connecticut transportation laws. Am. Compl. ¶ 81.

16

However, Plaintiffs do not identify with the requisite particularity a single, concrete misrepresentation.  As discussed above, *supra* § I.B, the Plaintiffs have not identified what exactly Uber misrepresented to Connecticut users, when those representations were made, or why those statements were fraudulent.   Accordingly, Plaintiffs' allegations fail to satisfy Rule 9(b)'s particularity requirement, and Plaintiffs' CUTPA claim should be dismissed.[12]

## C.     Plaintiffs Have Not Pled Substantial Injury

The Plaintiffs have also failed to state a viable CUTPA claim for the additional reason that they do not and cannot adequately plead substantial injury.  CUTPA proscribes "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42–110b(a).   Historically, courts have applied the "cigarette rule" to determine whether a practice is unfair under CUTPA.[13]   However, the Connecticut Supreme Court repeatedly has questioned the continued viability of the cigarette rule, and currently has pending before it the question of whether the cigarette rule should be abandoned in favor of the "substantial injury test" for determining whether an act or practice is unfair for purposes of CUTPA.  *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, SC 19219; *see DiTeresi v. Stamford Health Sys. Inc.*, FSTCV065001340S, 2011 WL 4424399, at *5 (Conn. Super. Ct. Sept. 2, 2011) ("It would appear

---

[12]   For the reasons discussed *supra* § I.B, Plaintiffs' allegations of misrepresentations also fail to meet Rule 8.

[13]   The cigarette rule provides the following three factors to determine whether a practice is unfair under CUTPA:

> (1) Whether the practice, without necessarily having been previously considered unlawful offends public policy as it has been established by statutes, the common law, or otherwise – whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].

*Fabri v. United Tech. Inter'l, Inc.*, 387 F.3d 109, 120 (2d Cir. 2004) (alterations in original).

that the *Artie's Auto Body, Inc.* litigants have accepted the invitation of four justices of the Connecticut Supreme Court to test the continued viability of the cigarette rule in unfair practices CUTPA cases.").[14]  Given this fact, Uber respectfully requests that, should the Court conclude that application of the substantial injury test would be determinative of the Plaintiffs' CUTPA claim, it reserve ruling until the Connecticut Supreme Court renders its decision regarding the adoption of the substantial injury test.

Assuming that the substantial injury test is held to govern Plaintiffs' CUTPA claim – as it should – the Plaintiffs have failed to meet it.  Under the test, an act or practice cannot be deemed to be unfair "unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or competition."  15 U.S.C. § 45(n).  While the Plaintiffs baldy allege that Defendants' purportedly "unfair and deceptive acts and practices have caused substantial injury to consumers," Am. Compl. ¶ 82, there are no further factual allegations – none – to support the claim.  Rather, it is a mere conclusory recitation of the elements of a CUTPA action.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").[15]

---

[14]   CUTPA states that it "shall be guided by interpretations given by the [FTC] and the federal courts to Section 5(a)(1) of the [FTC] Act (15 U.S.C. § 45(a)(1)), as from time to time amended."  Conn. Gen. Stat. § 42-110b(b).  In 1982, the FTC abandoned the cigarette rule and codified the substantial injury test in 15 U.S.C. § 45(n).  *See Am. Car Rental, Inc. v. Comm. Of Consumer Protection*, 273 Conn. 296, 305 n. 6 (2005); *Votto v. Am. Car Rental*, 273 Conn. 478, 484 n. 3 (2005); *Glazer v. Dress Barn, Inc.*, 274 Conn. 33, 82 n. 34 (2005).

[15]   Plaintiffs further allege that Defendants' conduct also caused substantial injury to "lawfully operating taxicab and livery companies."  Am. Compl. ¶ 82.  To the extent this conclusory allegation has any relevance, the Connecticut Supreme Court has opined that the loss of sales or revenue due to increased competition "has been traditionally considered insignificant when compared to the benefit to consumers" and thus "[i]ncreased competition alone, resulting from a practice containing none of the hallmarks of traditionally unfair practices, does not constitute a cause of action under CUTPA."  *McLaughlin Ford, Inc. v. Ford Motor Co.*, 192 Conn. 558, 571 (1984).

Not only have Plaintiffs thus failed to allege substantial injury, they have alleged no facts that could plausibly establish that the purported injury "is not reasonably avoidable by consumers themselves" nor "outweighed by countervailing benefits to consumers or competition."  15 U.S.C. § 45(n).[16]  Accordingly, Plaintiffs do not and cannot meet the substantial injury test, and their CUTPA claim should therefore be dismissed.

### D.    Plaintiffs' Allegations Fail to Allege Conduct Which Rises to the Level of a CUTPA Violation Under the Cigarette Rule

Even if the cigarette rules applies to Plaintiffs' CUTPA claim, it is well established that "'[n]ot every misrepresentation rises to [the] level of [a] CUTPA violation'" under the rule. *Gaynor v. Hi-Tech Homes*, 149 Conn. App. 267, 276 (2014) (quoting *Hudson United Bank v. Cinnamon Ridge Corp.,* 81 Conn. App. 557, 571 (2004)).  To rise to the level of a CUTPA violation, "[t]here must be some nexus with a public interest, some violation of a concept of what is fair, some immoral, unethical, oppressive or unscrupulous business practice or some practice that offends public policy." *Id.* (internal quotation marks and citation omitted).

Here, Plaintiffs' allegations fail to satisfy the first prong of the cigarette rule because they cannot demonstrate that Uber's conduct offends "established" public policy.  *Fabri*, 387 F.3d at 120.  The Plaintiffs' CUTPA claim is predicated entirely on the premise that certain Connecticut taxicab and livery regulations apply to a technology company like Uber.  For the reasons discussed above, *supra* § I.A, however, this premise (at a minimum) is subject to reasonable debate, and thus far from "established."  Consequently, Plaintiffs cannot demonstrate that Uber's alleged conduct offends public policy.[17]  For similar reasons, Plaintiffs cannot satisfy the second

---

[16]    Indeed, there can be no serious dispute that the many benefits to consumers and competition created by the use of Uber's software outweighs whatever loss of sales Plaintiffs' are attempting to claim.

[17]    Conduct stemming from a reasonable disagreement regarding the proper interpretation and application of a statute or regulation is not unfair or deceptive conduct within the meaning of

prong of the cigarette rule.  It cannot be unfair, immoral, or deceptive for Uber legitimately to

disagree with Plaintiffs regarding the proper interpretation of local taxicab and livery regulations

or to make statements and conduct its business in a manner consistent with its good faith

interpretation.  Finally, for the reasons discussed above, *supra* § III.C, the Plaintiffs' conclusory

allegations of substantial injury do not satisfy the third prong of the cigarette rule.[18]

Simply put, Plaintiffs have failed to plead that Uber's conduct rose to the level of a

CUTPA violation under any prong of the cigarette rule.

