# EXHIBIT A



**Substitute Senate Bill No. 235**

## Public Act No. 14-199

### AN ACT CONCERNING REVISIONS TO THE TRANSPORTATION STATUTES.

Be it enacted by the Senate and House of Representatives in General Assembly convened:

Section 1. Section 13b-2 of the general statutes is amended by adding subdivision (10) as follows (*Effective October 1, 2014*):

(NEW) (10) "Fare inspector" means an employee of (A) the department designated by the commissioner, or (B) a third-party contractor employed by the department, whose duties are to inspect tickets, passes or other documentation required to show compliance by the passenger with the fare payment requirements of state-owned or controlled bus public transportation service when the fare payment is off board or a combination of off board and on board such bus.

Sec. 2. Subsection (a) of section 13b-34 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective October 1, 2014*):

(a) The commissioner shall have power, in order to aid or promote the operation, whether temporary or permanent, of any transportation service operating to, from or in the state, to contract in the name of the state with any person, including but not limited to any common carrier, any transit district formed under chapter 103a or any special

*Substitute Senate Bill No. 235*

act, or any political subdivision or entity, or with the United States or any other state, or any agency, instrumentality, subdivision, department or officer thereof, for purposes of initiating, continuing, developing, providing or improving any such transportation service. Such contracts may include provision for arbitration of disputed issues. The commissioner, in order to aid or promote the operation of any transportation service operating outside the state, may contract in the name of the state with any person, including, but not limited to, any common carrier, or with the United States or any other state, or any agency, instrumentality, subdivision, department or officer thereof, for purposes of providing any transportation service in the event such assistance is required in the case of an emergency or a special event. The state, acting by and through the commissioner, may, by itself or in concert with others, provide all or a portion of any such service, share in the costs of or provide funds for such service, or furnish equipment or facilities for use in such service upon such terms and conditions as the commissioner may deem necessary or advisable, and any such contracts may include, without limitation thereto, arrangements under which the state shall so provide service, share costs, provide funds or furnish equipment or facilities. To these ends, the commissioner may in the name of the state acquire or obtain the use of facilities and equipment employed in providing any such service by gift, purchase, lease or other arrangements and may own and operate any such facilities and equipment and establish, charge and collect such fares and other charges or arrange for such collection for the use or services thereof as he may deem necessary, convenient or desirable. The commissioner or any fare inspector, as defined in section 13b-2, as amended by this act, shall have the authority to issue citations for any violation of section 3 of this act. The commissioner may also acquire title in fee simple to, or any lesser estate, interest or right in, any rights-of-way, properties or facilities, including properties used on or before October 1, 1969, for rail or other forms of transportation services. The commissioner may hold such properties

*Substitute Senate Bill No. 235*

for future use by the state and may enter into agreements for interim use of such properties for other purposes. Any person contracting with the state pursuant to this section for the provision of any transportation service shall not be considered an arm or agent of the state. Any damages caused by the operation of such transportation service by such person may be recovered in a civil action brought against such person in the superior court and such person may not assert the defense of sovereign immunity in such action.

Sec. 3. (NEW) (*Effective October 1, 2014*) Any person who, with intent to obtain state-owned or controlled bus public transportation service without payment of the lawful charge therefor or to avoid payment of the lawful charge for such service that has been rendered to such person, obtains such service or avoids payment therefor by force, intimidation, stealth, deception or mechanical tampering, or by unjustifiable failure or refusal to pay, shall have committed an infraction.

