# Appendix 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| YELLOW GROUP, LLC., YELLOW CAB AFFILIATION INC., TAXI AFFILIATION SERVICES LLC., YC1 LLC, 5 STAR FLASH, INC., CHICAGO MEDALLION ONE LLC., and YOUR PRIVATE LIMOUSINE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., <br><br> Defendant. | No. 12-cv-7967 <br><br> Honorable Sharon Johnson Coleman |

**ORDER**

Defendant's motion to dismiss [19] is granted in part and denied in part.

BACKGROUND

According to their complaint, plaintiffs Yellow Group, Yellow Affiliation, Taxi Affiliation Services and YC1 LLC are affiliated entities involved in the operation of Yellow Taxi services in Chicago. Plaintiff 5 Star Flash operates the Flash Cab taxi service. Plaintiffs YC1 and Chicago Medallion One are owners of "medallions," the limited number of individual licenses that permit vehicles to operate as taxis according to city regulations. Plaintiff YPL operates a livery service that utilizes limousines, SUVs and sedans. Plaintiffs allege that defendant Uber Technologies distributes a mobile phone application that allows customers to arrange rides in taxis or livery vehicles, and that it bypasses local regulation of the taxi and livery industries. Plaintiffs' complaint asserts claims against Uber under the false advertising provisions of Section 43(a) of the Lanham Act; the false representation of affiliation provisions

of that Act; Illinois' Deceptive Trade Practices and Consumer Fraud and Deceptive Business Practices statutes; and Illinois' common law doctrines of tortious interference with contract and unfair competition. Defendant seeks dismissal of the complaint for lack of subject matter jurisdiction and for failure to state a claim for relief.

## SUBJECT MATTER JURISDICTION

Defendant argues that this court lacks subject matter jurisdiction over this dispute because plaintiffs have failed to allege the standing required to create a case or controversy that triggers federal judicial authority under Article III. Defendant contends that standing to sue under the Lanham Act requires a plaintiff to be the defendant's direct competitor, that the Illinois statutes mimic the Lanham Act standing requirements, and that plaintiffs have not plausibly alleged that they are defendant's competitors.

Plaintiffs' complaint includes claims in which their standing is not dependent on status as defendant's competitor. Lanham Act claims for false association do not require the plaintiff to establish that he is a competitor of the defendant. *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1109-10 (9th Cir. 1992). Similarly, although Illinois' Deceptive Trade Practices Act is generally interpreted as a mirror of the Lanham Act, it explicitly provides that in order to prevail under its provisions, "a plaintiff need not prove competition between the parties or actual confusion or misunderstanding." 815 ILCS 510/2(b). In addition, defendant does not suggest that plaintiffs' claim for tortious interference with contract is limited in any way to plaintiffs who are in competition with defendants. It is thus apparent that even if defendant's argument regarding the lack of competition between the parties were credited, that argument fails to resolve the actual controversy regarding claims not based upon competitive status. The court finds that the complaint makes a sufficient showing of an Article III controversy to confer subject matter

2

jurisdiction over the parties' dispute. To the extent that defendant's motion seeks dismissal pursuant to Rule 12(b)(1), the motion is denied. Defendant's contentions regarding the sufficiency of plaintiffs' allegations of competition will be further addressed in the context of its argument for dismissal for failure to state a claim for relief.

## SUFFICIENCY OF THE COMPLAINT

### Lanham Act Claims

As noted above, defendant contends that a plaintiff must be its direct competitor to have standing to bring Lanham Act claims, and cites *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 438 (7th Cir. 1999) and *L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc.*, 9 F.3d 561, 575 (7th Cir. 1993) as support for this contention. Neither case creates a bright-line mandate that a Lanham Act plaintiff be the defendant's direct competitor. Instead, they require that a plaintiff have a "reasonable interest to be protected" (*Johnny Blastoff*, 188 F.3d at 438) and a "discernable competitive injury." (*L.S. Heath*, 9 F.3d at 575.)

In *Dovenmuehle v. Gildorn Mortgage Midwest Corp.*, 871 F.2d 697, 700 (7th Cir. 1989), the court discussed with approval the Second Circuit's assessment that the class of parties with standing under the Lanham Act is "quite broad." The *Dovenmuehle* court, in defining the class as including those with a reasonable interest to be protected, explicitly stated that a party "need not be in direct competition with a defendant to challenge a defendant's practices under the Act." *Id.* The Seventh Circuit's subsequent citations of *Dovenmuehle* demonstrate adherence to its analysis rather than departure from it. *Stayart v. Yahoo, Inc.*, 623 F.3d 436, 438-39 (7th Cir. 2010); *Johnny Blastoff*, 188 F.3d at 438. Accordingly, although defendant accurately observes that courts of this district have frequently adopted a strict requirement of direct competition for

3

Lanham Act standing, it does not appear that the Seventh Circuit has defined the concept in such rigid terms.