### E.  Plaintiffs' CUTPA Claim Must Also Be Dismissed For Failure to Allege that Uber's Acts Were the Proximate Cause of the Plaintiffs' Injuries

A plaintiff asserting a CUTPA claim must also allege that the defendant's actions were the

"proximate cause" of the plaintiff's damages.  *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*,

287 Conn. 208, 218, 947 A.2d 320, 330 (2008).  As discussed *supra* in § I.C and *infra* in § V.B.3,

Plaintiffs have not pled facts establishing that Uber's alleged representations and actions have

proximately caused their alleged harm.  The chain of inferences between the misrepresentations

and harm to Plaintiffs is far too attenuated to establish proximate causation.  *See supra* § I.C; *infra*

---

CUTPA.  "Although the subjective good faith of one who has in fact performed an unfair or deceptive act is not a defense to a CUTPA violation," the Connecticut Supreme Court has explained that "there is nothing unfair or deceptive in a reasonably grounded constitutional challenge of a statute."  *Eamiello v. Liberty Mobile Homes Sales, Inc.*, 208 Conn. 620, 654, 546 A.2d 805, 821 (1988).  In *Eamiello*, the Connecticut Supreme Court held that CUTPA cannot be imposed on an alleged failure to comply with a statute where there was a reasonable basis for challenging the constitutionality of that statute.  *Id.*  The rationale of *Eamiello* is instructive: an alleged failure to comply with a statute or regulatory regime should not rise to the level of a CUTPA violation where there is a reasonable basis to challenge the application and interpretation of that regime.  For the same reasons as articulated in *Eamiello,* there is nothing unfair or deceptive in Uber's reasonably grounded challenge to the Plaintiffs' interpretation of Connecticut taxicab and livery regulations.  Thus, Uber's alleged misrepresentations and non-compliance with those regulations cannot rise to the level of a CUTPA violation.

[18]  *See Nosik v. Bowman*, No. CV000379089, 2002 WL 1842662, at *3 (Conn. Super. Ct. July 12, 2002) (unpublished) (striking plaintiff's CUTPA claim because "while the plaintiff [pled] that the defendant's misrepresentations caused her substantial injury, she [did] not allege any facts in support of this contention.").

§ V.B.3.  It is at least equally as likely that Plaintiffs' harm was caused by general competition with Uber, unrelated market conditions, or their own shortcomings.  *Parola v. Citibank (S. Dakota) N.A.*, 894 F. Supp. 2d 188, 206 (D. Conn. 2012) (dismissing plaintiff's CUTPA claims because she could not "demonstrate that [her] loss was proximately caused by [the defendant's] conduct as opposed to her own conduct").  Plaintiffs' threadbare and generalized allegations that Uber's conduct has "caused" them to suffer damages do not suffice to state a claim.

For the foregoing reasons, Plaintiffs' CUPTA claim is legally deficient and should be dismissed.

## IV.   Plaintiffs Fail to State a Claim for Intentional Interference with Contractual Relationships

Plaintiffs allege that Uber intentionally interfered with Plaintiffs' contractual relationships with Plaintiffs' taxicab drivers and Plaintiffs' credit-card processing companies.  Am. Compl. ¶¶ 84–86.  This claim is legally deficient and should be dismissed for the reasons set forth below.

### A.   Plaintiffs Fail to Identify Any Tortious Conduct by Uber

Plaintiffs' allegations of tortious interference with contractual relationships fail because Plaintiffs have not alleged that Uber's conduct was in fact tortious.  Competitive behavior between rival enterprises cannot constitute the basis of a claim for tortious interference with contractual relationships unless that behavior is independently tortious.  *Downes-Patterson Corp. v. First Nat'l Supermarkets, Inc.*, 64 Conn. App. 417, 429, 780 A.2d 967, 976 (2001) ("not every act that disturbs a contract or business expectancy is actionable…[F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious"); *Corra v. Sunwood Condo. Ass'n, Inc.*, CV126009466S, 2012 WL 6583030 (Conn. Super. Ct. Nov. 26, 2012) (unpublished) ("[A] claim is made out [only] when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself").  To sufficiently allege tortious conduct, Plaintiffs must show that Uber "committed fraud, misrepresentation,

21

intimidation, or molestation" or "acted maliciously." *Bacarella Transp. Servs., Inc. v. Rightway Logistics, LLC*, 3:08-CV-1487(PCD), 2009 WL 322871, at *3 (D. Conn. Feb. 10, 2009). "At a minimum, a plaintiff must plead and prove at least some improper motive or improper means . . . beyond the fact of the interference itself." *Id.* (internal quotation marks & citations omitted).

Plaintiffs have not alleged any tortious conduct here. Plaintiffs allege, in conclusory fashion, that Uber induces Connecticut taxicab and livery drivers to "violate the Connecticut rules and regulations and terms of their individual leases," and that payments through Uber cause credit-card processing companies to lose out on fees. *See* Am. Compl. ¶ 85. Even assuming the truth of these allegations, without more, they fall far short of alleging that Uber acted tortiously. *See Robert S. Weiss & Associates, Inc. v. Wiederlight*, 208 Conn. 525, 536 (1988) (finding that defendant's knowingly encouraging and inducing an employee to breach his contract with the plaintiff did not constitute tortious conduct); *Sanford Hall Agency, Inc. v. Dezanni*, CV044000576, 2004 WL 3090673, at *8 (Conn. Super. Ct. Dec. 2, 2004) (unpublished) (finding no tortious conduct where defendant hired plaintiff's employee even though defendant knew that this violated a contract between the employee and plaintiff); *Corra*, 2012 WL 6583030, at *1-2 (finding no tortious conduct where defendant breached duty to plaintiff to pay credit card bills for account on which plaintiff was guarantor, thus "jeopardiz[ing] [plaintiff's] contractual relationship with the credit card companies").