Sec. 4. Subdivision (7) of section 53a-119 of the 2014 supplement to the general statutes is repealed and the following is substituted in lieu thereof (*Effective October 1, 2014*):

(7) Theft of services. A person is guilty of theft of services when: (A) With intent to avoid payment for restaurant services rendered, or for services rendered to him as a transient guest at a hotel, motel, inn, tourist cabin, rooming house or comparable establishment, he avoids such payment by unjustifiable failure or refusal to pay, by stealth, or by any misrepresentation of fact which he knows to be false; or (B) (i) except as provided in section 3 of this act, with intent to obtain railroad, subway, bus, air, taxi or any other public transportation service without payment of the lawful charge therefor or to avoid payment of the lawful charge for such transportation service which has been rendered to him, he obtains such service or avoids payment therefor by force, intimidation, stealth, deception or mechanical

tampering, or by unjustifiable failure or refusal to pay, or (ii) with intent to obtain the use of equipment, including a motor vehicle, without payment of the lawful charge therefor, or to avoid payment of the lawful charge for such use which has been permitted him, he obtains such use or avoids such payment therefor by means of any false or fraudulent representation, fraudulent concealment, false pretense or personation, trick, artifice or device, including, but not limited to, a false representation as to his name, residence, employment, or driver's license; or (C) obtaining or having control over labor in the employ of another person, or of business, commercial or industrial equipment or facilities of another person, knowing that he is not entitled to the use thereof, and with intent to derive a commercial or other substantial benefit for himself or a third person, he uses or diverts to the use of himself or a third person such labor, equipment or facilities.

Sec. 5. Subsection (a) of section 16a-38k of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(a) Notwithstanding any provision of the general statutes, any (1) new construction of a state facility that is projected to cost five million dollars, or more, and for which all budgeted project bond funds are allocated by the State Bond Commission on or after January 1, 2008, (2) renovation of a state facility that is projected to cost two million dollars or more, of which two million dollars or more is state funding, approved and funded on or after January 1, 2008, (3) new construction of a facility that is projected to cost five million dollars, or more, of which two million dollars or more is state funding, and is authorized by the General Assembly pursuant to chapter 173 on or after January 1, 2009, and (4) renovation of a public school facility as defined in subdivision (18) of section 10-282 that is projected to cost two million dollars or more, of which two million dollars or more is state funding,

*Substitute Senate Bill No. 235*

and is authorized by the General Assembly pursuant to chapter 173 on or after January 1, 2009, shall comply with or exceed compliance with the silver building rating of the Leadership in Energy and Environmental Design's rating system for new commercial construction and major renovation projects, as established by the United States Green Building Council, or an equivalent standard, including, but not limited to, a two-globe rating in the Green Globes USA design program until the regulations described in subsection (b) of this section are adopted. The Commissioner of Energy and Environmental Protection, in consultation with the Commissioner of Administrative Services and the Institute for Sustainable Energy, shall exempt any facility from complying with said regulations if the Commissioner of Energy and Environmental Protection finds, in a written analysis, that the cost of such compliance significantly outweighs the benefits. Nothing in this section shall be construed to require the redesign of any new construction of a state facility that is designed in accordance with the silver building rating of the Leadership in Energy and Environmental Design's rating system for new commercial construction and major renovation projects, as established by the United States Green Building Council, or an equivalent standard, including, but not limited to, a two-globe rating in the Green Globes USA design program, provided the design for such facility was initiated or completed prior to the adoption of the regulations described in subsection (b) of this section. For purposes of subdivisions (1) and (2) of this subsection, a state facility shall not include a salt shed, parking garage or any type of maintenance facility, provided such shed, garage or facility has incorporated best energy efficiency standards to the extent economically feasible.

Sec. 6. (*Effective from passage*) The Commissioner of Transportation shall conduct an analysis of the corrosive effects of chemical road treatments on (1) state snow and ice equipment vehicles, (2) state bridges, highways and other infrastructure, and (3) the environment.

*Substitute Senate Bill No. 235*

Such analysis shall determine the cost of corrosion created by chemical road treatments and shall include an evaluation of alternative road treatment techniques and products, including, but not limited to, the addition of rust inhibitors to current chemical road treatments, and a comparison of costs and effectiveness. Not later than October 1, 2014, the commissioner shall submit a progress report, in accordance with the provisions of section 11-4a of the general statutes, to the joint standing committee of the General Assembly having cognizance of matters relating to transportation. Not later than July 1, 2015, the commissioner shall submit a final report, in accordance with the provisions of section 11-4a of the general statutes, to the joint standing committee of the General Assembly having cognizance of matters relating to transportation. Such final report shall include the findings, conclusions and recommendations of such analysis.