In the present case, the complaint alleges that defendant offers vehicles for hire (First Amended Complaint, pars. 49, 51, 53), as does plaintiff YPL (par. 16). It alleges that defendant's livery vehicles serve passengers reserved for the taxi plaintiffs by city ordinance (par. 3). It also alleges that defendant encourages passengers to bypass the taxi plaintiffs' dispatch systems to use defendant's dispatch network (par. 1). The court finds that the complaint is sufficient to permit inquiry into the competitive interests affected by each of the alleged Lanham Act violations.

The Lanham Act provides that any person who uses a false or misleading description or representation of fact regarding the nature, characteristics or qualities of his or another person's goods or services shall be liable to any person who believes that he is or is likely to be damaged. 11 U.S.C. § 1125(a)(1). The elements of a claim for relief under this provision are: (1) a false commercial statement about defendant's own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence a purchasing decision; (4) defendant caused its false statement to enter interstate commerce; and (5) plaintiff has been or is likely to be injured as a result of the false statement, either by diversion of sales from itself to defendant or by a loss of goodwill associated with its products. *Hot Wax Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999). In the present case, plaintiffs allege that the allegedly deceptive statements at issue entered interstate commerce through website and social media channels, and defendants do not dispute that allegation.

4

Two statements identified by the complaint as examples of defendant's false representations about its services are non-actionable under the Lanham Act as a matter of law. Generalized assertions about quality are not restricted by the statute. *Pizza Hut, Inc., v. Papa John's International, Inc.*, 227 F.3d 489, 498-99 (5th Cir. 2000); *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995). The complaint asserts that defendant identifies its services as "premium" and "high quality," but does not specify any manner in which the statements claim any objective measure of those terms or any quantifiable superiority over any other product. These statements are insufficiently detailed to provide a basis for a Lanham Act claim.

The complaint also alleges that defendant falsely represents the nature of its taxi fares. According to the complaint, defendant states that it charges "standard taxi rates" and adds a 20% "gratuity," when in reality it gives only half of the "gratuity" to the driver and keeps the remainder. This statement is a sufficiently specific factual representation to be assessed as true or false. However, the complaint fails to identify a commercial interest that merits Lanham Act protection from the alleged falsehood.

The complaint asserts that the taxi plaintiffs lease their vehicles to drivers (First Amended Complaint, pars. 74, 77, 78), and that defendant contracts with the same drivers to use the same vehicles when a passenger arranges a taxi ride through defendant's service rather than plaintiffs' dispatch services or a street hail. (pars. 30, 42, 78.) The driver, having paid the taxi plaintiffs a flat lease fee, is thus simultaneously available for a call from the plaintiffs' dispatch, a message from defendant regarding a contact from a nearby passenger using defendant's application, or a passenger hailing him from the street. The complaint makes no allegation that any of the fees the taxi plaintiffs collect from drivers are reduced when those drivers find passengers without using the plaintiffs' dispatch systems. Nor does the complaint claim that the

livery plaintiff would lose passengers to defendant because of a false understatement of the percentage of the taxi fare defendant keeps. In the absence of any suggestion in the complaint that this statement could cause harm to plaintiffs' business, they do not identify an interest protected by the Lanham Act and do not state a claim for relief as to the misrepresentation about defendant's fares.

Another alleged statement by defendant more clearly raises an inference of lost revenue for the livery plaintiff: the complaint asserts that defendant represents that all its drivers are fully insured, but that defendant does not in fact check for insurance beyond an initial screening, and relies upon the presumption that the taxi drivers it engages are insured through the taxi plaintiffs. In the court's view, this allegation raises an inference that the livery plaintiff could lose passengers who incorrectly believe that a taxi ride is an acceptable choice at least in part because it is adequately insured. The court finds that Count I of the complaint states a claim for relief as to the alleged misrepresentation of insurance coverage.