To sufficiently state a claim for tortious interference, Plaintiffs would have to further allege that defendant acted with "improper motive or improper means." *Bacarella*, 2009 WL 322871, at *3. But a "mere motive to improve one's own business" is not improper. *Direct Mail Jobs, LLC v. Hughes*, HHBCV085009794, 2011 WL 3672086, at *6 (Conn. Super. Ct. July 29, 2011) (unpublished). Nor is it improper to engage the services of another's employees in an effort to benefit your business. *Sanford Hall Agency, Inc. v. Dezanni*, CV044000576, 2004 WL 3090673,

at *7 (Conn. Super. Ct. Dec. 2, 2004) (unpublished) (finding the defendant had not acted with malice where it induced plaintiff's employee to come work for it because her "expertise would benefit [defendant's] customers"). In fact, Connecticut courts have held that defendant's conduct was not "improper" where they were "merely acting as a competitor in a free market, an action that this state has a public policy interest in promoting." *AGC, Inc. v. Baillargeon*, CV10601844S, 2011 WL 1176141, at *29 (Conn. Super. Ct. Mar. 9, 2011) (unpublished). As the language of Plaintiffs' complaint make clear, these market-driven motives are precisely what drives Uber's business in Connecticut. *See, e.g.*, Am. Compl. ¶ 33. Plaintiffs themselves allege that Uber's motives are primarily to "stay ahead of their competition" and to "attract investors." *Id*.

Nor have Plaintiffs alleged any improper means that Uber has used in accomplishing its alleged interference. Plaintiffs resort again to an allegation that Uber functions in Connecticut without adhering to various regulations applicable to taxicabs. Am. Compl. ¶ 27. But as described *supra* in § I.A, Plaintiffs have failed to allege facts establishing that any of Connecticut's transportation regulations even apply to a technology company like Uber. In any event, Uber's general regulatory compliance is beside the point, as the sorts of conduct that Connecticut courts refer to as "improper" relate specifically to the act of interference itself, not to a defendant's general regulatory compliance. *See, e.g.*, *Baillargeon*, 2011 WL 1176141, at *29 (use of trade secrets stolen from plaintiffs); *Siemiatkoski v. Windsor Fed. Sav. & Loan Ass'n*, X07CV065001791S, 2008 WL 4379060, at *8 (Conn. Super. Ct. Sept. 10, 2008) (breach of fiduciary duties owed to plaintiffs); *Neidig v. Heilig*, CV064021341S, 2007 WL 4215479, at *5 (Conn. Super. Ct. Nov. 7, 2007) (wrongful withholding of approval for property transactions proposed by plaintiffs). Plaintiffs have made no such allegations here.

Nor could they—Uber simply advertises the entrepreneurial opportunity its software application presents and this in turn attracts drivers to use its software. Indeed, Plaintiffs only

allege that Uber attempts to "woo" taxicab and livery drivers, who desire to use Uber to "get more fare-paying customers" in alleged breach of their leases with Plaintiffs and Plaintiffs' contracts with credit card companies.  Am. Compl. ¶¶ 35, 69.  This is not the sort of "improper" means of interfering with contractual relations that is required to state a claim for tortious interference.

> ### B.     Plaintiffs Have Failed to Allege That Uber Interferes With Plaintiffs' Contracts With Credit Card Companies

Plaintiffs' claim that Uber interferes with their contractual relationships with credit-card processing companies fares no better.  Plaintiffs complain that Uber bypasses credit card payment systems installed in plaintiffs' taxicabs.  Am. Compl. ¶ 71.  Plaintiffs allege that this "depriv[es] the credit card processing companies of the processing fees that the Plaintiffs are contractually obligated to give in exchange for the installation of legally required taxicab communications equipment" in their taxicabs.  *Id*.

To the extent Plaintiffs' complaint addresses uberX, UberBlack, and UberSUV—which Plaintiffs acknowledge are the only Uber request services available in Connecticut—this argument is groundless.  Quite simply, taxicabs cannot be requested through uberX or UberBlack, and thus Plaintiff could not plausibly claim that the credit card companies with whom it does business are contractually entitled to the fees paid through these services.  *See Standard Petroleum Co. v. Fox*, CV094028045S, 2009 WL 4282080, at *3 (Conn. Super. Ct. Nov. 2, 2009) (unpublished) (holding plaintiff had failed to state a claim for tortious interference with contractual relations because the alleged contract had not actually been breached or terminated).  Thus, Uber could not have interfered with Plaintiffs' contractual relationship with these companies.

> ### C.     Plaintiffs Have Failed to Allege that Uber Intended to Interfere With Plaintiffs' Contracts

To the extent that Plaintiffs are attempting to allege that payments occurring through Uber's application for rides taken in actual taxicabs, Am. Compl. ¶¶ 32, 60, Plaintiffs' complaint

is equally deficient in that it fails to allege Uber acted intentionally.  To allege a claim for tortious interference, Plaintiffs must allege that "the defendant *intentionally* interfered with the business relationship."  *Downes-Patterson*, 64 Conn. App. at 428 (emphasis added).

While at points in their complaint Plaintiffs seem to suggest that rides requested through Uber's app occur in Connecticut use actual taxicabs, Am. Compl. ¶ 60, this baseless suggestion is contradicted by the remainder of Plaintiffs' complaint. Plaintiffs describe rides requested through Uber's app in Connecticut as using "unidentified vehicles," "every day vehicle[s]" or "expensive livery car[s]" as opposed to actual taxicabs.  *Id.* ¶¶ 29, 34.  Further, Plaintiffs expressly admit that uberTAXI—the only Uber product that enables users to request actual taxicabs—"is not even available in Connecticut right now, and may not ever be."  FAC ¶ 37.

Nonetheless, to the extent Plaintiffs claim that actual taxicabs have been involved in uberX, UberBlack, or UberSUV services, Plaintiffs' own allegations make it clear that Uber, at the very least, did not intend this result:  "Uber urges its customers to use Uber-affiliated UberX vehicles, black cars and SUVs, rather than its taxicabs."  *Id*.  Plaintiffs' apparent implication that taxicab drivers nonetheless are somehow "sneaking" onto the uberX, UberBlack, or UberSUV platforms does not state a viable claim against Uber.  *Downes-Patterson*, 64 Conn. App. at 428 (requiring plaintiff to allege defendant "intentionally interfered with the business relationship").

D.     **Plaintiffs Have Failed to Identify Any Specific Contracts That Uber Was Aware of and Interfered With**

Plaintiffs' claim that Uber tortiously interfered with its contractual relationships with taxicab drivers must fail for the additional reason that Plaintiffs have not alleged the existence of any specific contracts or contract terms between Plaintiffs and drivers that have been interfered with, let alone that Uber had knowledge of any such contracts.  These are essential elements of Plaintiffs' common law intentional interference with contractual relationships claim.  *See Bulldog New York LLC v. Pepsico, Inc*., No. 3:08CV1110 AWT, 2014 WL 1284903, at *164 n.1 (D. Conn.