Sec. 7. (*Effective from passage*) Notwithstanding the provisions of section 13b-268 of the general statutes or any other provision of the general statutes, special act or regulation that prohibits the construction of any new highway railroad crossing at grade, the Department of Transportation shall allow the city of East Hartford or its authority or agent to construct an at-grade crossing on the Connecticut Southern Railroad Line between McAuliffe Park and Columbus Circle. The project shall first be approved by the legislative body of the city of East Hartford and the Connecticut Southern Railroad Company and constructed in accordance with the department's recommendations.

Sec. 8. (*Effective from passage*) Notwithstanding the provisions of section 13b-268 of the general statutes or any other provision of the general statutes, special act or regulation that prohibits the construction of any new highway railroad crossing at grade, the Department of Transportation shall allow the city of Waterbury or its authority or agent to construct an at-grade crossing on the Torrington

*Substitute Senate Bill No. 235*

Branch between Thomaston Avenue (State Road 847) and Commons Court. The project shall first be approved by the legislative body of the city of Waterbury and the Naugatuck Railroad Company and constructed in accordance with the department's recommendations.

Sec. 9. Section 15-120mm of the 2014 supplement to the general statutes is amended by adding subsection (h) as follows (*Effective from passage*):

(NEW) (h) The executive director, as described in subsection (d) of section 15-120bb, as amended by this act, may, at the discretion of the authority and at the one-time irrevocable option of the executive director, be exempted from the provision of subsection (g) of this section for the purposes of retirement under chapter 66 or group welfare benefits under sections 5-257 and 5-259. If the executive director elects either or both such options, as approved by the authority, the executive director's participation in the retirement or group benefits plan, as applicable, shall be suspended during the period of such election while the executive director is an employee of the authority. The authority may develop and implement retirement plans and group welfare benefits for the executive director. Such plans shall not be subject to supervision, oversight or approval by the State Employees Retirement Commission under chapter 66 or the Comptroller, Attorney General or Insurance Commissioner under chapter 67, provided any such retirement plan shall be considered a Connecticut retirement plan for purposes of subsection (d) of section 5-160. The authority shall pay all costs, fees, contributions and other expenses incurred as a result of any such retirement plan or group welfare benefit.

Sec. 10. Section 20-340 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

The provisions of this chapter shall not apply to: (1) Persons

*Substitute Senate Bill No. 235*

employed by any federal, state or municipal agency; (2) employees of any public service company regulated by the Public Utilities Regulatory Authority or of any corporate affiliate of any such company when the work performed by such affiliate is on behalf of a public service company, but in either case only if the work performed is in connection with the rendition of public utility service, including the installation or maintenance of wire for community antenna television service, or is in connection with the installation or maintenance of wire or telephone sets for single-line telephone service located inside the premises of a consumer; (3) employees of any municipal corporation specially chartered by this state; (4) employees of any contractor while such contractor is performing electrical-line or emergency work for any public service company; (5) persons engaged in the installation, maintenance, repair and service of electrical or other appliances of a size customarily used for domestic use where such installation commences at an outlet receptacle or connection previously installed by persons licensed to do the same and maintenance, repair and service is confined to the appliance itself and its internal operation; (6) employees of industrial firms whose main duties concern the maintenance of the electrical work, plumbing and piping work, solar thermal work, heating, piping, cooling work, sheet metal work, elevator installation, repair and maintenance work, automotive glass work or flat glass work of such firm on its own premises or on premises leased by it for its own use; (7) employees of industrial firms when such employees' main duties concern the fabrication of glass products or electrical, plumbing and piping, fire protection sprinkler systems, solar, heating, piping, cooling, chemical piping, sheet metal or elevator installation, repair and maintenance equipment used in the production of goods sold by industrial firms, except for products, electrical, plumbing and piping systems and repair and maintenance equipment used directly in the production of a product for human consumption; (8) persons performing work necessary to the manufacture or repair of any apparatus, appliances,