Count II of the complaint alleges that defendant falsely represents affiliation with the taxi plaintiffs. The complaint asserts that the taxi plaintiffs own the Yellow Taxi and Flash Cab trademarks, trade dress, and goodwill. Plaintiffs claim that defendant contracts with drivers who have leased vehicles from the taxi plaintiffs, utilizes its mobile phone application to connect those drivers with passengers using that application, collects fees for the transportation from the passengers, and divides the fees with the drivers. As a result, drivers who have arranged rides through defendant's application rather than through the taxi plaintiffs' dispatch system nonetheless present themselves to passengers in taxis bearing plaintiffs' trademarks. The complaint also alleges that defendant's website acknowledges use of third-party drivers and refers to engaging those drivers through "fleet partners." In the court's view, this reference

6

raises an inference that the taxi plaintiffs whose vehicles appear in response to passengers' use of defendant's application are partners in defendant's service. The Lanham Act protects a plaintiff's commercial identity from the false representation that it endorsed or was associated with a defendant's product. *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1106-07 (9th Cir. 1992). The court finds that Count II of the complaint sufficiently alleges a likely loss of goodwill and a claim for relief for false association under the Lanham Act.

### State Statutory Claims

The complaint alleges that defendant's actions also violate Illinois' Deceptive Trade Practices Act, 815 ILCS 510/1, and its Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1. When a complaint asserts a single set of facts as the basis for claims under the Lanham Act and the state trade regulation statutes, the state law claims receive the same analysis as their federal counterpart. *Dynamic Fluid Control (PTY) Ltd. v. International Valve Manufacturing, LLC*, 790 F.Supp.2d 732, 740 (N.D. Ill. 2011). The court finds that Count III and Count IV of the complaint state claims for relief to the same extent as the corresponding Lanham Act claims of Count I and Count II.

### State Tort Claims

Count V of the complaint alleges that defendant tortiously interferes with the taxi plaintiffs' contractual relationships with the drivers who lease their vehicles. The first element of this claim is that defendant encourages the drivers to breach their agreements regarding the use of the taxi plaintiffs' trademarks. The complaint alleges that its leasing drivers are permitted to use the taxi plaintiffs' trademarks on only a limited basis, but does not specify what that limitation is. Nor does the complaint identify any contractual provisions breached by a driver's

use of the taxi plaintiffs' trademarked vehicle to pick up a passenger contacted through defendant's application. The complaint thus fails to state a claim for relief for tortious interference with regard to trademark use by the taxi plaintiffs' drivers.

The taxi plaintiffs next contend (par. 77) that upon leasing a vehicle, a driver is contractually obliged to obey applicable automobile laws, and that one of those laws prohibits the use of a mobile phone during the operation of a commercial vehicle (par. 81). They allege that defendant's service requires drivers to use a mobile phone to signal to defendant their acceptance of a pickup request, and that drivers are required to use a mobile phone a second time to call the prospective passenger. The court finds that the complaint sufficiently alleges that defendant induces drivers to breach their agreements with the taxi plaintiffs by requiring use of mobile phones in violation of applicable law.

Finally, Count VI of the complaint asserts a claim under Illinois common law for unfair competition. The complaint alleges that defendant does not abide by numerous laws and regulations that govern plaintiffs' operations, that those laws and regulations also apply to defendant's business, and that defendant's failure to abide by them gives it an unfair competitive advantage.

Illinois' Deceptive Trade Practices Act, 815 ILCS 510/1, is generally interpreted to codify the state's common law of unfair competition. *Brooks v. Midas International Corp.*, 47 Ill. App. 3d 266, 274 (1977). However, the statute explicitly leaves undisturbed the preexisting common law unfair competition actions not included in its provisions: "This Section does not affect unfair trade practices otherwise actionable at common law or under other statutes of this State." 815 ILCS 510/2(c).

8

In *Jones v. Smith Oil & Refining Co.,* 295 Ill. App. 519, 523 (1938), the Illinois Appellate Court held that a gas station's use of an illegal lottery promotion was "unfair competition of trade" as to a competitor station, and that the competitor could seek an injunction against the illegal activity. Although this precedent has not subsequently been cited as an example of a still-viable common law cause of action in Illinois, it has not been overruled or otherwise discredited. The court accordingly concludes that Count VI states a claim for relief for unfair competition under Illinois common law.

## CONCLUSION

Defendant's motion to dismiss for lack of subject matter jurisdiction is denied. Its motion to dismiss for failure to state a claim for relief is granted as to defendant's alleged statements about the "premium" and "high quality" nature of its services and its representation that it charged standard taxi rates plus a 20% "gratuity." The motion is also granted as to the taxi plaintiffs' claims regarding insurance misrepresentation and their claims that defendant induced breaches of its agreements with drivers regarding use of their trademarks. Defendant's motion is otherwise denied. Plaintiff may file a motion by October 31, 2013 that seeks leave to file amended complaint which addresses the pleading deficiencies identified in this order. In the absence of the filing of such motion, accompanied by a proposed amended complaint, by the aforementioned deadline, the insufficient claims will be dismissed with prejudice without further notice.

So ordered.

September 30, 2013

Sharon Johnson Coleman
District Judge