Mar. 31, 2014) (finding that plaintiff's complaint could not be construed as a claim for tortious interference with contractual relations because that tort "requires the existence of an enforceable contract" and plaintiffs had failed to "identify any actual, preexisting contracts with which the defendants interfered"); *Dworkin Constr. Corp. v. Shremshock-Yoder Architects, Inc.*, 380352, 1996 WL 469742, at *3 (Conn. Super. Ct. Aug. 2, 1996) (tortious interference requires that defendants "knowing of [plaintiff's] relationship intentionally sought to interfere with it").

Plaintiffs make passing references to their "contracts" and "contractual relationships" with drivers, and the "terms of [drivers'] individual leases." Am. Compl. ¶¶ 32, 33, 85. But Plaintiffs fail to put Uber on notice of any individual contract or contract term that has been breached by the drivers, and they also have not alleged that drivers have ceased their business relationships with Plaintiffs. Indeed, Plaintiffs make clear that drivers' alleged work with Uber occurs while the driver is "simultaneously working a normal shift with his or her authorized company." *Id.* ¶ 60. Nor have Plaintiffs alleged Uber's knowledge of any specific contracts or relationships that it purportedly went on to interfere with. Without alleging any specific contract or contract term that Uber knew about and interfered with, Plaintiffs' claim for tortious interference is deficient and must be dismissed.

Similarly, Plaintiffs' claim that Uber tortiously interfered with its contractual relationship with credit card processing companies is deficient because it fails to allege that Uber knew of this contractual relationship. *See Dworkin Constr. Corp.,* 1996 WL 469742, at *3. Failure to plead this element is grounds to dismiss a tortious interference claim. *Id.* Plaintiffs have failed to plead that Uber knew either of Plaintiffs' contractual relationship with credit card processing companies in general, or, more specifically, that those contracts would forbid any of Uber's actions about which Plaintiffs complain.

**E.     Plaintiffs Have Failed to Allege That They Suffered Actual Loss**

Finally, Plaintiffs' tortious interference claim must be dismissed for the additional reason that they have suffered no cognizable loss.  Tortious interference "is not complete unless there has been actual damage suffered."  *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 213, 757 A.2d 1059, 1064 (2000) (internal quotations & citations omitted); *Downes-Patterson*, 64 Conn. App. at 428-29 (finding that plaintiffs must show that, "as a result of [defendant's] interference, the plaintiff suffered actual loss")

Regarding their contractual relationships with credit card companies, Plaintiffs have only alleged that Uber has "depriv[ed] the credit card processing companies of [ ] processing fees." Am. Compl. ¶ 71.  Plaintiffs fail to explain how this causes any of the harms they allege to have suffered.  *Id.* ¶ 103.  Without pleading a harm to Plaintiffs themselves, rather than harm to the credit-card processing companies, Plaintiffs have failed to state a claim.

Plaintiffs similarly fail to allege any harm they have suffered with regard to their contractual relationships with taxicab drivers.  "In order for the plaintiff to establish liability for interference with a contractual relationship, the plaintiff must show that the defendants' tortious conduct caused the [employees] to terminate [their] relationship with the plaintiff."  *Webster Fin. Corp. v. McDonald*, No. CV084016026S, 2009 WL 416059, at *10 (Conn. Super. Ct. Jan. 28, 2009).  Plaintiffs do not allege that any taxicab drivers have left their employ.  In fact, they specifically state that, while allegedly using Uber, drivers are "simultaneously working a normal shift with [their] authorized company."  Am. Compl. ¶ 60.  Nor do Plaintiffs allege the manner in which drivers have allegedly breached their leases with Plaintiffs, the terms of those leases that have been breached, any specific lease that was breached, or any specific harm that has come to Plaintiffs from these breaches.  Instead, Plaintiffs make conclusory, globalized allegations that the behavior of taxicab drivers violates "terms of their individual leases" and that this "has caused the

Plaintiffs substantial harm," *id.* ¶¶ 85-86, which is insufficient.  *Webster*, 2009 WL 416059, at *10

(finding that while "the plaintiffs have alleged that they have suffered harm," "these allegations

are conclusory" and "[a]motion to strike is properly granted if the complaint alleges mere

conclusions of law that are unsupported by the facts alleged").

## V.     Plaintiffs Fail to State Claims for Violations of RICO

Plaintiffs also assert civil RICO claims against Uber.  Am. Compl. ¶¶ 87–93 (Count V); ¶¶

94–98 (Count VI); ¶¶ 99–102 (Count VII).  "'To establish a RICO claim, a plaintiff must show:

(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3)

that the injury was caused by the violation of Section 1962.'"  *Plainville Elec. Products Co. v.*

*Vulcan Advanced Mobile Power Sys., LLC*, 638 F. Supp. 2d 245, 250 (D. Conn. 2009) (quoting

*DeFalco v. Bernas,* 244 F.3d 286, 305 (2d Cir. 2001)) (quotation marks omitted).

Each of the three types of RICO violations require a plaintiff to plead, as a predicate for

liability, a "pattern of racketeering activity."  18 U.S.C. § 1962(a)–(c).  Here, Plaintiffs allege that

the predicate "racketeering activity" is wire fraud.  Am. Compl. ¶¶ 88–90.  Because Plaintiffs

allege wire fraud as the basis for RICO liability, their allegations must meet the strict pleading

requirements of Federal Rule of Civil Procedure 9(b).  *In re Trigeliant Corp., Inc.*, No. 3:12-CV-

00396 VLB, 2014 WL 1315244, at *11 (D. Conn. Mar. 28, 2014).

Plaintiffs fail to meet several fundamental pleading requirements of their RICO claims, and

they should be dismissed.

### A.     Plaintiffs Fail to Allege a Pattern of Racketeering Activity Sufficient to Meet Rule 9(b)

Plaintiffs have failed to plead with particularity a pattern of racketeering activity.  To plead

a pattern of racketeering activity, the "plaintiff must plead at least two predicate acts . . ." of wire

fraud.  *GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465 (2d Cir. 1995); Am. Compl.

¶¶ 88–90 (alleging wire fraud).  "A complaint alleging . . . wire fraud must show (1) the existence

of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate . . . transmission facilities in furtherance of the scheme." *Plainville Elec. Products Co.*, 638 F. Supp. 2d at 251 (quoting *S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996)).  A scheme to defraud "has been described as a plan to deprive a person 'of something of value by trick, deceit, chicane or overreaching.'" *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000).  Further, Rule 9(b) requires a plaintiff "to specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *New York Transp., Inc. v. Naples Transp., Inc.*, 116 F. Supp. 2d 382, 386 (E.D.N.Y. 2000) (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999)).  "The plaintiffs . . . must allege facts that give rise to a strong inference of fraudulent intent." *Id.* (quoting *Moore*, 189 F.3d at 173).