*Substitute Senate Bill No. 235*

fixtures, equipment or devices produced by it for sale or lease; (9) employees of stage and theatrical companies performing the operation, installation and maintenance of electrical equipment if such installation commences at an outlet receptacle or connection previously installed by persons licensed to make such installation; (10) employees of carnivals, circuses or similar transient amusement shows who install electrical work, provided such installation shall be subject to the approval of the State Fire Marshal prior to use as otherwise provided by law and shall comply with applicable municipal ordinances and regulations; (11) persons engaged in the installation, maintenance, repair and service of glass or electrical, plumbing, fire protection sprinkler systems, solar, heating, piping, cooling and sheet metal equipment in and about single-family residences owned and occupied or to be occupied by such persons; provided any such installation, maintenance and repair shall be subject to inspection and approval by the building official of the municipality in which such residence is located and shall conform to the requirements of the State Building Code; (12) persons who install, maintain or repair glass in a motor vehicle owned or leased by such persons; (13) persons or entities holding themselves out to be retail sellers of glass products, but not such persons or entities that also engage in automotive glass work or flat glass work; (14) persons who install preglazed or preassembled windows or doors in residential or commercial buildings; (15) persons registered under chapter 400 who install safety-backed mirror products or repair or replace flat glass in sizes not greater than thirty square feet in residential buildings; (16) sheet metal work performed in residential buildings consisting of six units or less by new home construction contractors registered pursuant to chapter 399a, by home improvement contractors registered pursuant to chapter 400 or by persons licensed pursuant to this chapter, when such work is limited to exhaust systems installed for hoods and fans in kitchens and baths, clothes dryer exhaust systems, radon vent systems, fireplaces, fireplace flues, masonry chimneys or prefabricated metal chimneys rated by

*Substitute Senate Bill No. 235*

Underwriters Laboratories or installation of stand-alone appliances including wood, pellet or other stand-alone stoves that are installed in residential buildings by such contractors or persons; (17) employees of or any contractor employed by and under the direction of a properly licensed solar contractor, performing work limited to the hoisting, placement and anchoring of solar collectors, photovoltaic panels, towers or turbines; **[**and**]** (18) persons performing swimming pool maintenance and repair work authorized pursuant to section 20-417aa; and (19) any employee of the Connecticut Airport Authority covered by a state collective bargaining agreement.

Sec. 11. Section 15-120bb of the 2014 supplement to the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(a) There is hereby established and created a body politic and corporate, constituting a public instrumentality and political subdivision of the state of Connecticut established and created for the performance of an essential public and governmental function, to be known as the Connecticut Airport Authority. The authority shall not be construed to be a department, institution or agency of the state.

(b) The powers of the authority shall be vested in and exercised by a board of directors, which shall consist of eleven members, appointed as follows: (1) (A) The Treasurer or the Treasurer's designee, (B) the Commissioner of Transportation or the commissioner's designee, and (C) the Commissioner of Economic and Community Development or the commissioner's designee, each serving ex officio; (2) one appointed by the speaker of the House of Representatives for a term of four years; (3) one appointed by the minority leader of the House of Representatives for a term of four years; (4) one appointed by the president pro tempore of the Senate for a term of four years; and (5) one appointed by the minority leader of the Senate for a term of four years. Thereafter, such members of the General Assembly shall

*Substitute Senate Bill No. 235*

appoint members of the board to succeed such appointees whose terms expire and each member so appointed shall hold office for a period of four years from the first day of July in the year of his or her appointment. The Governor shall appoint four members to the board as follows: (A) Two members for two years; and (B) two members for four years. Thereafter, the Governor shall appoint members of the board to succeed such appointees whose terms expire and each member so appointed shall hold office for a period of four years from July first in the year of his or her appointment. Appointed directors shall have business and management experience and shall include individuals who have experience and expertise in one or more of the following areas: (i) Financial planning, (ii) budgeting and assessment, (iii) marketing, (iv) master planning, (v) aviation, and (vi) transportation management.