Plaintiffs have not pled a "scheme to defraud" or even a single misrepresentation sufficient to meet the standard in Rule 9(b).  To the extent the RICO claims rely on the same alleged misrepresentations as the Lanham Act claim, Plaintiffs have not pled "'the contents of the communications, who was involved, where and when they took place, and explain[ing] why they were fraudulent.'" *Plainville Elec. Products Co.*, 638 F. Supp. 2d at 251 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993)).  Because Plaintiffs fail to allege any of this, their RICO claims, all of which are based on allegations of wire fraud, must be dismissed. *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) *aff'd sub nom. Katzman v. Victoria's Secret Catalogue, Div. of The Ltd., Inc.*, 113 F.3d 1229 (2d Cir. 1997) (dismissing RICO claim because plaintiffs "have not, and cannot, point to any language in [the defendant's] catalogue which actually makes" a misrepresentation).

Further, to the extent the alleged misrepresentations at issue in Plaintiffs' Lanham Act and RICO claims differ slightly, Plaintiffs still fail to state the alleged RICO misrepresentations with adequate particularity.  *Compare* Am. Comp. ¶ 74 (alleging for Lanham Act claim that Uber represents that it operates lawfully) *with id.* ¶ 88 (alleging for RICO claims that Uber misrepresents its fares and falsely claims an association between itself and Plaintiffs).  Plaintiffs have not properly pled any misrepresentations or scheme to defraud with respect to the fares paid for trips requested through Uber.  Plaintiffs allege only that Uber charges a "mandatory 20% 'gratuity' (half of which goes to Uber) and a $1 fee," thereby violating the taxicab fare regulations. Am. Compl. ¶ 60(i).  Not only is this factually inaccurate—gratuity only applies to uberTAXI, which is not available in Connecticut, and there is no gratuity for transportation services requested through uberX and UberBlack—but Plaintiffs merely state an alleged regulatory violation, not a misrepresentation or scheme.

Regarding Plaintiffs' conclusory allegation that Uber "false[ly] claims [] an association between the Defendants and the Plaintiffs," Am. Compl. ¶ 88, as discussed above Plaintiffs fail to allege any affirmative actions by Uber, much less any actual, particularized misrepresentations or scheme to defraud, to support their claim.  *Supra* § II.  For these reasons, Plaintiffs have failed to allege a pattern of racketeering conduct and all their RICO claims must be dismissed.

**B.      Plaintiffs Fail to State a Claim Under Each of the Three RICO Subsections**

Plaintiffs further fail to allege facts satisfying the elements of the three RICO subsections that Plaintiffs claim Uber has violated.

### 1.      Plaintiffs Fail to State a Claim Under Section 1962(a), the "Use or Invest" Provision

Under 18 U.S.C. § 1962(a), it is unlawful for "any person who has received any income derived . . . from a pattern of racketeering activity . . . to use or invest . . . any part of such income, or the proceeds of such income, in the acquisition of any interest in, or the establishment or

operation of, any enterprise . . . ."  "The essence of a violation of § 1962(a) is not commission of predicate acts but investment of racketeering income."  *Allstate Ins. Co. v. Seigel*, 312 F. Supp. 2d 260, 272 (D. Conn. 2004) (quoting *Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990)).  Further, to plead a claim under this section, the RICO plaintiff's injury must flow directly from the "use or investment" of the racketeering income.  *Ouaknine*, 897 F.2d at 82–83 ("We therefore hold that to state a claim for civil damages under § 1962(a), a plaintiff must allege injury from the defendants' investment of racketeering income in an enterprise.").

Plaintiffs allege that Uber obtains racketeering income from unspecified "wire fraud" activity and reinvests that income into Uber's "ongoing operation of [Uber's] transportation systems," using the racketeering income "to expand the Defendants' network of vehicles."  Am. Compl. ¶¶ 91–92.  These are precisely the types of allegations that courts have consistently held to be insufficient to state a claim under § 1962(a).

Plaintiffs interpret § 1962(a) as prohibiting "a channeling of fraud-derived profits back to a RICO violator, [but] case law squarely rejects such an interpretation."  *Allstate Ins. Co.*, 312 F. Supp. 2d at 271.  When a plaintiff alleges that "racketeering proceeds are merely reinvested back into the same RICO enterprise," the plaintiff fails to state a claim under § 1962(a).  *Id.* (listing cases); *see also, e.g., USA Certified Merchants, LLC v. Koebel*, 262 F. Supp. 2d 319, 331 (S.D.N.Y. 2003) ("Where investment of racketeering proceeds back into the same RICO enterprise is alleged, the injuries stem proximately not from the investment, but from the predicate acts that make up the racketeering activity.").

Further, "the 'enterprise' described in § 1962(a)" is "'the victim of unlawful activity,'" not the alleged perpetrator.  *Allstate Ins. Co.*, F. Supp. 2d at 272 (quoting *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 259, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994)).  This RICO provision "is

31

aimed at preventing racketeers from using the proceeds from their racketeering scheme to invest in, or acquire interests in, legitimate enterprises," not from reinvesting in itself. *Id*. at 272.

> **2.      Plaintiffs Fail to State a Claim Under Section 1962(b), the "Interest in or Control Over" Provision**

Under 18 U.S.C. § 1962(b), it is unlawful for "any person through a pattern of racketeering activity . . . to acquire or maintain . . . any interest in or control of any enterprise which is engaged in . . . interstate or foreign commerce."  Section 1962(b) is similar to § 1962(a) in that it "prohibit[s] the takeover of a legitimate business through racketeering, typically extortion or loansharking." *Allstate Ins. Co.*, 312 F. Supp. 2d at 272 (quoting *United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 450 (S.D.N.Y. 2004)).  This section also "requires a plaintiff to allege an 'acquisition injury' separate and distinct from the injuries sustained as a result of the defendant's commission of predicate acts." *Id.* at 272–73 (listing cases); *see also Allen v. New World Coffee, Inc.*, No. 00 CIV. 2610 (AGS), 2002 WL 432685, at *5 (S.D.N.Y. Mar. 19, 2002), 2002 WL 432685 at *5 ("A plaintiff cannot recover under § 1962(b) unless he alleges a distinct injury caused not by predicate acts but by the defendant's acquisition or maintenance of an interest in or control of an enterprise.").