(c) Appointed directors may not designate a representative to perform in their absence their respective duties under this section. Any appointed director who fails to attend three consecutive meetings of the board or who fails to attend fifty per cent of all meetings of the board held during any calendar year shall be deemed to have resigned from the board. Any vacancy occurring other than by expiration of term shall be filled in the same manner as the original appointment for the balance of the unexpired term.

(d) The board of directors of the authority shall appoint an executive director who shall not be a member of the board and who shall serve at the pleasure of the board and receive such compensation as shall be fixed by the board. The executive director shall be the chief administrative officer of the authority and shall direct and supervise administrative affairs and technical activities in accordance with the directives of the board. The executive director shall approve all accounts for salaries, allowable expenses of the authority or of any employee or consultant thereof, and expenses incidental to the

*Substitute Senate Bill No. 235*

operation of the authority. The executive director shall perform such other duties as may be directed by the board in carrying out the purposes of subdivision (12) of section 1-79, sections 1-120, 1-124 and 1-125, subsection (f) of section 4b-3, sections 13b-4 and 13b-42, subsection (a) of section 13b-44 and sections 15-101aa and 15-120aa to 15-120oo, inclusive. The executive director shall be exempt from the classified service. The executive director shall attend all meetings of the board, keep a record of the proceedings of the authority and shall maintain and be custodian of all books, documents and papers filed with the authority and of the minute book or journal of the authority and of its official seal. The executive director may cause copies to be made of all minutes and other records and documents of the authority and may give certificates under the official seal of the authority to the effect that such copies are true copies, and all persons dealing with the authority may rely upon such certificates.

(e) Each director shall be entitled to reimbursement for such director's actual and necessary expenses incurred during the performance of such director's official duties.

(f) Directors may engage in private employment, or in a profession or business, subject to any applicable laws, rules and regulations of the state or federal government regarding official ethics or conflict of interest.

(g) Six directors of the authority shall constitute a quorum for the transaction of any business or the exercise of any power of the authority. For the transaction of any business or the exercise of any power of the authority, and except as otherwise provided in this section, the authority may act by a majority of the directors present at any meeting at which a quorum is in attendance.

(h) The board may delegate to six or more directors such board powers and duties as it may deem necessary and proper in conformity

*Substitute Senate Bill No. 235*

with the provisions of this section and its bylaws.

(i) The appointing authority for any director may remove such director for inefficiency, neglect of duty or misconduct in office after giving the director a copy of the charges against the director and an opportunity to be heard, in person or by counsel, in the director's defense, upon not less than ten days' notice. If any director shall be so removed, the appointing authority for such director shall file in the office of the Secretary of the State a complete statement of charges made against such director and the appointing authority's findings on such statement of charges, together with a complete record of the proceedings.

(j) The authority shall continue as long as it has bonds or other obligations outstanding and until its existence is terminated by law. Upon the termination of the existence of the authority, all its rights and properties shall pass to and be vested in the state of Connecticut.

(k) Notwithstanding any provision of the general statutes, it shall not constitute a conflict of interest for a trustee, director, partner or officer of any person, firm or corporation, or any individual having a financial interest in a person, firm or corporation, to serve as a director of the authority, provided such trustee, director, partner, officer or individual shall abstain from deliberation, action or vote by the authority in specific respect to such person, firm or corporation.

(l) The Governor shall appoint the chairperson of the board, who shall serve for a term of four years. The board shall elect from its members a vice chairperson and such other officers as it deems necessary. Vacancies among any officers shall be filled within thirty days following the occurrence of such vacancy in the same manner as the original selection. Said board shall establish bylaws to govern its procedures and shall appoint such committees and advisory boards as may be convenient or necessary in the transaction of its business.

*Substitute Senate Bill No. 235*

(m) The initial members of the board may begin service immediately upon appointment, but shall not serve past the sixth Wednesday of the next regular session of the General Assembly unless qualified in the manner provided in section 4-7. Thereafter, all appointments shall be made with the advice and consent of both houses of the General Assembly, in the manner provided in section 4-19.