Plaintiffs' allegations fail to state a claim under § 1962(b).  Plaintiffs claim, upon information and belief, that Uber is somehow taking control of Plaintiffs' taxicab operations.  *See* Am. Compl. ¶ 96.  They allege that Uber "induce[s]" taxicab and livery drivers "to enter into contracts with" Uber to offer transportation services through Uber's application.  *Id.* at ¶ 95.  They then allege that through these actions Uber is somehow "increasing its control of the legally operating taxicab authorities in Connecticut," which apparently are the RICO "enterprise" at issue here.  *See* Am. Compl. ¶ 96.

This is a nonsensical allegation.  As an initial matter, Plaintiffs fail to properly allege the existence of an "enterprise."  To demonstrate an "association-in-fact" enterprise,[19] a plaintiff must allege facts showing the existence of a "group of persons associated together for a common purpose of engaging in a course of conduct."  *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).  The decisions of the enterprise may be made in a hierarchy through a chain of command or on an ad hoc basis "and by any number of methods—by majority vote, consensus, a show of strength, etc."  *Boyle v. United States*, 556 U.S. 938, 948, 129 S. Ct. 2237, 2245, 173 L. Ed. 2d 1265 (2009).  Competitors in the same market "who independently engaged in similar types of" activity, without more, cannot be an "enterprise" under RICO.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 375 (3d Cir. 2010).

All of the "legally operating taxicab authorities in Connecticut" cannot be a RICO "enterprise."  *See id.*  They do not allege facts showing any ongoing organization between *all* of the Connecticut taxicab companies or various individuals functioning as a continuing unit.  To the contrary, these are separate businesses competing in the same market, which are at most "independently engaged in similar types of" activity.  *Id.*  Plaintiffs also fail to allege that their enterprise of "legally operating taxicab authorities in Connecticut" is engaged in or affects interstate commerce.  18 U.S.C. § 1962(b).  They fail to allege this even in a conclusory way, much less with the requisite facts.  *See* Am. Compl. ¶¶ 94–98.

Moreover, Plaintiffs fail to allege that Uber exerts any control over this claimed "enterprise."  To the extent drivers previously affiliated with Plaintiffs now offer transportation requested through Uber's application, that does not mean that Uber has "acquire[d] or

---

[19]   The RICO statute defines enterprise to be "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  All the taxicab companies in Connecticut are not part of one legal entity, so Plaintiffs must be attempting to allege they are part of an "associat[ion] in fact."

maintain[ed] . . . an[] interest in or control of an[] enterprise . . . ."  18 U.S.C. § 1962(b).  Uber has

contracts with the drivers that offer transportation services through its application, but that has

nothing to do with exerting control over the Plaintiffs' supposed enterprise.

Finally, Plaintiffs do not allege any injuries that are distinct from the alleged predicate acts

of wire fraud, as they must do to state a claim under § 1962(b).  *Allstate Ins. Co.*, 312 F. Supp. 2d

at 272–73.  They simply allege that Uber is "fraudulent[ly]" obtaining riders and drivers to use its

smartphone application, Am Compl. ¶ 95, which is both the alleged predicate act and the alleged

cause of Plaintiffs' injuries.  In other words, the source of their alleged injury is not any takeover

of Plaintiffs' so-called taxicab enterprise.  Their § 1962(b) claim should be dismissed for this

reason as well.  *Allstate Ins. Co.*, 312 F. Supp. 2d at 272–73 (stating "[a] plaintiff cannot recover

under § 1962(b) unless he alleges a *distinct injury* caused not by predicate acts but by the

defendant's acquisition or maintenance of an interest in or control of an enterprise") (quoting

*Allen*, 2002 WL 432685, at \*5).

### 3. Plaintiffs Fail to State a Claim Under Section 1962(c), the "Conduct of Enterprise" Provision

Under 18 U.S.C. § 1962(c), it is unlawful for "any person employed by or associated with

any enterprise engaged in . . . interstate or foreign commerce, to conduct or participate . . . in the

conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  "To establish a

violation of § 1962(c) . . . a plaintiff must show that a person engaged in '(1) conduct (2) of an

enterprise (3) through a pattern (4) of racketeering activity.'"  *Cruz v. FXDirectDealer, LLC*, 720

F.3d 115, 120 (2d Cir. 2013) (quoting *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001)).

"'[U]nder the so-called distinctness requirement, . . . a plaintiff must allege . . . the

existence of two distinct entities: (1) a person; and (2) an enterprise that is not simply the same

person referred to by a different name.'"  *Cruz*, 720 F.3d at 120 (quoting *City of New York v.*

*Smokes–Spirits.com, Inc.,* 541 F.3d 425, 438 n. 15 (2d Cir. 2008)) (internal quotation marks

omitted).  As the Second Circuit "ha[s] long recognized, the plain language and purpose of the

statute contemplate that a *person* violates the statute by conducting an *enterprise* through a pattern

of criminality.  It thus follows that a corporate person cannot violate the statute by corrupting

itself."  *Id.* at 120.  A RICO enterprise may not "consist 'merely of a corporate defendant

associated with its own employees or agents carrying on the regular affairs of the defendant . . . .'"

*Id.* at 121(quoting *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344

(2d Cir. 1994)).

    As discussed above, Plaintiffs have failed to properly plead any type of "enterprise" at all,

and the § 1962(c) should be dismissed on this ground alone.  To the extent Plaintiffs allege that

Uber itself is the enterprise and participates in "wire fraud," then their claim must be dismissed for

failure to comply with the "distinctness requirement."   *Id.* at 120.

    Plaintiffs also claim that Uber has "insinuated [itself] into the operations of approved

taxicab and livery authorities, including the Plaintiffs and their drivers . . . ."  Am. Compl. ¶ 100.

If Plaintiffs are attempting to plead that Uber has somehow participated in an enterprise consisting

of the "approved taxicab and livery authorities," *id.*, this claim also fails because, as described

above, Plaintiffs have failed to allege the existence of an enterprise and have failed to allege facts

showing that Uber *participates* in this purported enterprise.  The RICO defendant, in this case

Uber, must "participate[] in the operation or management of the enterprise itself."  *Reves v. Ernst*

*& Young*, 507 U.S. 170, 183, 113 S. Ct. 1163, 1172, 122 L. Ed. 2d 525 (1993).  Even assuming all

the taxicab and livery authorities, which are all business competitors, operate as a single RICO

enterprise, Plaintiffs fail to plausibly allege Uber participates in the operation or management of

the purported enterprise.  Beyond making the bare allegation that Uber has "insinuated" itself into

this purported enterprise, Am. Compl. ¶ 100, Plaintiffs make no factual allegations to support this

vague and conclusory allegation or explain in what way Uber participates in the operation or management of the purported enterprise.