(n) The executive director of the Connecticut Airport Authority shall establish an advisory committee to consult with on matters relating to Bradley International Airport and business related to said airport. The committee may consist of not more than six members, one of whom shall be appointed by the cochairpersons of the joint standing committee of the General Assembly having cognizance of matters relating to transportation, and one of whom shall be appointed by the ranking members of the joint standing committee of the General Assembly having cognizance of matters relating to transportation. The advisory committee shall consist of residents of and representatives of businesses located in the Bradley Airport development zone. Members of such advisory committee may attend public meetings of the Connecticut Airport Authority and monthly managers' meetings of the Connecticut Airport Authority.

Sec. 12. Subsection (e) of section 13a-123 of the 2014 supplement to the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(e) The following types of signs, displays and devices may, with the approval of and subject to regulations adopted by the commissioner, be permitted within the six-hundred-sixty-foot area of interstate, primary and other limited access state highways, except as prohibited by state statute, local ordinance or zoning regulation: (1) Directional and other official signs or notices, which signs and notices shall include, but not be limited to, signs and notices pertaining to natural

*Substitute Senate Bill No. 235*

wonders and scenic and historical attractions which are required or authorized by law; (2) signs, displays and devices advertising the sale or lease of the property upon which they are located; (3) signs, displays and devices advertising activities conducted on the property on which they are located; **[**(4) directional and other official signs or notices pertaining to facilities in this state where Connecticut-made beer is manufactured or sold, including, but not limited to, signs or notices containing the words "Connecticut Brewery Trail"; (5)**]** (4) signs, displays or advertising devices which are in place for sixty days or less; and **[**(6)**]** (5) advertising signs, displays or devices (A) located or erected on real property or abutting real property within areas owned, leased or managed by a public authority for the purpose of (i) railway or rail infrastructure facilities, including, but not limited to, associated structures located within areas zoned solely or predominantly for the development of a railway or rail infrastructure facilities, (ii) bus rapid transit corridors, including, but not limited to, the Hartford-New Britain busway project authorized in section 13b-15a, and any shelter, structure or other facility associated with the operation of such bus rapid transit corridor, (iii) airport development zones designated in section 32-75d, or (iv) any other similar transit or freight purpose, or (B) upon or within buildings, structures or other venues in the custody or control of the state and designed, operated or intended to be operated for the purpose of presenting athletic, artistic, musical or other entertainment events. Subject to regulations adopted by the commissioner and except as prohibited by state statute, local ordinance or zoning regulation signs, displays and devices may be erected and maintained within six hundred sixty feet of primary and other limited access state highways in areas which are zoned for industrial or commercial use under authority of law or located in unzoned commercial or industrial areas which areas shall be determined from actual land uses and defined by regulations of the commissioner. The regulations of the commissioner in regard to size, spacing and lighting shall apply to any segments of the interstate system which traverse

*Substitute Senate Bill No. 235*

commercial or industrial zones wherein the use of real property adjacent to the interstate system is subject to municipal regulation or control, or which traverse other areas where the land use, as of September 21, 1959, was clearly established under state law as industrial or commercial.

Sec. 13. Section 13a-124 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

No person, firm or corporation shall erect or maintain or cause to be erected or maintained, within three hundred feet of any state highway, any sign which has thereon any of the following words: "Stop", "caution", "danger", "dangerous", "warning" or "slow", or any other word or character or any device, floodlight or spotlight, signal or symbol intended to give or capable of giving warning or direction to or interfering with traffic, except with the approval or under the direction of the commissioner. No provision of this section shall be construed to prevent any officer of any municipality or any public utility company from erecting or maintaining any danger or warning sign required by statute or any sign designed for the protection of the public or to aid in the operation of any public utility. No such direction or danger sign shall bear the name of any article or product or the name or address of any person, firm or corporation or any advertisement, except that a directional sign may bear directions and other official notices pertaining to (1) farming that is part of the state's agricultural tourism; (2) facilities in this state where Connecticut-made beer is manufactured or sold, including, but not limited to, signs or notices containing the words "Connecticut Brewery Trail"; or (3) any farm in this state located within ten miles of a state-maintained limited access highway, except a parkway, where Connecticut-made wine is manufactured or sold, including, but not limited to, signs or notices containing the words "Connecticut Wine Trail". The commissioner may enter upon any property and remove any sign which does not conform to the

*Substitute Senate Bill No. 235*

provisions of this section. Any person, any member of any firm or any corporation violating any provision of this section shall be fined not more than one hundred dollars for the first offense and not more than five hundred dollars for each subsequent offense.