Further, under § 1962(c) the plaintiff must allege that the predicate acts, in this case the alleged wire fraud, were the proximate cause of the plaintiff's injury.[20] *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9, 130 S. Ct. 983, 989, 175 L. Ed. 2d 943 (2010) (stating that "to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well'"). Thus, Plaintiffs must plausibly allege that Uber's alleged wire fraud (i.e., the alleged misrepresentations) have proximately harmed Plaintiffs, *see id.*, but they have failed to do so.

Alleged racketeering conduct must have a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). The Supreme Court has applied this requirement in a very similar case, holding that, in a suit between competitors, the connection between the defendant's alleged violation of tax regulations in order to lower its prices and the plaintiff's alleged lost market share was too tenuous. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 452 (2006).

The plaintiff in *Anza* claimed that the defendant was filing false tax returns to the State of New York, allowing it to lower its own prices and lure customers from the plaintiff. *Id.* at 457–58. But the Supreme Court held that there were too many links in the causal chain between the defendant's alleged racketeering conduct (the filing of false tax returns) and the plaintiff's harm (lost sales). *Id.* at 458–59. The "direct victim of this conduct was the State of New York, not" the plaintiff; and it was "the State that was being defrauded," not the plaintiff. *Id.* at 458.

---

[20]   The proximate cause requirement under § 1962(c) is different from that under §§ 1962(a) and (b) in that, as discussed above, those sections require that the RICO violation be the proximate cause of the plaintiffs' injuries, whereas § 1962(c) requires that the predicate acts be the proximate cause. *See Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 321 (2d Cir. 2011).

The plaintiff, who competed with the defendant, was injured "indirectly" by the alleged tax fraud in that the defendant allegedly was able to lower its prices due to the tax savings and, with those lower prices, take market share from the plaintiff. *Id.* at 460. But the defendant "could have lowered its prices for any number of reasons unconnected to the asserted pattern of fraud," and the plaintiff's lost sales "could have resulted from factors other than [defendant's] acts of fraud." *Id.* at 458-59. If the court in *Anza* had accepted the plaintiff's theory, it would have had to determine what portion of the defendant's price drop was attributable to the fraudulent tax returns and what portion of the plaintiff's lost sales was attributable some portion of the price drop. *Id.* at 459–60. But the "element of proximate causation . . . is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation."[21] *Id.* at 460. *See also Downstream Envtl., L.L.C. v. Gulf Coast Waste Disposal Auth.*, No. 05-CV-1865, 2006 WL 1875959, at *6–*7 (S.D. Tex. July 5, 2006) (dismissing claim that defendant was "disposing of grease and grit trap waste without the necessary permit and by illegal dumping, allowing it to charge lower prices, which cause [plaintiff] competitive injury").

*Anza* applies squarely here. Any alleged misrepresentations that Uber made to consumers—which Plaintiffs have failed to allege in the first instance—are too remote from Plaintiffs' alleged injuries. Like the plaintiffs in *Anza*, Plaintiffs here are not the target of Uber's alleged racketeering conduct; instead, Uber allegedly targets consumers, which allegedly harms Plaintiffs only indirectly. *See* Am. Compl. ¶ 88. Like in *Anza*, this Court would have to determine what portion of Plaintiffs' lost market share is attributable directly to Uber's allegedly false statements, a matter that has not even been alleged here, and which, in all events, the Supreme Court held is an impermissible inquiry under RICO. *Anza*, 547 U.S. at 460. Plaintiffs' alleged

---

[21]   Presumably, a civil RICO claim would be more applicable to a claim that a defendant directly defrauded a plaintiff and took money directly from the plaintiff, not a claim where the defendant defrauded a third party, which indirectly may have caused harm to the plaintiff.

harm "could have resulted from factors other than [Uber's alleged] acts of fraud," *id.* at 458–59, and there is no way to identify which alleged losses are due to Uber's alleged conduct and which are from the innumerable other factors affecting Plaintiffs' businesses.  *See also 4 K & D Corp. v. Concierge Auctions, LLC*, No. 13 CIV. 2527 JGK, 2 F. Supp. 3d 525, 542  (S.D.N.Y. 2014) (dismissing RICO claim for failure to allege proximate cause and stating "because there was no assurance that property sellers would have chosen [plaintiff's services] had they not been allegedly defrauded by the defendants, it is difficult to ascertain and apportion the damage that Concierge's allegedly unfair advantage caused specifically to Grand Estates"); *Proven Methods Seminars, LLC v. Am. Grants & Affordable Hous. Inst., LLC*, No. Civ. S–07–01588, 2008 WL 269080, at \*6 (E.D. Cal. Jan. 29, 2008) (dismissing the defendants' RICO counterclaim for failure to satisfy proximate cause requirement because "[t]here is simply no basis upon which to assume that prospective consumers, absent plaintiffs' alleged scheme [of publishing false advertisements], would have chosen defendants' products and services as opposed to one of the many alternatives").

Plaintiffs' claim is also similar to the claim dismissed in *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 444 (E.D.N.Y. 2007).  The plaintiff there alleged that the defendant, its competitor, sold cigarettes at prices lower than the plaintiff because the defendant failed to properly apply taxes to the cigarettes.  *Id.* at 444–45.  The plaintiff alleged it had lost "in excess of $20 million in cigarette sales."  *Id.* at 445 (quoting complaint).

The court held that the connection between the plaintiff's lost sales and the defendant's predicate acts were "too 'attenuated'" to state a RICO claim because the "direct victim of the defendants' conduct is the State of New York, who is allegedly losing tax revenue on illegally untaxed cigarettes, or perhaps the purchasers of those cigarettes, who erroneously believe that they need not pay taxes on the cigarettes."  *Id.*  The same is true here.  The alleged victims or Uber's

allege wire fraud are Connecticut users of Uber's application, and there are several other competitors, beyond Plaintiffs in this case, who operate in the applicable market. *Id.* at 445–46 (stating that because other competitors were in the market, it would be even more difficult to trace defendant's actions to harm to plaintiff). Plaintiffs have made no attempt to and cannot plausibly trace the effect of any misrepresentations to Connecticut consumers to any harm suffered by Plaintiffs.