Sec. 14. Section 13a-124b of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

The design and production of directional and other official signs or notices pertaining to facilities in this state where Connecticut-made beer is manufactured or sold, pursuant to [subsection (e) of section 13a-123] section 13a-124, as amended by this act, may be paid for by private persons or entities affiliated with Connecticut-made beer manufacturers or sellers.

Sec. 15. Subsection (f) of section 13a-26 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(f) The provisions of this part restricting the use and accommodation of motor vehicle traffic on parkways to noncommercial vehicles shall not apply to use of the Merritt and Wilbur Cross Parkways by (1) taxicabs, as defined in section 13b-95, (2) vanpool vehicles, as defined in section 14-1, or (3) service buses, service buses for students with special needs, or two-axle, four-wheeled type II, registered school buses with a gross vehicle weight rating of [nine thousand six hundred] ten thousand pounds or less, which are owned by or under contract to a public, private or religious school or public school district and which are engaged in the transportation of school children to and from school or school activities, provided (A) such service buses conform to the regulations establishing the maximum weight, length, height or width of vehicles permitted to use such parkways; [and] (B) such school buses are [no] not more than ninety-eight inches high, eighty-four inches wide and

*Substitute Senate Bill No. 235*

two hundred three inches long; and (C) such service buses for students with special needs are not more than one hundred twenty inches high, ninety inches wide and two hundred eighty-eight inches long. The Office of the State Traffic Administration shall adopt regulations in accordance with chapter 54 establishing the maximum allowable length and height for any vanpool vehicle using said Merritt and Wilbur Cross Parkways and, not later than July 1, 1984, publish in the Connecticut Law Journal a notice of intent to adopt proposed regulations, as defined in section 4-166, reducing the maximum weight, length, height or width of, or limiting the registration classes of, motor vehicles permitted to use such parkways, in order to fully carry out the prohibition on the operation of commercial motor vehicles on such parkways.

Sec. 16. Section 13b-102 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(a) (1) Each person, association, limited liability company or corporation owning or operating a motor vehicle in livery service shall be subject to the jurisdiction of the Department of Transportation, and the department may prescribe adequate service and reasonable rates and charges and prescribe and establish such reasonable regulations with respect to fares, service, operation and equipment as it deems necessary for the convenience, protection, safety and best interests of passengers and the public.

(2) Notwithstanding the provisions of subdivision (1) of this subsection with respect to reasonable rates and charges, each person, association, limited liability company or corporation operating a motor vehicle in livery service having a seating capacity of ten or more adults shall file a schedule of reasonable maximum rates and charges with the Department of Transportation. The provisions of subdivision (1) of this subsection with respect to rates and charges shall not apply to any person, association, limited liability company or corporation operating

a motor vehicle engaged in the transportation of passengers for hire by virtue of a contract with, or a lower tier contract for, any federal, state or municipal agency.

(b) Each person, association, limited liability company or corporation operating a motor vehicle by virtue of authorization issued by the Federal Highway Administration for charter and special operation shall register such authorization for interstate operation with the Department of Transportation if such person, association, limited liability company or corporation maintains a domicile or principal office in the state. Each person operating a motor vehicle by virtue of authorization issued by the Federal Highway Administration for charter and special operation shall, prior to such registration, submit to a state and national criminal history records check, conducted in accordance with section 29-17a, and provide the results of such records check to the Department of Transportation.