Plaintiffs must also allege that the purported wire fraud was the "but for" cause of Plaintiffs' harm. *Hemi Grp., LLC*, 559 U.S. at 9. Plaintiffs have not alleged this, even in conclusory fashion. Nor would they plausibly be able to allege facts establishing but-for causation. Plaintiffs have made no showing that the alleged acts of wire fraud—distinct from the general availability of Uber's request service itself—is the but-for cause of Plaintiffs' harm. If the alleged misrepresentations ceased, Uber would still offer its transportation-request service to Connecticut users, and Plaintiffs' alleged harms would, at least according to Plaintiffs, continue to exist. Thus, because Plaintiffs' alleged harm would exist independently of the alleged acts of wire fraud, Plaintiffs have failed to plead but-for causation.

## VI.    The Court Should Abstain From Deciding This State and Municipal Issue

The Court should decline to exercise jurisdiction over this case under either the doctrine of primary jurisdiction. The doctrine of primary jurisdiction "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body . . . ." *United States v. 43.47 Acres of Land*, 45 F. Supp. 2d 187, 191 (D. Conn. 1999) (quoting *United States v. Western Pac. R.R.,* 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956)). The factors courts consider in applying the doctrine are "the need for uniform agency action, the degree to which expert or specialized knowledge is required, the nature

of the dispute, whether the agency's determination will prove helpful, . . . the agency's authority, whether the dispute lies at the heart of the agency's assignment from Congress, and the potential delay . . . ." *United States v. 43.47 Acres of Land*, 45 F. Supp. 2d at 191.

At their core, Plaintiffs' claims seek to enforce Connecticut's existing statutory and regulatory transportation laws against Uber. *See* Am. Compl. ¶¶ 22–26 (discussing statutory and regulatory structure); ¶¶ 32–72 (alleging that Uber violates transportation statutes and regulations). But Plaintiffs are not the proper parties to bring these claims, and federal court is not the proper forum to decide them. As Plaintiffs admit, the Connecticut Department of Transportation (CDOT) has authority to regulate "all aspects of the planning, development, maintenance and improvement of transportation in the state," including the "[i]mprovement in the transportation of people and goods . . . by . . . motor carrier." Am. Compl. ¶ 23 (quoting Conn. Gen. Stat. §§ 13b-3, 13b-32). And the Connecticut Department of Motor Vehicles has "the authority to promulgate such regulations as are necessary to 'enforce the provisions of the statutes concerning motor vehicles and the operators of such vehicles.'" Am. Compl. ¶ 23 (quoting Conn. Gen. Stat. § 14-3). The regulations give the Department of Transportation explicit authority to enforce the transportation regulations, including assessing civil penalties. Conn. Agencies Regs. 13b-96-50, 13b-96-51.

Further, the Connecticut legislature recently ordered CDOT to perform a study, to be completed on February 1, 2015, related to precisely the issues that Plaintiffs raise in this lawsuit, including the applicability of the current regulatory structure to companies like Uber. The legislation states that "[t]he study shall (1) review how emerging technologies, such as smartphone applications, currently fit into the regulatory scheme, and (2) offer recommendations as to how and if such technologies and the businesses offering them should be regulated to ensure the safety

of the riding public."  *See* Decl. of Amit Patel, Ex. A at 21 (Conn. Pub. Act 14-199 (2014)
*available at* http://www.cga.ct.gov/2014/act/pa/pdf/2014PA-00199-R00SB-00235-PA.pdf).[22]

All the relevant factors support dismissal or stay under the doctrine of primary jurisdiction.
As described above and more extensively in Plaintiffs' Amended Complaint, Connecticut has
established a comprehensive set of statutory and regulatory laws governing transportation,
including the ability to enforce violations of those laws.  Enforcing Plaintiffs' subjective
interpretation of these laws—which were created before technology companies like Uber even
existed and which therefore were never intended to apply to them—would disrupt Connecticut's
interest in maintaining a uniform regulatory structure.  *United States v. 43.47 Acres of Land*, 45 F.
Supp. 2d at 191 (staying case under primary jurisdiction doctrine in part because of concerns for
uniformity).  Plaintiffs have not identified a single statute or regulation that purports to apply to a
company that offers a smartphone-based transportation request service, and adjudicating this
dispute would necessarily involve resolving "debatable construction[s]" of the transportation laws,
including whether they apply to Uber in the first instance.  *See, e.g.,* Conn. Gen. Stat. § 13b-95
(defining "taxicab" to "include[] any motor vehicle . . . accepting or soliciting passengers . . . for
hire," but not referencing any smartphone-based request service).

The CDOT is also activity analyzing the issues raised in the Amended Complaint, and
there is no reason for this Court to get ahead of, and possibly contradict the outcome of, the
ongoing political and regulatory process.  The CDOT has expertise in interpreting and applying its
own regulations, and the outcome of the study, which will address whether existing regulations

---

[22]   The Court is permitted to consider the public acts of other governmental bodies in
determining whether to decline to exercise jurisdiction under the primary jurisdiction doctrine on a
motion to dismiss.  *See, e.g.*, *United States v. 43.47 Acres of Land, More or Less, Situated in Cnty.
of Litchfield, Town of Kent*, 896 F. Supp. 2d 151, 158 (D. Conn. 2012) (granting motion for
judgment on the pleadings on primary jurisdiction grounds after considering a Notice of the
Bureau of Indian Affairs' determination of tribal status).

apply to companies like Uber, will materially aid the Court in resolving this dispute.  The Court

should dismiss or stay this case under the doctrine of primary jurisdiction.

## CONCLUSION

For the foregoing reasons, Uber respectfully requests that the Court dismiss the Amended

Complaint with prejudice.  Or in the alternative, Uber requests that the Court stay this case

pending the outcome of the CDOT's study.


DEFENDANT
UBER TECHNOLOGIES, INC.

/s/ Kevin M. Smith
Kevin M. Smith (ct24774)
Melissa Fernandez (ct29519)
Wiggin and Dana, LLP
One Century Tower
265 Church Street
New Haven, Connecticut  06510
Phone: (203) 498-4400
Fax: (203) 782-2889
ksmith@wiggin.com
mfernandez@wiggin.com

Stephen A. Swedlow (*pro hac vice*)
Amit B. Patel (*pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Tel: (312) 705-7400
Fax: (312) 705-7401
stephenswedlow@quinnemanuel.com
amitbpatel@quinnemanuel.com

Arthur M. Roberts (*pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
50 California St., 22nd Floor
San Francisco, California  94111
Tel: (415) 875-6600
Fax: (415) 875-6700
arthurroberts@quinnemanuel.com