Sec. 17. Section 13b-329 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(a) Each engine used upon a railroad shall be supplied with an audible signal of sufficient amplification for existing circumstances, which audible signal shall be so attached to such engine as to be conveniently accessible to the engineer and in good order for use. [Each] Except where a wayside horn has been installed pursuant to subsection (b) of this section, each person controlling the motions of an engine on a railroad shall commence sounding the audible signal when such engine is approaching and is within eighty rods of the place where such railroad crosses any highway at grade and shall keep such audible signal occasionally sounding until such engine has crossed such highway, provided when it appears to the Commissioner of Transportation upon the written complaint of an elected official of any town, city or borough wherein such crossing at grade is located that public safety requires the commencing of the sounding of the audible

signal at a distance greater or lesser than eighty rods from such crossing at grade, the Commissioner of Transportation shall make such order in relation thereto as he deems advisable, provided in no event shall said Commissioner of Transportation order the sounding of any audible signal to commence at a distance of less than twenty-seven rods from any crossing at grade. The company in whose service such person may be shall pay all damages which may accrue to any person in consequence of any omission to comply with any provision of this subsection; and no railroad company shall knowingly employ an engineer who has been twice convicted of violating any provision of this subsection.

(b) A wayside horn may be used in lieu of a horn attached to an engine at any highway-rail grade crossing equipped with an active warning system consisting of, at a minimum, flashing lights and gates. Such wayside horn shall (1) conform to the federal requirements for wayside horn use, and (2) sound at a minimum of twenty-nine seconds prior to the train's arrival at the crossing, while the lead locomotive is traveling across the crossing and occasionally thereafter until such engine has crossed such highway. Any entity installing a wayside horn shall comply with the federal requirements for written notice set forth in 49 CFR 222. For the purposes of this section, "wayside horn" has the same meaning as provided in 49 CFR 222.9, as amended from time to time.

[(b)] (c) The Commissioner of Transportation, with the advice of the Commissioner of Energy and Environmental Protection, may establish by regulation the maximum decibel levels which may be emitted by any audible signal attached to a train engine, provided such maximum decibel level shall not be less than eighty-seven decibels.

[(c)] (d) Any railroad company operating any train engine which is equipped with an audible signal which produces noise emissions in excess of the maximum decibel levels allowed for such devices as

*Substitute Senate Bill No. 235*

established by said Commissioner of Transportation is in violation of this section.

Sec. 18. (*Effective from passage*) Not later than January 1, 2015, the Department of Transportation shall, within available appropriations, submit a report, in connection with the state-certified industrial reinvestment project authorized pursuant to public act 14-2 and in accordance with the provisions of section 11-4a of the general statutes, to the joint standing committee of the General Assembly having cognizance of matters relating to transportation. Such report shall include a study of the challenges to access and egress in and around the stadium facility site, as defined in section 32-651 of the general statutes, recommendations for solutions to such challenges and an estimate of the cost of such solutions.

Sec. 19. (*Effective upon passage*) The Commissioner of Transportation, in consultation with the Commissioner of Motor Vehicles and the Commissioner of Consumer Protection, shall, within available appropriations, conduct a study of the regulation of for-hire transportation services in this state. The study shall be conducted with input from the taxicab, the motor vehicle in livery service and the for-hire transportation services industries regarding the current regulatory scheme. The study shall (1) review how emerging technologies, such as smartphone applications, currently fit into the regulatory scheme, and (2) offer recommendations as to how and if such technologies and the businesses offering them should be regulated to ensure the safety of the riding public. Such recommendations shall include, but need not be limited to, mandatory insurance coverage, licensing and background checks on drivers and vehicle safety and maintenance. Not later than February 1, 2015, the Commissioner of Transportation shall submit, in accordance with the provisions of section 11-4a of the general statutes, a report to the joint standing committee of the General Assembly having cognizance of matters relating to transportation.

*Substitute Senate Bill No. 235*

Such report shall include the findings, conclusions and recommendations from such study.

Sec. 20. (*Effective from passage*) The southern section of Saybrook Road in Middletown, between Randolph Road and Aircraft Road/Route 9 ramps, shall be classified as an urban minor arterial by the Department of Transportation in their functional roadway classification listing.

Approved June 12, 2014