UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GREENWICH TAXI, INC., ACE TAXI SERVICE, INC., CURTIN MOTOR LIVERY SERVICE, INC., EAST HARTFORD CAB COMPANY, INC., EXECUTIVE 2000 TRANSPORTATION, LLC, FARMINGTON VALLEY CAB, LLC, GROTON CAB COMPANY, INC., LASSE'S LIVERY SERVICE, INC., SUBURBAN TRANSPORTATION, INC., TAXICABS AND LIVERY COUNCIL OF CONNECTICUT, INC., THE WATERBURY YELLOW CAB & SERVICE COMPANY, INC., TORRINGTON VALLEY CAB, LLC, UNION-LYCEUM TAXI COMPANY, INC., and YELLOW CAB COMPANY OF NEW LONDON & GROTON, INC. | : : : : : : : : : : : : : : : : | C.A. No.: 3:14-cv-733(AWT) |
| Plaintiffs | : : | |
| v. | : : : | |
| UBER TECHNOLOGIES, INC. and LYFT, INC. | : : : | FEBRUARY 5, 2015 |
| Defendants | : | |

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • (860) 724-3921 • Fax (860) 724-3921 • Juris No. 27726

## PLAINTIFFS' MOTION FOR LEAVE TO EXCEED PAGE LIMIT

Pursuant to Local Rule of Civil Procedure 7(a)(2), Plaintiffs respectfully move for leave to file an Opposition to the Motion to Dismiss filed by Uber Technologies, Inc. ("Uber") that includes 10 pages in excess of the 40-page limitation set by Local Rule 7(a)(2). A copy of the proposed brief is attached hereto as Exhibit 1. Uber's Motion to Dismiss consists of 42 pages, and seeks to dismiss the entirety of Plaintiffs' seven-count Amended Complaint on numerous grounds, including an alleged failure to plead sufficient, particularized facts in support of Plaintiff's legal claims. Plaintiffs' response, therefore, requires extensive citations to, and explanations of, the factual allegations in the Complaint. Uber's Motion gives rise to important

issues of law that Plaintiffs' wish to address in their brief, and that necessitate the additional

pages requested.

    Accordingly, Uber respectfully requests that this motion be granted.

                    THE PLAINTIFFS,

BY:                /s/           
           Mary Alice Moore Leonhardt (ct02996)
           mmooreleonhardt@rms-law.com
           Glenn E. Coe (ct05372)
           William W. Kaliff (ct03565)
           Daniel J. Csuka (ct29446)
           Rome McGuigan, P.C.
           One State Street
           Hartford, CT 06103
           Tel. (860) 549-1000
           Fax (860) 724-3921

           Their Attorneys

*Rome McGuigan, P.C. • Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

## CERTIFICATION

I hereby certify that on February 5, 2015, a copy of the foregoing was filed electronically and served by mail to anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____/s/_____

Mary Alice Moore Leonhardt, Esq.

18684-1/L96991

*Rome McGuigan, P.C. • Attorneys at Law*
*One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726*

3

# <u>Exhibit 1</u>

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GREENWICH TAXI, INC., ACE TAXI SERVICE, INC., CURTIN MOTOR LIVERY SERVICE, INC., EAST HARTFORD CAB COMPANY, INC., EXECUTIVE 2000 TRANSPORTATION, LLC, FARMINGTON VALLEY CAB, LLC, GROTON CAB COMPANY, INC., LASSE'S LIVERY SERVICE, INC., SUBURBAN TRANSPORTATION, INC., TAXICABS AND LIVERY COUNCIL OF CONNECTICUT, INC., THE WATERBURY YELLOW CAB & SERVICE COMPANY, INC., TORRINGTON VALLEY CAB, LLC, UNION-LYCEUM TAXI COMPANY, INC., and YELLOW CAB COMPANY OF NEW LONDON & GROTON, INC.<br><br>      Plaintiffs<br><br>   v.<br><br>UBER TECHNOLOGIES, INC. and LYFT, INC.<br><br>      Defendants | C.A. No.: 3:14-cv-733(AWT)<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>FEBRUARY 5, 2015 |

**MEMORANDUM OF LAW IN OPPOSITION TO UBER TECHNOLOGIES, INC.'S MOTION TO DISMISS**

Rome McGuigan, P.C.  •  Attorneys at Law
One State Street  •  Hartford, Connecticut 06103-3101  •  (860) 549-1000  •  Fax (860) 724-3921  •  Juris No. 27726

# TABLE OF CONTENTS

I.   STATEMENT OF NATURE AND STAGE OF PROCEEDING ..................................1

II.   LEGAL STANDARD .................................................................................3

III.   ARGUMENT ...............................................................................................4

    A.   Plaintiffs' allegations properly state a Lanham Act Claim for False Advertising.................4
        1.   Plaintiffs' claims are not for enforcement of state statutes and/or regulations...............4
        2.   Plaintiffs adequately allege Uber made misrepresentations ............................6
        3.   Plaintiffs sufficiently plead proximate cause ...............................................9

    B.   Plaintiffs' allegations properly state a Lanham Act Claim for False Association.................12

    C.   Plaintiffs state a legally sufficient claim for Intentional Interference with
       Contractual Relationships ...............................................................................18
        1.   Plaintiffs have sufficiently alleged the existence of contractual relationships which
           were known to Uber.......................................................................................19
        2.   Plaintiffs have sufficiently alleged that Uber intentionally interfered
           with Plaintiffs' contracts ............................................................................22
        3.   Plaintiffs have adequately pled that Uber's interference was tortious...........................23
        4.   Plaintiffs have sufficiently alleged that they have suffered actual loss as a result of
           Uber's intentional and tortious interference ...................................................27

    D.   Plaintiffs' allegations properly state a claim for violation of the CUTPA ...........................29
        1.   Uber's violation of the Lanham Act establishes liability under CUTPA ......................29
        2.   Plaintiffs satisfy Rule 9(b)'s heightened pleading standard ............................30
        3.   The "substantial injury test" is not operative in Connecticut, and even if it was,
           Plaintiffs satisfy this test ..........................................................................30
        4.   Plaintiffs' allegations allege conduct which rises to the level of a CUTPA violation
           under the Cigarette Rule ..............................................................................32
        5.   Plaintiffs allege that Uber's acts were the proximate cause of their injuries...................34

    E.   Plaintiffs state legally viable claims for violations of RICO ...........................................34
        1.   Plaintiffs have sufficiently alleged a pattern of racketeering activity............................35
        2.   Plaintiffs have sufficiently stated a claim under each RICO subsection .......................40
           i.   Plaintiffs sufficiently state a claim under Section 1962(a) .........................40
           ii.   Plaintiffs sufficiently state a claim under Section 1962(b) .........................42
           ii.   Plaintiffs sufficiently state a claim under Section 1962(c) .........................44

    F.   The Court should not abstain from deciding these state issues .........................................49

IV.   CONCLUSION ................................................................................................50

V.   REQUEST FOR ORAL ARGUMENT.................................................................50

Rome McGuigan, P.C.  •  Attorneys at Law

One State Street  •  Hartford, Connecticut 06103-3101  •  (860) 549-1000  •  Fax (860) 724-3921  •  Juris No. 27726

i

# TABLE OF AUTHORITIES

## Cases

<div style="text-align: right"><strong>Page(s)</strong></div>

*Adams v. Watson,*
    10 F.3d 915 (1st Cir. 1993)............................................................12

*Am. Soc. of Travel Agents, Inc. v. Blumenthal,*
    566 F.2d 145 (D.C.Cir. 1977)......................................................12

*Anza v. Ideal Steel Supply* Corp.,
    547 U.S. 451 (2006)...............................................11, 12, 46, 47, 49

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................3, 4

*Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.,*
    268 F.3d 103 (2d Cir. 2001)........................................................35

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).....................................................................3

*Bhatia v. Debek,*
    287 Conn. 397 (2008)...............................................................24

*Boston Cab Dispatch, Inc. v. Uber Technologies, Inc.,*
    No. CIV.A. 13-10769-NMG, 2014 WL 1338144 (D. Mass. Feb. 28, 2014)............14, 50

*Boston Cab Dispatch, Inc. v. Uber Technologies, Inc.,*
    CIV.A. 13-10769-NMG, 2014 WL 1338148 (D. Mass. Mar. 27, 2014).....................12

*Boston Cab Dispatch, Inc.,* 2015 WL 314131.........................................................29

*Boyle v. United States,*
    556 U.S. 938 (2009)..................................................................42

*Bridge v. Phoenix Bond & Indem. Co.,*
    553 U.S. 639...............................................................46, 47, 48, 49

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.,*
    973 F.2d 1033(2d Cir. 1992)........................................................14

*Brooke v. Schlesinger,*
    898 F. Supp. 1076 (S.D.N.Y. Sept. 25, 1995)..................................35, 39

*Rome McGuigan, P.C.* • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

*Bulldog New York LLC v. Pepsico, Inc.*,
    No. 3:08CV1110 AWT, 2014 WL 1284903 (D. Conn. Mar. 31, 2014)......................21

*Century 21 Real Estate Corp. v. LendingTree, Inc.*,
    425 F.3d 211 (3d Cir. 2005)...................................................................................15

*Chavis v. Chappius*,
    618 F.3d 162 (2d Cir. 2010).....................................................................................4

*Cheshire Mortgage Service, Inc. v. Montes*,
    223 Conn. 80, 612 A.2d 1130 (1992)......................................................................33

*Commercial Cleaning Services, L.L.C. v. Colin Service Systems, Inc.*,
    271 F.3d 374 (2d Cir. 2001)...................................................................................49

*Connecticut Ass'n of Health Care Facilities, Inc. v. Worrell*,
    508 A.2d 743 (Conn. 1986)......................................................................................1

*Connecticut State Med. Soc. v. Connecticut Bd. of Examiners in Podiatry*,
    524 A.2d 636 (Conn. 1987)......................................................................................1

*Connolly v. Havens*,
    763 F.Supp. 6 (S.D.N.Y.1991)................................................................................39

*Corra v. Sunwood Condo. Ass'n, Inc.*,
    No. CV126009466S, 2012 WL 6583030 (Conn. Super. Ct. Nov. 26, 2012)...............27

*Crabhouse of Douglaston Inc. v. Newsday Inc.*,
    801 F. Supp. 2d 64 (E.D.N.Y. 2011).......................................................................40

*Deutsch v. Backus Corp.*,
    No. X07CV106022074S, 2012 WL 1871398,
    54 Conn. L. Rptr. 30 (Conn. Super. Ct. May 2, 2012)...............................................20

*Dial A Car, Inc. v. Transportation, Inc.*,
    82 F.3d 484 (D.C. Cir. 1996)...............................................................................6, 7

*Dial Corp. v. Manghnani Investment Corp.*,
    659 F.Supp. 1230 (D. Conn. 1987).........................................................................29

*Downes-Patterson Corp. v. First Nat'l Supermarkets, Inc.*,
    64 Conn. App. 417 (2001)......................................................................................27

*Dworkin Construction Corp. v. Shremshock-Yoder Architects, Inc.*,
    No. 380352, 1996 WL 469742 (Conn. Super. Ct. Aug. 2, 1996)...............................21

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

*Ehret v. Uber Technologies, Inc.,*
    No. C-14-0113 EMC, 2014 WL 4640170 (N.D. Cal. Sept. 17, 2014)........................10

*Estate of Axelrod v. Flannery,*
    476 F. Supp. 2d 188 (D. Conn. 2007)...........................................................4

*Fabri v. United Technologies Int'l, Inc.,*
    387 F.3d 109 (2d Cir. 2004)...................................................................33

*F.T.C. v. Neovi, Inc.,*
    604 F.3d 1150 (9th Cir. 2010).............................................................31, 32

*Futuristic Fences, Inc. v. Illusion Fence Corp.,*
    558 F.Supp.2d 1270 (S.D.Fla. 2008).........................................................18

*Gristede's Foods, Inc. v. Unkechauge Nation,*
    532 F. Supp. 2d 439 (E.D.N.Y. 2007).......................................................49

*Hannex Corp. v. GMI, Inc.,*
    140 F.3d 194 (2d Cir. 1998)....................................................................8

*Hayden v. County of Nassau,*
    180 F.3d 42 (2d Cir. 1999).....................................................................4

*H.J. Inc. v. Northwestern Bell Tel. Co.,*
    492 U.S. 229 (1989)..........................................................................39

*Inc. v. AAA Hellenic Marble, Inc.,*
    799 F.Supp.2d 446 (E.D.Pa. 2011)...........................................................18

*In re Sumitomo Copper Litig.,*
    995 F. Supp. 451 (S.D.N.Y. 1998).....................................................36, 39, 40

*In re World Trade Ctr. Disaster Site Litig.,*
    503 F.3d 167, 170 (2d Cir. 2007)............................................................31

*Island Insteel Systems, Inc. v. Waters,*
    296 F.3d 200 (3d Cir. 2002)...................................................................15

*John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.,*
    322 F.3d 26 (1st Cir. 2003)...................................................................17

*Johnson v. Jones,*
    149 F.3d 494 (6th Cir. 1998).................................................................17

**Rome McGuigan, P.C.**  •  Attorneys at Law

One State Street  •  Hartford, Connecticut 06103-3101  •  (860) 549-1000  •  Fax (860) 724-3921  •  Juris No. 27726

*Kopperl v. Bain*,
    23 F.Supp.3d 97 (D. Conn. June 2, 2014)..................................................24

*Lexmark Int'l*,
    134 S.Ct. 1377 (2014)..........................................................10, 11, 12

*Light Rigging Co. v. Dept. of Public Utility Control*,
    219 Conn. 168, 592 A.2d 386 (1991).....................................................33

*Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*,
    283 F.3d 282 (5th Cir. 2002)............................................................4

*Malletier v. Burlington Coat Factory Warehouse, Corp.*,
    217 F. App'x 1 (2d Cir. 2007)..........................................................13

*Manufacturers Technologies, Inc. v. Cams, Inc.*,
    706 F.Supp. 984 (D. Conn. 1989).......................................................29

*Manzo v. Uber Technologies, Inc.*,
    13 C 2407, 2014 WL 3495401 (N.D. Ill. July 14, 2014)................................7, 10

*Matima v. Celli*,
    228 F.3d 68, 81 (2d Cir.2000)...........................................................4

*McLaughlin v. Anderson*,
    962 F.2d 187 (2d Cir. 1992)...........................................................35

*McNeilab, Inc. v. American Home Products Corp.*,
    848 F.2d 34 (2d Cir. 1988)..............................................................8

*Merck Eprova AG v. Gnosis S.p.A.*,
    760 F.3d 247 (2d Cir. 2014).......................................................7, 8, 16

*Nabisco Brands v. Kaye*,
    760 F.Supp. 25 (D. Conn.1991).........................................................29

*Nielsen v. Rabin*,
    746 F.3d 58 (2d Cir. 2014)..............................................................4

*Nike, Inc. v. Rubber Mfrs. Ass'n, Inc.*,
    509 F.Supp. 919 (D.C.N.Y. 1981).......................................................18

*Official Publications, Inc. v. Kable News Co.*,
    884 F.2d 664 (2d Cir. 1989).............................................................42

*Par Painting, Inc. v. Greenhorne & O'Mara, Inc.*,

**Rome McGuigan, P.C. • Attorneys at Law**

One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

v

*Rome McGuigan, P.C. • Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

61 Conn. App. 317 (2001)..................................................................30

*Patsy's Italian Restaurant, Inc. v. Banas,*
   658 F.3d 254 (2d Cir. 2011)........................................................16

*People v. Uber Technologies, Inc.,*
   Docket No. CGC-14-543180.........................................................5

*PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.,*
   818 F.2d 266 (2d Cir. 1987)..........................................................8

*Purolator, Inc. v. EFRA Distributors, Inc.,*
   687 F.2d 554 (1st Cir. 1982)........................................................18

*Raymond Road Associates, LLC. V. Taubman Centers, Inc.,*
   Nos. X02UWYCV075007877S, X02UWYCV075007876S,
   2009 WL 939848 (Conn. Super. Ct. Mar. 5, 2009).......................20, 21

*Republic of Colombia v. Diageo North America Inc.,*
   531 F.Supp.2d 365 (E.D.N.Y. 2007)............................................47

*Rescuecom Corp. v. Google Inc.,*
   562 F.3d 123 (2d Cir. 2009).........................................................16

*Reves v. Ernst & Young,*
   507 U.S. 170 (1993)....................................................................45

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,*
   30 F.3d 339 (2d Cir. 1994)...........................................................42

*Robert S. Weiss & Associates, Inc. v. Wiederlight,*
   208 Conn. 525 (1988)..................................................................27

*Rossman v. Morasco,*
   115 Conn. App. 234 (2009)..........................................................19

*Sanford Hall Agency, Inc. v. Dezanni,*
   No. CV044000576, 2004 WL 3090673 (Conn. Super. Ct. Dec. 2, 2004)..................27

*Sedima, S.P.R.L. v. Imrex Co., Inc.,*
   473 U.S. 479 (1985)...........................................................35, 39, 44

*Serin v. N. Leasing Sys., Inc.,*
   No. 7:06-CV-1625, 2009 WL 7823216 (S.D.N.Y. Dec. 18, 2009)..................36, 39, 40

*Sportsmen's Boating Corp. v. Hensley,*

192 Conn. 747 (1984)..................................................................30

*State v. Acordia*, Inc.,
310 Conn. 1, 29, 73 A.3d 711 (2013)..........................................31

*Swarovski Aktiengesellschaft v. Building No. 19, Inc.*,
704 F.3d 44 (1st Cir. 2013)..........................................................14

*The Sports Auth., Inc. v. Prime Hospitality Corp.*,
89 F.3d 955 (2d Cir. 1996)...........................................................15

*Timex Corp. v. Stoller*,
961 F. Supp. 374 (D. Conn. 1997).................................................29

*Tocker v. Philip Morris Cos.*,
470 F.3d 481 (2d Cir. 2006)............................................................4

*Ulbrich v. Groth*,
310 Conn. 375, 78 A.3d 76 (2013)................................................31

*United States v. Turkette*,
452 U.S. 576 (1981).......................................................................42

*Vess v. Ciba–Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003).........................................................4

*Votto v. American Car Rental, Inc.*,
273 Conn. 478, 871 A.2d 981 (2005)............................................31

*Waits v. Frito-Lay, Inc.*,
978 F.2d 1093 (9th Cir. 1992).......................................................13

*Webster Financial Corp. v. McDonald*,
No. CV084016026S, 2009 WL 416059 (Ct. Super. Ct. Jan. 28, 2009).....................28

*Yellow Grp. LLC v. Uber Technologies, Inc.*,
12 C 7967, 2014 WL 3396055 (N.D. Ill. July 10, 2014)..................7, 9, 10, 12, 14, 18

*Yellow Grp. LLC*,
12 C 7967 (N.D. Ill. Sept. 30, 2013)..............................................12, 14, 18, 29

**Statutes**

15 U.S.C. § 1125.............................................................2, 7, 10, 13, 14, 15, 16

15 U.S.C. § 45.................................................................................................32

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

18 U.S.C. § 1962.................................................................3, 35, 41, 42, 43, 44

Connecticut General Statutes ("C.G.S") §§ 42-110a.............................................2

Federal Rule of Civil Procedure 12(b)(6)....................................................3, 4, 17

Federal Rule of Civil Procedure Rule 9(b).............................................4, 18, 30, 39, 40

Fed. R. Civ. P. 15(a)(2)...............................................................................4

**Treatises**

4 J. Thomas McCarthy,
    McCarthy on Trademarks and Unfair Competition § 23:8 (2013)............13, 14, 16, 17

*Rome McGuigan, P.C.  •  Attorneys at Law*
One State Street  •  Hartford, Connecticut 06103-3101  •  (860) 549-1000  •  Fax (860) 724-3921  •  Juris No. 27726

Plaintiffs respectfully submit this Memorandum of Law in Opposition to Uber

Technologies, Inc.'s ("Uber") Motion to Dismiss Plaintiffs' Amended Complaint (Doc. #37).  In

connection herewith and for the reasons cited herein, Plaintiffs also request leave to file a Second

Amended Complaint to the extent, *arguendo*, all or part of the Motion is granted.

## I.  STATEMENT OF NATURE AND STAGE OF PROCEEDING

Plaintiffs are legally authorized taxicab and livery service operators that provide taxicab

and livery services throughout Connecticut, and their association, Taxicabs and Livery Council

of Connecticut, Inc., which fosters and promotes the taxicab and livery industry in Connecticut.[1]

These taxi and livery service companies and the members of their association have invested

substantial capital into securing their operating authorities, and complying with federal, state,

and local laws governing vehicle-for-hire services, which are designed to protect the riding

public by ensuring they are receiving safe, fair, and non-discriminatory services.[2] *Amended*

*Complaint dated 9/15/15*, ¶¶ 1-16 ("Complaint"). Defendants Uber Technologies, Inc. ("Uber")

and Lyft, Inc. ("Lyft") (Uber and Lyft are hereinafter collectively referred to as "Defendants")

are foreign corporations which operate illegal transportation services, and deceive customers as

to, *inter alia*, the fares they must pay, the safety of the vehicles and drivers transporting them for

or on behalf of Defendants, the extent of insurance coverage, the legality of the offered services,

and the fact that they are violating anti-discrimination laws. *Id.* at ¶¶ 1, 17-18.

To ensure public access to safe, affordable, and uniform means of vehicle-for-hire

---

[1]     Taxicabs and Livery Council of Connecticut, Inc. brings this lawsuit as an association on
behalf of its members, which include the Plaintiff taxicab and livery service operators. *See
Connecticut Ass'n of Health Care Facilities, Inc. v. Worrell*, 199 Conn. 609, 616, 508 A.2d 743
(1986); *Connecticut State Med. Soc. v. Connecticut Bd. of Examiners in Podiatry*, 203 Conn.
295, 304, 524 A.2d 636 (1987).
[2]     The taxi and livery companies are subject to strict oversight by the State of Connecticut
Department of Transportation, Department of Motor Vehicles, and Department of Revenue
Services.

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

transportation, Connecticut has developed a number of laws to protect the riding public since the 1920s. *Id.* at ¶ 22. While Defendants style their vehicles as "UberX vehicles, black cars, and SUVS," they are, in fact, dangerous taxicab or livery vehicles used to provide transportation services for hire to the public on demand, and are therefore subject to Connecticut's extensive taxicab and livery laws. *Id.* at ¶¶ 34, 38. Defendants, however, deliberately evade Connecticut law and misrepresent their rogue operations, while concurrently giving the appearance of state compliance. *Id.* at ¶ 41. Defendants illegally obtain their business by fraudulently leading the public to believe that they are affiliated with lawfully authorized taxicab and livery authorities, and by misrepresenting, *inter alia*, the safety, quality, and legality of their services. *See, e.g., id.* at ¶¶ 41-50, 56-60, 67-68. In this way, Defendants profit by simultaneously flouting and taking parasitic advantage of: Connecticut's transportation system; the consuming public; and the infrastructure, including *inter alia*, the authorities, systems and insurance of the taxicab and livery Plaintiffs wherein Defendants utilize without consent and receive improper benefits, both actual and via customer perception, from the Connecticut Department of Transportation ("DOT") certificates displayed in, the Connecticut Department of Motor Vehicles ("DMV") license plates on and the liability insurance procured by such Plaintiffs for vehicles operated by drivers under contract with Plaintiffs who are also providing transportation services for or on behalf of Uber and/or Lyft. *Id.* at ¶¶ 31, 35, 60, 67-68.

Plaintiffs commenced this action by Complaint on May 21, 2014, and filed their Amended Complaint on September 15, 2014. In this action, Plaintiffs assert causes of action against Uber due to its violations of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) and 1125(a)(1)(A); unfair and deceptive trade practices in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Connecticut General Statutes ("C.G.S") §§ 42-110a, *et seq.*; common

2

law intentional interference with contractual relationships; and violation of the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a)-(c). *See* Dkt. #33,

Amended Complaint (the "Complaint"). Uber filed its Motion to Dismiss and Memorandum of

Law (collectively, the "Motion") on November 14, 2014. Lyft also filed a Motion to Dismiss on

November 14, 2014, but has since withdrawn its Motion on February 4, 2015. *See* Doc. #50.

## II.   **LEGAL STANDARD**

Uber seeks to dismiss Plaintiffs' causes of action by asserting that same fail to state a

claim pursuant to Federal Rule of Civil Procedure 12(b)(6). To defeat a motion to dismiss, a

complaint must contain sufficient factual matter that, taken as true, will state a claim to relief that

is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 556 (2007). A claim is plausible when the plaintiff pleads enough

factual content to allow the court to draw "the reasonable inference" that the defendant is liable

for the misconduct alleged. *See Iqbal*, 556 U.S. at 678. This "plausibility standard" does not

require probability, but does ask for more than a sheer possibility. *Id.*

If a claim fails for lack of specificity, a district court generally should grant plaintiff leave

to amend its complaint. "[I]n circumstances where plaintiffs specifically request leave to amend

in the event that the court is inclined to dismiss on Rule 9(b) grounds, the failure to grant leave to

amend is an abuse of discretion unless the plaintiff has acted in bad faith or the amendment

would be futile." (Internal quotation marks omitted.) *Estate of Axelrod v. Flannery*, 476 F. Supp.

2d 188, 197 (D. Conn. 2007) (*citing Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th

Cir. 2003) ["As with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b)

should ordinarily be without prejudice. [L]eave to amend should be granted if it appears at all

*Rome McGuigan, P.C.*  •  *Attorneys at Law*
One State Street  •  Hartford, Connecticut 06103-3101  •  (860) 549-1000  •  Fax (860) 724-3921  •  Juris No. 27726

possible that the plaintiff can correct the defect."]).[3]

## III.  ARGUMENT

Lawsuits have arisen in diverse jurisdictions in which Uber operates or has operated in the United States.[4,5] Such other actions -- whether decisions have been rendered on Uber's similar motions to dismiss -- offer a possible lens through which Plaintiffs' allegations in the instant matter could be viewed for purposes of evaluating Uber's Motion. Notwithstanding same, Plaintiffs have sufficiently pled allegations that support their claims for relief under each of their causes of action.

### A.  Plaintiffs' allegations properly state a Lanham Act Claim for False Advertising.

#### 1.  Plaintiffs' claims are not for enforcement of state statutes and/or regulations.

In an effort to bolster its Motion, Uber recasts Plaintiffs' claims as merely an attempt to enforce Connecticut's taxicab and livery statutes and regulations. Said attempt, however, misstates the actual claims pled, as only a minimum of Plaintiffs' allegations of false advertising

---

[3] *See also Nielsen v. Rabin,* 746 F.3d 58, 62 (2d Cir. 2014); *Matima v. Celli,* 228 F.3d 68, 81 (2d Cir.2000) ("Generally, leave to amend should be freely given...."); *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010); *Tocker v. Philip Morris Cos.,* 470 F.3d 481, 491 (2d Cir. 2006) ("leave to amend a complaint may be denied when amendment would be futile."); *Hayden v. County of Nassau,* 180 F.3d 42, 53 (2d Cir. 1999); Fed. R. Civ. P. 15(a)(2) (the court should "freely give leave [to amend] when justice so requires"). Rule 15 demonstrates a "bias in favor of granting leave to amend" and a court must have a "substantial reason to deny a request for leave to amend." *See Lyn-Lea Travel Corp. v. Am. Airlines, Inc.,* 283 F.3d 282, 286 (5th Cir. 2002).

[4]     They have been filed in both state and federal courts by taxicab and livery companies like Plaintiffs; consumers; drivers; and even the general public.

[5]     The most recent lawsuit was filed by the State of California against Uber and its management companies, Rasier, LLC and Rasier-CA, LLC. *See People v. Uber Technologies, Inc.,* Docket No. CGC-14-543180. The complaint, which is premised on the state's extensive investigation, alleges in great detail that, *inter alia,* Uber is making untrue or misleading representations about its safety and background checks; is operating unlawfully at airports; and is charging untrue, misleading and fraudulent fees. Lyft recently settled the complaint with roughly identical allegations and agreed to pay up to $500,000 in civil fines. *People v. Lyft, Inc.,* CGC-14-543113 (Dec. 9, 2014, Stipulated Judgment and Permanent Injunction attached hereto as Appendix 1). The Uber lawsuit remains pending.

Rome McGuigan, P.C.  •  Attorneys at Law
One State Street  •  Hartford, Connecticut 06103-3101  •  (860) 549-1000  •  Fax (860) 724-3921  •  Juris No. 27726

and association focus on Uber's misrepresentations of legal compliance. Uber's misrepresentations concerning it being a "ridesharing" service, it overstating the extent of its insurance coverage, and/or its false portrayal of its relationships with and the background checks it performs on its drivers, each has nothing to do with whether Uber complies with state taxicab and/or livery statutes and regulations. Yet in making this argument, Uber hopes that its numerous other misrepresentations will be ignored.

Nevertheless, Plaintiffs are not suing to enforce state taxicab and livery statutes and regulations. Rather, they commenced this action to enforce their rights as established under federal law, namely the Lanham Act and RICO, as established under CUTPA and Connecticut tort law, as well as via their legally protected interests in their operating authorities. Plaintiffs allege in the Complaint that Uber makes false or misleading statements that deceive customers and influence consumers' purchasing decisions in the vehicle-for-hire market, and seek to prevent Uber from continuing to make these misrepresentations. Plaintiffs do not seek to have this Court mandate that Uber do what is required of them under state taxicab and livery laws, only to stop misrepresenting that it actually complies.

Regardless, the cases relied upon by Uber are inapposite and fail to support its position. In *Dial A Car*, the plaintiff operated corporate transportation services in the District of Columbia. *See Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484, 485 (D.C. Cir. 1996). There, the plaintiff alleged that the defendants were falsely asserting in their promotional material that they lawfully performed corporate transportation services within D.C. *Id.* The trial court granted defendants' motion to dismiss because it determined that the D.C. Taxicab Commission had not resolved a disagreement about the provision of such services. *Id.* The court noted that there was "no dispute" that the D.C. Taxicab Commission had not addressed whether the defendants'

5

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

provision of corporate services was in violation of the local ordinances. *Id.* at 488. "[T]here must be a clear and unambiguous statement *from the Taxicab Commission* regarding appellees' status before a Lanham Act claim can be entertained." *Id.* at 489.

If the Court, *arguendo*, concludes that *Dial A Car* is somehow applicable to this action, it should only apply as to Plaintiffs' claim related to Uber's misrepresentations regarding the legality of its services. Plaintiffs' allegations of Uber's misrepresentations, including being a "ridesharing" service, being partners with drivers, performing sufficient background checks of its drivers and its insurance, are separate and unaffected.[6]

### 2. Plaintiffs adequately allege Uber made misrepresentations.

Plaintiffs' allegations of Uber's numerous misrepresentations are assumed true and sufficient to defeat a motion to dismiss. Uber asserts that Plaintiffs failed to allege that Uber made any actual misrepresentations. Uber argues not only that Plaintiffs have failed to actually plead allegations of misrepresentation, but also that Plaintiffs will be unable to prove that such statements are either literally false or that consumers were deceived. *See* Motion at pp. 7-9.

An analysis of the substance of the claims (and reliance upon cases in which the parties argued the substance of such claims to judgment) is not the standard for a motion to dismiss. To establish false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the plaintiff must first demonstrate that the statement in the challenged advertisement is false. *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014). "In addition to proving falsity,

---

[6]     For the same reasons, Uber's reliance on decisions of other courts that have applied *Dial A Car* to dismiss claims asserted by taxicab companies is unfounded here. *See Manzo v. Uber Technologies, Inc.*, 13 C 2407, 2014 WL 3495401 (N.D. Ill. July 14, 2014); *Yellow Grp. LLC v. Uber Technologies, Inc.*, 12 C 7967, 2014 WL 3396055 (N.D. Ill. July 10, 2014) (unreported cases attached hereto as Appendix 2). The plaintiffs in those cases failed to make the distinctions between the misrepresentations. Additionally, although perhaps persuasive, neither of these cases are controlling authorities regarding the application of *Dial A Car* in this district court or the Second Circuit as they both come from the Northern District of the District Court of Illinois.

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

the plaintiff must also show that the defendants misrepresented an inherent quality or characteristic of the product"; that "the defendant placed the false or misleading statement in interstate commerce"; and that "the plaintiff has been ... injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Id.* (internal quotation marks omitted).

It is also noteworthy that there are instances in which certain of these elements need not be proved. For example, if the statements at issue are shown to be literally false, a court must assume that the statements actually misled consumers, without requiring any evidence of their impact on consumers. *PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.,* 818 F.2d 266, 273 (2d Cir. 1987), *abrogated on other grounds, as recognized in Hannex Corp. v. GMI, Inc.,* 140 F.3d 194, 206 n.9 (2d Cir. 1998). Additionally, false comparison advertising is especially damaging because a "misleading comparison to a specific competing product necessarily diminishes that product's value in the minds of the consumer." *McNeilab, Inc. v. American Home Products Corp.,* 848 F.2d 34, 38 (2d Cir. 1988). Where a party compares its product to a competitor's product, irreparable injury is presumed. *See McNeilab, Inc.,* 848 F.2d at 38. A false comparison to a specific competitor or competing product unavoidably diminishes its value with respect to consumers. *Id.*

For purposes of a motion to dismiss the following allegations are taken as true:

- *Driver Partners*: Plaintiffs assert numerous instances of Uber's representations to the public about their drivers being partners, and how they attempt to compare them to taxis. *See* Complaint at ¶¶ 32, 46, 60, 62, 68, 77. Uber clearly admits they are not partners, but rather "third-party transportation providers." Motion at pp. 1-3. That Uber disclaims its bold assertion in the fine print of its service contract only further goes to show its intent to mislead consumers about its drivers, i.e. that they are alleged contractors over which Uber attempts to disclaim all responsibility whatsoever. *See* Complaint at ¶ 49.

- *Operating Legally*: Plaintiffs assert that Uber falsely advertises to customers that it operates in compliance with regulations. *See id.* at ¶¶ 37-42, 46, 66-68, 74, 77. Plaintiffs specifically

plead that Uber markets itself by telling consumers this. *See id.* at ¶¶ 37,[7] 41[8], 42,[9] 46.[10] These statements are all false in that, even if not literally false, they are intended to actually deceive or have a tendency to deceive a substantial section of the market. As stated herein, this court does not face the same issues as present in the *Dial A Car* case. *See* § III.A.1.

- *Insurance Coverage*: Plaintiffs plead that Uber markets its insurance coverage to consumers and that its representations about its insurance are false. *Id.* at ¶¶ 42, 44-46, 59, 64-66. For example, Uber markets itself by stating that it provides corporate insurance; that it complies with all local regulations, including insurance coverage; and that it provides up to a $1 million per-incident insurance policy, and at the same time makes direct comparisons between itself and taxis. *Id.* at ¶ 44. Plaintiffs alleged that these false representations deceive and confuse consumers and sway consumers of vehicle for-hire services to use Uber's services, rather than Plaintiffs'. The representations are sufficiently specific and at least one example is provided to demonstrate the date, place, publisher of the false statements, and content. *Id.* Plaintiffs are not required at this stage to prove their claims, but in an effort to make its factual allegations rise above a speculative level, they allege examplarsof the falsity of such statements. For example, Plaintiffs allege any insurance would be moot due to lengthy disclaimers in their customer agreements, and further that Uber has no insurable interest in its drivers if indeed they are not partners. *Id.* Uber's assertions that Plaintiffs' allegations are wrong[11] simply does not matter at this stage of the litigation. Plaintiffs should be allowed the opportunity for a jury to determine the legitimacy of their claims, not Uber.

- *Safety*: Uber represents itself to the public as being safe when in reality there is nothing further from the truth. *See* Complaint at ¶ 49. Uber also represents to consumers that it conducts extensive criminal background checks, driving histories, and vehicle inspections (*see id.* at ¶ 42) when in reality its assurances of ongoing safety are based largely on quality assurance through a user-based "rating system," which itself is misleading for the reasons set forth in in the Complaint. *See id.* at ¶ 47. Not only have Plaintiffs alleged examples that such claims of safety are false, but Plaintiffs have also asserted that Uber deceptively requires consumers to waive Uber's legal responsibility for its violations of its own representations. *Id.* at ¶ 49. Uber urges the Court to examine the substance of Plaintiffs claims and whether Plaintiffs will be able to prove them. However, the Court is required to

---

[7]      "The Defendants' business strategies are aimed directly at undermining the existing legal protections consumers receive under Connecticut laws and regulations"
[8]      "The Defendants duck these requirements entirely (and illegally) even though they both make attempts to give off the appearance of fully meeting State compliance."
[9]      "Uber tells its customers it inspects these vehicles...."
[10]      "Uber previously attempted to reassure customers that, despite Uber's relaxed standards for selecting partners, it took steps to weed out unsuitable drivers."
[11]      At a minimum, this is subject to reasonable debate as at least one other court has analyzed the issue and indicated that Uber's insurance practices may not be iron-clad. *See Yellow Grp. LLC*, 2014 WL 3396055, at *4 (discussing plaintiffs' claim that Uber misrepresented its insurance coverage, but ultimately dismissing without prejudice on the grounds that the plaintiffs did not plead with adequate specificity).

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

accept the allegations as true for purposes of deciding a motion to dismiss, and when taken as true, these statements constitute misrepresentations sufficient to state a claim under the Lanham Act.

- *Pricing*: Plaintiffs assert that Uber represents to consumers that its pricing is as easy as choosing whatever vehicle the consumer wants based on which vehicles are nearby. Complaint at ¶ 30. But, as Plaintiffs allege in their Complaint, the process is not nearly that straight forward and fair to individuals seeking transportation. For example, Uber implements what has come to be known as "dynamic pricing," which is based on consumer demand and is unpredictable. *See id.* at ¶¶ 58, 59.iii.d., 60.i. Additionally, there are misrepresentations as to fees not readily ascertainable.[12] Further, when one of Plaintiffs' drivers picks up a passenger on behalf of Uber while driving one of Plaintiffs' leased vehicles, the consumer/passenger is given the false impression that Uber comports its pricing practices with that of Plaintiffs', which is simply not true. *Id.*

Other district courts that have been presented with similar claims have held that the plaintiffs sufficiently alleged misrepresentations. *See Yellow Grp. LLC v. Uber Technologies, Inc.*, 12 C 7967 (N.D. Ill. Sept. 30, 2013) (Doc. #66, court's order on Uber's first motion to dismiss, attached hereto as Appendix 3). Additionally, as stated above, with regard to safety and pricing misrepresentations, Lyft recently settled with respect to a complaint containing roughly identical allegations and agreed to pay up to $500,000 in civil fines. *See* § III, fn.4.

**3. Plaintiffs sufficiently plead proximate cause.**

The Lanham Act authorizes suit by "any person who believes that he or she is likely to be damaged" by a defendant's false advertising. *See* 15 U.S.C. § 1125(a)(1); *Lexmark Int'l*, 134 S.Ct. 1377, 1388, 188 L.Ed.2d 392 (2014). To state a claim under the Lanham Act, the plaintiff's interests must fall within the "zone of interests" protected by the law, and the injury must be proximately caused by violation of the statute. *See Lexmark Int'l*, 134 S. Ct. at 1389. The zone of

---

[12]     *See Ehret v. Uber Technologies, Inc.*, No. C-14-0113 EMC, 2014 WL 4640170 (N.D. Cal. Sept. 17, 2014) (Uber's motion to dismiss denied in part and granted in part where plaintiff alleged she was misled by misrepresentations into paying sums greater than the 'metered fare); *Manzo*, 2014 WL 3495401 (court denies motion to dismiss as to allegations that Uber misrepresents the cost of its taxi rates, the nature of the gratuity, and its status as a transportation provider, as well as allegations that Uber misrepresents the cost of its livery rates relative to competing services).

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

interests test is not "especially demanding." *Id.* ("the benefit of any doubt goes to the plaintiff"). Uber does not challenge that Plaintiffs fall within the zone of interest of the Lanham Act.

The question presented by the proximate cause inquiry is "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Id.* at 1390. In *Lexmark Int'l*, Lexmark sued Static Control for violation of various copyrights related to microchips associated with the remanufacture of printer toner cartridges. *Id.* at 1384. Static Control counterclaimed asserting violations of the Lanham Act alleging that Lexmark *misled end-users to believe* that they were legally bound to use Lexmark products and falsely misled end-users that Static Control products were illegal to use. *Id.* Static Control argued that Lexmark's misrepresentations proximately caused injury to Static Control by *diverting sales from Static Control to Lexmark* and substantially injured its business reputation. *Id.* . The trial court dismissed Static Control's Lanham Act claim, but was reversed by the court of appeals. *Id.* at 1385. The Supreme Court affirmed the court of appeals, reinstating Static Control's claims. *Id.* at 1395.

In addressing proximate cause, the United States Supreme Court held that since the Lanham Act authorizes suit only for commercial injuries, the "intervening step of consumer deception is not fatal to the showing of proximate causation required by the statute." *Id.* at 1391. A plaintiff suing under the Lanham Act must only show economic or reputational injury flowing directly from "the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.*

Such a claim is different than one in which the deception produces injury to a fellow commercial actor, which in turn affects the plaintiff. *Id.* Such was the case in *Anza v. Ideal Steel*

10

Rome McGuigan, P.C. • Attorneys at Law

One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

*Supply* Corp., 547 U.S. 451 (2006).[13] The Supreme Court in *Lexmark Int'l* likened such a remote link to a competitor who is forced out of business by a defendant's false advertising; that competitor *will* be able to sue for losses, but the competitor's landlord, utility company, or other commercial parties who suffer as a result of the harm to the competitor will not. *See Lexmark Int'l*, 134 S. Ct. at 1391 (emphasis added). Static Control alleged injuries that were "precisely the sorts of commercial interests the Act protects." *Id.* at 1393. The Supreme Court held that it therefore followed that "any false advertising that reduced the remanufacturers' business necessarily injured Static Control as well. Taking Static Control's assertions at face value, there is likely something close to a 1:1 relationship between the number of [refurbished cartridges] sold (or not sold) by the remanufacturers and the number of [Static Control] microchips sold (or not sold)." *Id.* Where such an injury is so integral an aspect of the violation alleged, there can be no question that proximate cause is satisfied. *Id.*

The same is true of Plaintiffs' claims. Plaintiffs have alleged that the Defendants, which includes Uber, are misleading consumers of vehicle-for-hire services in Connecticut to the detriment of competitors such as the Plaintiffs. *See* Complaint at ¶¶ 34, 61-68, 81.v. Plaintiffs further allege that the misrepresentations are used in comparisons between Uber's products and taxicabs. *Id.* Because of the closed market for vehicle-for-hire services in Connecticut, it necessarily follows that sales diverted to Uber and its drivers through misrepresentations about its services or the services of Plaintiffs are directly swaying consumers away from properly licensed taxicabs and livery vehicles.[14] Although the false representations themselves are

---

[13]   *Anza* is an opinion cited in *Lexmark* which Uber relies on in support of its claim that there is no 1 to 1 relationship presented here.

[14]   Uber references *Boston Cab Dispatch, Inc. v. Uber Technologies, Inc.*, CIV.A. 13-10769-NMG, 2014 WL 1338148 (D. Mass. Mar. 27, 2014), relying on that court's holding that although those plaintiffs pled harm to their business, "[t]here is no reference to any diversion of sales, any

<div style="text-align:right; font-weight:bold; writing-mode:vertical-rl;">
Rome McGuigan, P.C. • Attorneys at Law<br>
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726
</div>

targeted to consumers, that "is not fatal to the showing of proximate causation required by the [Lanham Act]." *See Lexmark Int'l*, 134 S. Ct. at 1391. Plaintiffs are similarly entitled to the chance to prove their case. *Id.* at 1395.

### B.  Plaintiffs' allegations properly state a Lanham Act Claim for False Association.

Other district courts have denied Uber's motions to dismiss Lanham Act claims for False Association. *See Yellow Grp. LLC,* 2014 WL 3396055; *Yellow Grp. LLC* (2013) (Appendix 3).[15] Plaintiffs' claims, although perhaps phrased differently, are in reality no different.

In pertinent part, the statute states that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
> (A) is likely to cause confusion, or to cause mistake . . . as to the affiliation, connection or association of such person with another person, or as to the origin,

---

lost customers or any lessening of goodwill or harm to plaintiffs' reputation as a result of this misrepresentation" regarding the amount of a gratuity. *Id.,* at \*15. Here, Uber has stopped short of analyzing the Complaint; if it had, it would have realized that Plaintiffs have met this pleading standard. *See* Complaint ¶ 103. It is a necessary implication that where demand for transportation remains consistent, and a plaintiff claims loss of business, such loss can reasonably be imparted on the defendant. The District Court of Massachusetts recently held

> [E]conomic realities can be used to analyze injury-in-fact allegations at the pleading stage. *See Adams v. Watson,* 10 F.3d 915, 923 (1st Cir. 1993) (noting that "basic economic theory ... transcends utter randomness by positing elemental laws of cause and effect predicated on actual market experience and *probable* market behavior."); *see also Am. Soc. of Travel Agents, Inc. v. Blumenthal,* 566 F.2d 145, 157 (D.C.Cir. 1977) (acknowledging that "all claims of competitive injury are to some extent speculative, since they are predicated on the independent decisions of third parties; i.e., customers. However, economics is the science of predicting these economic decisions ...").

*Boston Cab Dispatch, Inc. v. Uber Technologies, Inc.,* No. CIV.A. 13-10769-NMG, 2015 WL 314131, at \*4 (D. Mass. Jan. 26, 2015);

[15]  "In the court's view, this [the "fleet partners"] reference raises an inference that the taxi plaintiffs whose vehicles appear in response to passenger's use of defendant's application are partners in defendant's service. The Lanham Act protects a plaintiff's commercial identity from the false representation that it is endorsed or was associated with a defendant's product. *Waits v. Frito-Lay, Inc.,* 978 F.2d 1093, 1106-07 (9th Cir. 1992). The court finds that Count II of the complaint sufficiently alleges a likely loss of goodwill and a claim for relief for false association under the Lanham Act." Appendix 3, at \*6-7.

12

sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).

In setting out the claim, the Complaint alleges that:

By fabricating a nonexistent "partnership" with legally owned and operated taxicab and livery companies in Connecticut and by misrepresenting its legal authority to operate a dispatch service, as alleged above, the Defendants have used false descriptions and representations of fact to cause confusion and mistake in consumers, who are likely to believe that the Defendants are affiliated with, connected with, associated with, sponsored by and approved by legally owned and operated taxicab and livery companies including the Plaintiffs, in violation of 15 U.S.C. § 1125(a)(1)(A).

Complaint at ¶ 77. Count II is therefore based on Uber's false descriptions and representations of

its affiliation, sponsorship or association as a partner with Plaintiffs.[16,17]

By its terms, section 43(a)(1) refers not only to a "false designation of origin" but also to

a "false or misleading description of fact, or . . . representation of fact." 25 U.S.C.

§ 1125(a)(1). Likewise, section 43(a)(1)(A) refers not only to a likelihood of confusion "as to the

---

[16]   "[T]he District Court should consider not only the potential for consumer confusion as to the source of the marks in question, but should also consider the potential for confusion as to the "sponsorship, affiliation, connection, or identification" of those marks. The District Court should give particular attention to the Polaroid factors in light of the potential for types of confusion other than source confusion, focusing perhaps especially on (1) *the proximity of the products and their competitiveness with one another*, (2) evidence that the imitative mark was adopted in bad faith, and (3) sophistication of consumers." (Emphasis added; internal citations omitted.) *Malletier v. Burlington Coat Factory Warehouse, Corp.*, 217 F. App'x 1, 2 (2d Cir. 2007); *see also* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:8 (2013) (confusion is "not only as to source, but also as to affiliation, connection or sponsorship").
[17]   As stated elsewhere in this brief, the reasoning elucidated herein was adopted by other district courts (*see, e.g., Yellow Grp. LLC*, 2014 WL 3396055; *Yellow Grp. LLC* (2013) (Appendix 3). Additionally, this reasoning is consistent with the recommendation and report issued by the Magistrate Judge in *Boston Cab Dispatch, Inc. v. Uber Technologies, Inc.*, No. CIV.A. 13-10769-NMG, 2014 WL 1338144, at *16-23 (D. Mass. Feb. 28, 2014), whose report and recommendation as to the 43(a)(1)(A) claim was ultimately rejected on other grounds. *See id.*, 2014 WL 1338148 (D. Mass. Mar. 27, 2014). Specifically, it was rejected because the Court decided that Plaintiffs had failed to adequately plead damages. Here, in this litigation, Plaintiffs argue they have adequately pled such damages.

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

13

origin" of a plaintiff's "goods, services or commercial activities" but also to the "sponsorship, or approval" of such "goods, services or commercial activities" and "to the affiliation, connection, or association of such person with another person." 15 U.S.C. § 1125(a)(1)(A). Section 43(a)(1)(A), therefore, "prohibits a false representation which is likely to cause confusion . . . as to the affiliation, connection, or association of" the defendant with the plaintiff "or as to the sponsorship or approval of the defendant's goods, services, or commercial activities" by plaintiff. 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 28:15 (2013) (discussing false endorsement claims).

Plaintiffs here, who authorize and dispatch the taxicabs carrying their recognizable color schemes, designs, logos, authorities and license plates, are the exclusive licensees of the trademarks, trade names and trade dress associated with their taxicab and livery services. *See* Complaint ¶¶ 2-16. Count II, therefore, differs from the typical scenario of an infringer passing off another's mark as his own in a manner likely to cause confusion as to the source of the goods or services. *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1042-1047 (2d Cir. 1992); *Swarovski Aktiengesellschaft v. Building No. 19, Inc.*, 704 F.3d 44, 48-49 (1st Cir. 2013); *Century 21 Real Estate Corp. v. LendingTree, Inc.*, 425 F.3d 211, 217 (3d Cir. 2005). Rather, Uber is using Plaintiffs' marks to refer to Uber's own taxi services. *See Century 21 Real Estate Corp. v. LendingTree, Inc.*, 425 F.3d at 217.

Uber initially argues that Plaintiffs do not identify "a valid mark that is entitled to protection under the Lanham Act." Motion at p. 13. (*quoting The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996)). Uber further submits that Plaintiffs fail to identify that Uber uses the designation. *Id.* Assuming, *arguendo*, that Plaintiffs must show designation and use to avoid dismissal of a false affiliation or sponsorship claim, the Complaint

14

adequately sets out both elements. As reasonably inferred from facts in the Complaint, Plaintiffs are exclusive licensees of recognizable marks. Their recognizable logos, designs and color schemes appear on each of the vehicles driven by the authorized lessee drivers who are either employed by or acting as independent contractors for Plaintiffs. Uber signs up or partners with drivers who are operating taxicab and livery vehicles bearing Plaintiffs' DOT issued operating authorities and DMV issued plates and, thereby, are using taxicabs and livery vehicles with Plaintiffs' color schemes, designs, labels and legal authorities as Uber vehicles. Dismissal on the basis of a failure to specify designation and use is not appropriate.

By its terms, section 43(a)(1) applies to "uses in commerce . . . in connection with any goods or services." 15 U.S.C. § 1125(a)(1); *see Island Insteel Systems, Inc. v. Waters*, 296 F.3d 200, 213 (3d Cir. 2002) (quoting 15 U.S.C. § 1125(a)). As alleged in the Complaint, Uber's use of Plaintiffs' drivers who use Plaintiffs' unique authorities, license plates, colors, designs and logos on their vehicles, creates a false affiliation, sponsorship, partnership or connection between Uber and Plaintiffs. Uber "partners" with Plaintiffs' taxicab drivers. Uber's attempt to distance itself from its use of these services by noting that it does not use Plaintiffs' logos when it connects an Uber client to an Uber vehicle that is one of Plaintiffs' taxis is misguided for purposes of a motion to dismiss. When an Uber client opens the Uber app and chooses an Uber vehicle, Uber's computer system connects that customer to an Uber vehicle, including, at times, Plaintiffs' vehicles bearing Plaintiffs' marks, legal authorities and license plates. Section 43(a)(1) addresses use "in connection with any goods and services" as opposed to ownership or title.

Uber also maintains that the Complaint fails to evidence or support the use of any designation in commerce. The relevant statutory language proscribes the conduct of any person who, "in connection with any goods or services . . . uses in commerce any word, term, name

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

15

symbol, or device, or any combination thereof," i.e., a mark,[18] "or any false designation of origin" or "false or misleading representation of fact." 15 U.S.C. § 1125(a)(1) (emphasis added); *see Rescuecom Corp. v. Google Inc.,* 562 F.3d 123, 127-131 (2d Cir. 2009) (citing 15 U.S.C. §§ 1125 and 1127). The term "commerce" refers to "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. The statute defines "in commerce" as the "use of a mark in the ordinary course of trade." 15 U.S.C. § 1127. A mark on services is used "in commerce," *inter alia,* when it is "used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127; *see also Patsy's Italian Restaurant, Inc. v. Banas,* 658 F.3d 254, 268 (2d Cir. 2011) (noting that "'use in commerce' is defined differently for trademarks and service marks" under 15 U.S.C. § 1127).

The language of section 43(a)(1), as amended in 1989, "requires that the defendant's accused use be 'in commerce,' it does not require that the plaintiff's mark have been used in commerce." 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:47 (2013); *see generally Merck Eprova* AG, 760 F.3d at 255 (2d Cir. 2014) (false advertising claim requires proof that "the defendant placed the false or misleading statement in interstate commerce").[19]

Focusing on the conduct of Uber and its use of the mark in commerce, as indicated by the

---

[18]   *See* 15 U.S.C. § 1127 (defining "mark" as including any trademark, service mark, collective mark, or certification mark).

[19]   Case law nevertheless deems the "in commerce" requirement satisfied when "the plaintiff used its mark in interstate commerce and the defendant's infringement damages plaintiff's interstate reputation." 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:47 (2013) (emphasis in original) (*citing Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998), in footnote). Thus, as stated in a 2003 First Circuit case in finding that the plaintiff made only "meager showings of commerce and harm," there was "no evidence in the record that Danielson even operated outside Massachusetts at this time, in order to establish the necessary interstate commerce nexus for the market in which business was allegedly lost." *John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 322 F.3d 26, 46 (1st Cir. 2003) (*citing Johnson v. Jones*, 149 F.3d at 502).

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

Rome McGuigan, P.C.   •   Attorneys at Law
One State Street   •   Hartford, Connecticut 06103-3101   •   (860) 549-1000   •   Fax (860) 724-3921   •   Juris No. 27726

statutory language, the Complaint states that Uber used "the internet to transmit fraudulent misrepresentations to Connecticut consumers about fares in the Defendants' vehicles and false claims of an association between the Defendants and the Plaintiffs." Complaint at ¶ 88. Moreover, Uber transmitted the false representations to Connecticut users of Uber's services "hundreds, if not thousands of times." *Id.* The complaint also describes the "thousands of violations" as being "with Connecticut customers." *Id.* at ¶ 89.

Drawing reasonable inferences in Plaintiffs' favor, Uber uses false statements of fact regarding its association with Plaintiffs over the internet and, therefore, outside of Connecticut.[20] The false affiliation or sponsorship arises when a customer chooses an Uber vehicle that is a taxicab or livery vehicle driven by a Plaintiffs' driver with its identifiable authority, plate, color scheme, design and logo and the driver arrives at the pick up location to accept the assignment from the Uber computer system. The transmissions by Uber of such false statements of association thousands of times over the internet outside Connecticut satisfies the "in commerce" requirement under the relatively forgiving Rule 12(b)(6) standard of review. *See NTP Marble, Inc. v. AAA Hellenic Marble, Inc.*, 799 F.Supp.2d 446, 451 (E.D.Pa. 2011) ("press release was accessible through the Internet" thus causing "it to appear outside of Pennsylvania, where it might also have an impact on parties outside the state" deemed sufficient to satisfy "Lanham Act's interstate commerce requirement"); *Futuristic Fences, Inc. v. Illusion Fence Corp.*, 558 F.Supp.2d 1270, 1277 (S.D.Fla. 2008) ("[a]dvertising that affects interstate commerce and solicitation of sales across state lines is commerce within the meaning of Lanham Act") (internal ellipses omitted); *Nike, Inc. v. Rubber Mfrs. Ass'n, Inc.*, 509 F.Supp. 919, 924 (D.C.N.Y. 1981) ("mere solicitation of sales is 'commerce' within the meaning of Section 43(a)"); *see also*

---

[20] Although the Complaint does not expressly state that Uber's internet transmissions include those made outside Connecticut, a reasonable inference of such use arises by use of the internet.

17

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

*Purolator, Inc. v. EFRA Distributors, Inc.*, 687 F.2d at 559 ("jurisdiction exists to grant relief under the Lanham Act if a defendant's activities although wholly intrastate tend to have a damaging effect on plaintiff's federally protected interstate business").

As previously noted, at least one court in another jurisdiction has denied Uber's motions to dismiss claims of false association based, at least in part, on arguments similar to the ones made by Plaintiffs above. *See Yellow Grp. LLC,* 2014 WL 3396055; *Yellow Grp. LLC* (2013) (Appendix 3). The elements of Plaintiffs' Lanham Act claims have been met as required, and in many instances, the elements of consumer deception and injury to Plaintiffs need not be proven because of the literal falsity of the misrepresentations, as well as direct comparisons of the Defendants' products to taxicabs and taxicab services. This level of pleading complies with the particularity requirements of Rule 9(b) and, when taken as true, these statements constitute misrepresentations sufficient to state a claim under the Lanham Act. *See* Fed. R. Civ. P. 9(b).

### C. <u>Plaintiffs state a legally sufficient claim for Intentional Interference with Contractual Relationships.</u>

The essential elements of a claim for intentional interference with contract rights include

the existence of a contractual or beneficial relationship and that the defendant(s), knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss.... [F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation ... or that the defendant acted maliciously.

*Rossman v. Morasco*, 115 Conn. App. 234, 244, 974 A.2d 1 (2009). In Count IV of the Complaint, Plaintiffs allege that Uber intentionally and tortiously interfered with the contractual relationships between Plaintiffs and their independent-contractor taxicab and livery drivers, as well as between Plaintiffs and their credit card processing companies.

18

**1.   Plaintiffs have sufficiently alleged the existence of contractual relationships which were known to Uber.**[21]

Uber contends that Plaintiffs have not alleged any specific contracts between themselves and their drivers, which have been interfered with by Defendants, and that Plaintiffs have failed to allege Uber's knowledge of any such contracts. *See* Motion pp. 25-26. This argument ignores the express allegations set forth in the Complaint. Plaintiffs allege, *inter alia*, that Defendants "induce their drivers ('partners') to illegally substitute Defendants' computerized dispatching and credit card billing system for the lawfully operated dispatching systems and legal billing systems, *knowing full well that in so doing the taxicab and livery drivers who sign up with the Defendants are violating state laws and regulations, as well as their contracts with taxicab and livery vehicle owners – the Plaintiffs*." Complaint at ¶ 32. Accordingly, Plaintiffs have alleged the existence of specific contracts (contracts between the Plaintiffs and their independently contracted taxicab/livery drivers) and Uber's knowledge of such contracts. *See id.*

To the extent that Uber suggests that Plaintiffs must specifically identify particular contracts with individual drivers, or particular terms within such contracts, Uber provides no authority suggesting that such allegations are necessary at the pleading stage, and Connecticut law, in fact, holds otherwise. There is no requirement under Connecticut law that the Plaintiffs must disclose the specific, personal identity of the third parties with whom they had/have existing contractual or business relationships to state a claim for tortious interference. To the contrary, a contractual relationship between a plaintiff and third parties is sufficiently identified where the third parties are collectively described as a group or class. *See Raymond Road Associates, LLC. V. Taubman Centers, Inc.*, Nos. X02UWYCV075007877S,

---

[21] Plaintiffs address the elements of intentional interference with contractual relationships in a different order than addressed by Uber, for the sake of logical consistency.

19

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

X02UWYCV075007876S, 2009 WL 939848 (Conn. Super. Ct. Mar. 5, 2009) (allegation that "the defendants interfered with plaintiffs' business relationships with intended tenants of Blue Back Square" sufficient to plead existence of contractual or beneficial relationships); *Deutsch v. Backus Corp.*, No. X07CV106022074S, 2012 WL 1871398, 54 Conn. L. Rptr. 30 (Conn. Super. Ct. May 2, 2012) (claim for tortious interference with contractual relationships sufficiently stated where plaintiff doctor alleged that defendants interfered with plaintiff's contracts with his patients). Just as there was no requirement that the plaintiffs in *Raymond* or *Deutsch* specifically identify individual tenants or patients with whom they shared a contractual relationship, the Plaintiffs in the instant case are not required to name individual drivers with whom they contracted to state a claim for tortious interference with contractual relationships.[22]

Furthermore, said cases also demonstrate that it is not necessary for Plaintiffs to identify particular terms of the contracts with which the Defendants, Uber included, allegedly interfered. *See Raymond*, 2009 WL 939848 (Conn. Super. Ct. Mar. 5, 2009) (allegations sufficient where plaintiffs alleged interference with contractual or business relationships with intended tenants, without identifying particular contractual terms interfered with). All that is required is allegations of the existence of a contractual relationship and knowledge thereof – not the existence and identification of a particular contractual term.

---

[22] "The tort of interference with contractual relations is merely a species of the broader tort of interference with prospective business advantage and the tort of interference with business advantage is merely interference with ongoing and existing rather than prospective business advantage." *Deutsch*, 2012 WL 1871398, at *6. While *Raymond* and *Deutsch* involved claims of tortious interference with business relationships/expectancies, as well as claims of tortious interference with contractual relations, both cases demonstrate that the level of specificity required for identifying the relationships with which the defendants interfered is the same for all such tortious interference claims. *See id.,* at *6-7 (holding that legally sufficient claim stated of tortious interference with contractual relationships for same reasons as claim of tortious interference with business expectancies legally sufficient).

20

Thus, unlike the cases cited by Uber, Plaintiffs have identified existing contracts between the Plaintiffs and their independently-contracted drivers, and have alleged Uber's knowledge of such contracts. *See* Complaint at ¶ 32; *Bulldog New York LLC v. Pepsico, Inc.*, No. 3:08CV1110 AWT, 2014 WL 1284903, at *7 (D. Conn. Mar. 31, 2014) (plaintiff had only "identifie[d] several business opportunities and relationships with third parties[,]" which defendant had allegedly interfered with, but did not identify any actual existing contracts"); *Dworkin Construction Corp. v. Shremshock-Yoder Architects, Inc.*, No. 380352, 1996 WL 469742 (Conn. Super. Ct. Aug. 2, 1996) (plaintiff failed to allege defendant knew of its contract with third party). Particularly at the pleading stage, where Plaintiffs are merely required to provide "a short and plain statement of the claim showing that [they are] entitled to relief," Plaintiffs have provided sufficient allegations. *See* Fed. R. Civ. P. 8.

Similarly, and contrary to Uber's contentions, Plaintiffs have sufficiently alleged that Uber knew of Plaintiffs' contractual relationships with the credit card processing companies. Plaintiffs allege that they, like all taxicab Certificate holders, enter agreements with Connecticut-approved credit card processing companies, which pay for and install legally required credit card payment equipment in exchange for the right to collect credit card processing fees. Complaint at ¶¶ 69-70. Plaintiffs further allege that Defendants induce otherwise lawfully operating taxicab drivers

> to illegally substitute the Defendants' computerized dispatching and credit card billing system for the lawfully operating dispatching systems and legal billing systems, knowing full well that in so doing the taxicab and livery drivers who sign up with the Defendants are violating state laws and regulations, *as well as their contracts with taxicab and livery vehicle owners- the Plaintiffs.*

Complaint at ¶ 32 (emphasis added).

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

21

Accordingly, Plaintiffs have alleged that Uber knew that the existing taxicab and livery drivers with whom it "partnered" already had dispatching and billing systems that were legally approved as required by Connecticut law, and knew that Uber's requirement that these drivers substitute Uber's dispatching and credit card billing systems was illegal.

### 2. Plaintiffs have sufficiently alleged that Uber intentionally interfered with Plaintiffs' contracts.

Uber contends that Plaintiffs cannot allege that Uber interferes with their contracts with credit card companies because "taxicabs cannot be requested" through Uber's available request services in Connecticut, and "thus Plaintiff[s] could not plausibly claim that the credit card companies with whom it does business are contractually entitled to the fees paid through these services." Motion at p. 24. This contention ignores the express allegations of the Complaint, which alleges numerous times that all Uber vehicles, in substance, operate as taxicabs, and are, therefore, subject to taxicab laws and regulations. While Uber does not label these vehicles as taxicabs or livery vehicles, preferring instead to call them "uberX, UberBlack, and UberSUV," the fact remains that these vehicles are operating as taxicabs and/or livery vehicles as, *inter alia*, they are providing transportation services for hire on demand. While Uber hopes its customers will use its uberX, UberBlack, and UberSUV as alternatives to what Uber would call "taxicabs or livery vehicles,"

> in the ways that matter for public safety, all of [Uber's Connecticut offered] options, whether fancy or affordable, are in fact dangerous taxicabs or livery vehicles. They are taxicabs and livery vehicles because the affiliated cars are hailed by smart phone app on an "on demand" (taxicab) or "prescheduled" (livery) basis, assigned to customers through the same Uber or Lyft computer systems, and have fares determined by their respective fare charging systems. Defendant-affiliated vehicles now function as roving conveyances for hire in Connecticut, and are assigned in response to an "electronic hail" just as quickly as a taxicab or prescheduled livery assignment. Uber itself agrees that its black cars, SUVs and UberX vehicles function as taxicabs, claiming to New York taxicab regulators that the Uber system is a "virtual hail" equivalent to standing on a street corner and flagging a taxicab.

22

Complaint at ¶ 38. *See also, e.g.,* ¶¶ 39, 61, 63. These allegations include facts, which must be taken as true for purposes of this Motion, demonstrating why Uber's vehicles are taxicabs, including the fact that they are vehicles-for-hire which can be summoned using a "virtual hail."

Furthermore, it is clear that where the operative Complaint describes Uber's vehicles as "unidentified vehicles" or "every day vehicle[s]," rather than calling them taxicabs, it is merely recognizing that they are styled by Uber as different from traditional taxicabs. The fact that "uberTaxi," a system that uses what Uber considers "taxicabs," is not available in Connecticut does not change the fact that the vehicles offered in Connecticut, regardless of what Uber calls them, operate as rogue taxicabs. Accordingly, Uber's argument that there can be no interference with Plaintiffs' contracts because Uber's vehicles are not taxicabs is meritless.

Uber further argues that even if Plaintiffs allege that payments occurring through Uber are for rides taken in what it considers "actual taxicabs," Plaintiffs fail to allege that Uber acted intentionally. Motion at pp. 24-25. Uber's sole contention in this regard is that because Uber "urges its customers to use Uber-affiliated UberX vehicles, black cars and SUVs, rather than its taxicabs," Uber could not have intended to interfere with Plaintiffs' contracts. Once again, this argument ignores the fact that Plaintiffs have expressly alleged that such Uber-affiliated vehicles are in fact taxicabs and that some of said Uber vehicles are taxicabs operating under Plaintiffs' taxicab certificates. What Plaintiff is alleging is that Uber encourages its customers to use vehicles which Uber labels as non-taxicabs, so that Uber can try to avoid compliance with Connecticut regulations. *See* Complaint at ¶ 61. Because Uber's arguments ignore the factual allegations of the Complaint, which must be considered true for purposes of this Motion, such arguments must fail.

### 3. Plaintiffs have adequately pled that Uber's interference was tortious.

23

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

Whether conduct is "tortious" for purposes of a cause of action sounding in intentional interference is necessarily fact-intensive. The tortious nature of a defendant's conduct may be demonstrated by "fraud, misrepresentation, intimidation or molestation," but it may also be demonstrated by "malicious" behavior. In other words, "defendant may have been free of guilt of fraud, misrepresentation, intimidation or molestation, and still have acted maliciously." *Kopperl v. Bain*, 23 F.Supp.3d 97, 110 (D. Conn. June 2, 2014). "The plaintiff in a tortious interference claim must demonstrate malice on the part of the defendant, not in the sense of ill will, but intentional interference without justification." *Id.* The plaintiff must "plead and prove at least some improper motive or improper means." *Id.* In the instant case, Plaintiffs have alleged sufficient facts demonstrating that Uber's interference was malicious and improper. *Bhatia v. Debek*, 287 Conn. 397, 420, 948 A.2d 1009 (2008)( acting with "a reckless indifference to the rights of others or an intentional and wanton violation of those rights"). *See* Complaint

Plaintiffs allege that Uber intentionally interfered with Plaintiff's contracts with its taxicab drivers by, *inter alia*, inducing those drivers to operate illegally and in breach of their contracts. As alleged in the Complaint, Uber induces otherwise legally operating Connecticut taxicab and livery drivers to make unauthorized side deals with Uber to take Uber customers while simultaneously working a normal shift with his or her authorized company. *See* Complaint at ¶ 60. A taxicab or livery operator who accepts work from one of Plaintiffs' radio dispatch systems, including whether by radio, global positioning system, cellphone or their smartphone applications, or through a customer hail or flag-down or a starter assignment at airports or railway stations, while at the same time accepting work from Uber is violating Connecticut taxicab and livery laws and regulations, including laws regulating fares, cell phone use, anti-discrimination, and rate setting/payment options. *See id.* at ¶ 60.i.-iv.

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

Thus, when Uber induces a driver who are already under contract with one of the Plaintiffs to accept hails through Uber's system, Uber is intentionally interfering with Plaintiffs' contract with such driver through improper means. Uber is inducing drivers to accept hails through Uber's system with the promise of earning fees, but knowingly requiring such drivers to charge unlawful fees and otherwise operate illegally. Moreover, Uber's interference constitutes an attempt to gain profits by illegally preying on existing taxicab infrastructures. By enticing existing taxicab drivers to accept hails through Uber, Uber is taking parasitic advantage of established taxicab infrastructures consisting of legally operating taxicab and livery authorities, the owners of which have made significant investments into complying with state and federal laws. Such improper conduct by Uber, which takes advantage of the investments of legally operating taxicab and livery operators, constitutes improper and malicious conduct.

Uber's interference is also driven by improper motives. Uber operates its taxicab and livery vehicles without having first demonstrated, as required under Connecticut law, that there is a public convenience and necessity that is not being serviced by the existing operators in the market. Uber also induces drivers having contracts with Plaintiffs to sign up with Uber with the intention that such drivers operate the Plaintiffs' taxicabs and livery vehicles for Uber using Plaintiffs' DOT issued authorities, DMV issued plates and insurance coverage without Plaintiffs' consent and in breach of those contracts for purposes of taking business that would otherwise go to the Plaintiffs and gaining an economic advantage to the Plaintiffs' financial detriment. Moreover, Plaintiffs have alleged that Uber's motive for its interference is more than simply taking profits from the Plaintiffs by using their drivers. "The Defendants do not simply want to take control of revenue generated by licensed taxicabs and livery vehicles. The Defendants also want to undermine the existing Connecticut taxicab and livery market by having unregulated

UberX vehicles, black cars, SUVs, and soon other "luxury" vehicles, function as taxicabs and livery vehicles." Complaint at ¶ 34. Uber intends to insert itself into the taxicab/livery industry illegally, at the expense of Plaintiffs, who invest substantial money into complying with State regulations. *Id.* at ¶ 35.

Plaintiffs also allege that Uber intentionally interfered with Plaintiff's contracts with credit card processing companies by requiring legally operating Connecticut taxicab and livery drivers, including those using vehicles leased or owned by Plaintiffs, to receive payment through Uber's own personal credit card processing systems rather than the credit card companies with whom Plaintiffs have contracted. *Id.* at ¶¶ 69-72. Uber uses improper means to interfere with Plaintiffs' contracts by illegally bypassing the credit card systems installed in Plaintiffs' authorized taxicabs and livery vehicles. Uber also acts with improper motive, as it interferes with such contracts with the intent of inserting itself illegally into the Connecticut taxicab/livery market, while simultaneously undermining, and taking advantage of it. *Id.* at ¶ 35. In this way, Uber intentionally interferes with Plaintiff's contracts through its illegal and malicious conduct.

While Uber attempts to characterize its behavior as mere competitive conduct intended to improve its business, the above allegations make clear that Uber's actions independently constitute improper conduct and malicious motive. Thus, the cases Uber relies upon are distinguishable. In said cases, the plaintiffs could not allege that the interference was tortious or perpetrated by improper means and improper motive – they could only allege conduct that interfered with the plaintiffs' contractual rights, but were otherwise lawful and merely competitive behavior. *See, e.g., Downes-Patterson Corp. v. First Nat'l Supermarkets, Inc.*, 64 Conn. App. 417, 780 A.2d 967 (2001) (plaintiffs only showed that defendant declined to release property right it was under no obligation to release); *Corra v. Sunwood Condo. Ass'n, Inc.*, No.

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

CV126009466S, 2012 WL 6583030, at *1 (Conn. Super. Ct. Nov. 26, 2012) (plaintiff failed to allege tortious conduct beyond interference itself); *Robert S. Weiss & Associates, Inc. v. Wiederlight*, 208 Conn. 525, 536-37, 546 A.2d 216, 223 (1988) (plaintiff merely alleged that defendant encouraged its employee in violation of contractual restrictive covenant); *Sanford Hall Agency, Inc. v. Dezanni*, No. CV044000576, 2004 WL 3090673, at *7 (Conn. Super. Ct. Dec. 2, 2004) (plaintiff merely alleged defendant hired its employee).

### 4. Plaintiffs have sufficiently alleged that they have suffered actual loss as result of Uber's intentional and tortious interference.

Plaintiffs have alleged that Uber's tortious interference caused them to suffer damages. Allegations that Plaintiffs' damages flow from the lost lease revenues directly caused by the significant diminution of consumer taxi and livery trip activity experienced by the Plaintiffs' drivers because of the "hails" or service requests being diverted to the rouge taxicabs and livery vehicles operated by Uber drivers are sufficient. Complaint at ¶¶ 32-36, 61-63, 86, 108. As to Uber's interference with the credit card processing contracts, Plaintiffs have expressly alleged such interference has caused them substantial harm. Complaint at ¶ 86. Furthermore, Uber's misappropriation of fees that Plaintiffs' contractually owe to credit card processing companies threatens Plaintiffs' financial ability to operate its taxicabs. Plaintiffs enter such contracts with credit card processing companies to offset the costs of compliance with Connecticut requirements regarding fee processing. Since only state-approved credit-card processing companies can install legally-required dispatching and fee-processing equipment in Connecticut taxicabs, Plaintiffs have limited options and, therefore, place substantial value in maintaining their present contractual relationships. *See id.* at ¶ 70. Members of the limited pool of credit card processing companies will likely not contract with the Plaintiffs if they know that their contractually-owed fees are regularly being diverted. *See id.* at ¶ 69-72.

27

Rome McGuigan, P.C. • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

Plaintiffs have also sufficiently alleged actual loss resulting from Uber's interference with their driver contracts. Complaint at ¶¶ 67-68, 85-86. Contrary to Uber's contentions, there is no ironclad rule that a plaintiff must prove termination of a contractual relationship to prove actual damages. If that were true, the elements of tortious interference would require "termination of the contractual relationship," rather than "a loss suffered by the plaintiff that was caused by the defendant's tortious conduct." The cases relied upon by Defendant simply involved factual scenarios where the plaintiffs could not have suffered actual harm unless the defendant had caused the third parties to terminate their agreements with the plaintiffs. For instance, in *Webster Financial Corp. v. McDonald*, No. CV084016026S, 2009 WL 416059 (Ct. Super. Ct. Jan. 28, 2009), it was alleged that defendant tortiously interfered with plaintiff's employment relationship with its employees by trying to persuade such employees to terminate their employment with plaintiffs, and join defendant. Based on these allegations, the only way to prove actual loss would be to prove termination of employment. The instant matter presents a different factual scenario, as Uber's interference consists of both entering into agreements with drivers who are already under legal contracts with Plaintiffs, thereby inducing such drivers to accept hails through Uber while simultaneously working with Plaintiffs, as well as using, without authorization, Plaintiffs' authorities, plates, insurance coverage and marks. In a very real sense, the fact that the drivers are able to covertly work with Uber while simultaneously under contract with Plaintiffs is a significant reason why Plaintiffs are suffering business losses. Drivers' use of vehicles leased from and identified with Plaintiffs, when accepting hails through Uber, attract increased business for Uber because riders are deceived into believing they are hailing and receiving services from legally-authorized and insured taxicabs and livery vehicles. Additionally, a driver cannot pick up and transport a non-Uber customer/passenger while

28

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

transporting an Uber customer and the fare from the Uber customer, which is processed through Uber's credit card system, goes to Uber and its driver.

### D. Plaintiffs' allegations properly state a claim for violation of the CUTPA.

#### 1. Uber's violation of the Lanham Act establishes liability under CUTPA.

It is not necessary to perform a full CUTPA analysis, as Uber's violation of the Lanham Act alone establishes liability under CUTPA.[23] Moreover, other district courts in this country have ruled that when a plaintiff taxi and livery companies' Lanham Act claims survive motions to dismiss by Uber, so too should their common law and state statutory claims of unfair business practices. *See Yellow Grp. LLC,* 2014 WL 3396055; *Yellow Grp. LLC* (2013) (Appendix 3).

As demonstrated above, Plaintiffs properly alleged causes of action against Uber for violations of the Lanham Act, as well as a claim for tortious interference, which constitute independent torts sufficient to constitute unfair business practices under Connecticut law. *See Par Painting, Inc. v. Greenhorne & O'Mara, Inc.,* 61 Conn. App. 317, 328, 763 A.2d 1078, 1085 (2001) (*citing Sportsmen's Boating Corp. v. Hensley*, 192 Conn. 747, 474 A.2d 780 (1984) [even "improper conduct that does not rise to the level of tortious interference may, nonetheless, constitute a CUTPA violation."]); *see Sportsmen*, 192 Conn. at 756 ("Because CUTPA is a self-avowed 'remedial' measure, … it is construed liberally in an effort to effectuate its public policy goals … [I]t is difficult to conceive of a situation where tortious interference would be found but a CUTPA violation would not.").

The Complaint alleges numerous instances of business conduct which is contrary to

---

[23]     *See Timex Corp. v. Stoller,* 961 F. Supp. 374, 381 (D. Conn. 1997); *Nabisco Brands v. Kaye,* 760 F.Supp. 25, 29 (D. Conn.1991); *Manufacturers Technologies, Inc. v. Cams, Inc.,* 706 F.Supp. 984, 1004-05 (D. Conn. 1989); *Dial Corp. v. Manghnani Investment Corp.,* 659 F.Supp. 1230, 1239 (D. Conn. 1987) ("To the extent defendants' actions violated the Lanham Act, … they should be held automatically to violate CUTPA.").

29

honest practice in industrial or commercial matters, including making false advertising claims,

pursuing discriminatory business practices, and tortiously interfering with actual and prospective

business relations, which have interfered with the Plaintiffs' abilities to conduct their businesses.

*See* § III.A.2, *supra.*

### 2. Plaintiffs' satisfy Rule 9(b)'s heightened pleading standard.

Plaintiffs have pled adequate facts and information to satisfy Rule 9(b)'s heightened

pleading standard. *See* § III.A.2, *supra.* However, as discussed above in§ II, even if this Court

determines that Plaintiffs have not satisfied their burden of pleading with sufficient particularity,

rather than dismiss Plaintiffs' complaint either in whole or in part, with prejudice, the Court

should lean heavily towards granting Plaintiffs leave to amend their Complaint in its entirety.

### 3. The "substantial injury test" is not operative in Connecticut, and even if it was, Plaintiffs satisfy this test.

Although the Supreme Court of Connecticut heard oral argument last month which

concerns itself with whether the "cigarette rule" will continue as the standard for evaluating a

CUTPA claim, the "substantial injury test" is not currently the one applied by this Court. There

is no requirement that this Court stay proceedings as to Plaintiffs' CUTPA claim and reserve

ruling thereon until after the Supreme Court has issued its decision.[24] Moreover, Uber vastly

overstates the degree to which the cigarette rule is being challenged in stating that the "Supreme

Court repeatedly has questioned the continued viability" of it; Plaintiffs' counsel to date has

---

[24]     There is a legitimate question as to whether there even exists a vehicle available to Uber for staying proceedings, and an even greater question as to whether adequate grounds exist therefor. *See, e.g., In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (where there is an interlocutory appeal, the factors considered are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.").

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

located only three cases where the existence of any such uncertainty is brought to light, but there is no indication that the Supreme Court is leaning in favor of changing the standard, as Uber seems to imply. *See State v. Acordia*, Inc., 310 Conn. 1, 29, n.8, 73 A.3d 711 (2013); *Ulbrich v. Groth*, 310 Conn. 375, 426-29, 78 A.3d 76 (2013); *Votto v. American Car Rental, Inc.*, 273 Conn. 478, 484 n. 3, 871 A.2d 981 (2005).

Even if, *arguendo*, the substantial injury test is held to govern Plaintiffs' CUTPA claim – which it should not – Plaintiffs' allegations are sufficient to adequately meet this test. An act or practice may cause substantial injury either by doing "small harm to a large number of people, or if it raises a significant risk of concrete harm." *F.T.C. v. Neovi, Inc.*, 604 F.3d 1150, 1157 (9th Cir. 2010). Injury can occur in "a variety of ways." *Id.* at 1156. While courts should look to any deception on the part of businesses, "the absence of deceit is not dispositive." *Id.* Viewing the Complaint as a cohesive document, and reading it as a whole rather than line by line, demonstrates that substantial injury is implied from Uber's countless misrepresentations and unfair practices that necessarily steer business away from Plaintiffs and into its own grasp. *Also see* Complaint at ¶ 103.

For the same reasons, Plaintiffs have plead facts that plausibly establish that their injuries were "not reasonably avoidable," as Plaintiffs are held to certain statutory and regulatory standards with which Uber contends it is not obligated to comply.[25] Additionally, Plaintiffs have pled facts that plausibly establish that their injuries were "outweighed by countervailing benefits to consumers or competition." Motion at 18; *see* 15 U.S.C. § 45(n). More specifically, Plaintiffs request that the Court reject Uber's argument that it asks the Court to automatically accept as

---

[25]    An injury is reasonably avoidable if the consumer could have made a "free and informed choice" to avoid it. *Neovi*, 604 F.3d at 1158. Although perhaps freely made, consumers' choice is nonetheless tainted by the misrepresentations of Uber and, therefore, not informed.

31

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

true, but which Plaintiffs respectfully argue is fallacious. Uber baldly asserts as true that "there can be no serious dispute that the many benefits to consumers and competition created by the use of Uber's software outweighs whatever loss of sales Plaintiffs' are attempting to claim."

As Plaintiffs have argued herein and have alleged in the Complaint at length, there are many potential problems for consumers associated with their utilization of Uber's transporation services, including, *inter alia*, Uber's conduct in general, the safety and qualifications of Uber's drivers, inadequate insurance coverage, waivers of liability and Uber's hailing, fare calculation and billing software, which problems Plaintiffs contend heavily outweigh the potential benefits. Also, while appropriate, lawful competition is generally desired, where the increase in competition is premised on, *inter alia*, misrepresentations and unfair trade practices to the detriment of Plaintiffs and others in the industry, places the public at risk and parties who provide identical services not participating on a level playing field and/or bring subject to the same rules, the benefits of such competition are clearly outweighed by the problems inextricably intertwined with it. It is well established in Connecticut that the Plaintiffs are entitled, by virtue of their lawfully issued taxicab and livery authorities, to be free from competition by the Uber directed rogue taxicabs and livery vehicles for which there is no need. *Light Rigging Co. v. Dept. of Public Utility Control*, 219 Conn. 168, 172, 592 A.2d 386 (1991).

### 4. Plaintiffs' allegations allege conduct which rises to the level of a CUTPA violation under the Cigarette Rule.

Uber's superficial challenge to the Plaintiffs' CUTPA claim is facially deficient for failing to address the standard for review of a CUTPA claim and also flies in the face of the prevailing weight of authority holding that a CUTPA plaintiff need not establish all three prongs of the Cigarette Rule to demonstrate unfairness. *Fabri v. United Technologies Int'l, Inc.*, 387 F.3d 109, 120 (2d Cir. 2004). Instead, a practice may be shown to be unfair either because of the

32

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

degree to which it meets one of the criteria or because to a lesser extent it meets all three. *Id*. The practice attacked may be actually deceptive or a practice amounting to a violation of public policy. *Id*. The plaintiff need not show intent to deceive. *Id*.

With regard to prong one, Plaintiffs have pled facts which demonstrate Uber's conduct offends "established" public policy. A litigant must show that the challenged practice "without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, *the common law, or otherwise*...." (Emphasis added; internal quotation marks omitted.) *See Cheshire Mortgage Service, Inc. v. Montes*, 223 Conn. 80, 105–106, 612 A.2d 1130 (1992). Uber narrowly focuses its argument on whether it is subject to Connecticut taxicab and livery regulations and strays no further, reasoning that there is a reasonable debate as to whether Connecticut's regulatory framework even applies to Uber. The general consensus in the country outside of each state's personal regulatory framework for taxicab and livery services is that certain baseline standards should be met by any transportation for hire services. Uber is hard pressed to disagree or locate any state that does *not* require, for example, that insurance coverage in some form be kept or that any adequate background check of companies' drivers be conducted. These are general concepts that serve to establish a broader public policy favoring the safety of the public and fair competition with competing entities, of which Uber is in violation. Most of the salient statutes and regulations have been referenced in Plaintiffs' Complaint. *See* Complaint at ¶¶ 22-26, 39, 41-43, 51-52, 56, 59-60.

Uber argues that the second prong, which requires that a plaintiff plead facts adequate to demonstrate a defendant's actions are "unfair, immoral, or deceptive," cannot be met for similar reasons. Here, Uber again relies only on its lame and self-serving argument that there is reasonable debate as to whether Connecticut's taxicab and livery laws apply to Uber, and

33

whether Uber is "conduct[ing] its business in a manner consistent with its good faith

interpretation" of Connecticut's framework. But again, there are broader understandings

reflective of what is needed for the safety of the public other than what is strictly reflected in the

statutes and regulations. The heart of Plaintiffs' Complaint is that Uber's conduct conflicts with

these general policies in addition to Connecticut's codification thereof. Therefore, Plaintiffs have

adequately complied with satisfying the second prong of the test for purposes of pleading this

cause of action.

The third prong, which requires a plaintiff to demonstrate "substantial injury," has

already been addressed above. *See* § III.E.3. While Uber may contend that Plaintiffs have not

gone far enough in their Complaint, or described in great enough detail how they are injured,

Plaintiffs argue they have adequately pled substantial injury. This is especially the case where

the Complaint is looked at as a whole and all necessary implications of the allegations are

reasonably found in Plaintiffs' favor.

**5. Plaintiffs allege that Uber's acts were the proximate cause of their injuries.**

For the same reasons Plaintiffs argue they have met the pleading requirements for

demonstrating proximate cause under the Lanham Act, so too have the Plaintiffs adequately

alleged Uber's acts were the proximate cause of their injuries under the CUTPA. *See* § III.A.3.

Given the weight of the allegations set forth in Plaintiffs' Complaint, Uber's argument in this

regard also fails.

**E. Plaintiffs state legally viable claims for violations of RICO.**

"To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute ...;

(2) an injury to business or property; and (3) that the injury was caused by the violation of

[RICO]." *Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 107

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

34

(2d Cir. 2001). "In analyzing the issues on this motion to dismiss, we must take as true the facts as alleged in the complaint and as supplemented by the RICO case statement ordered by the district court." *McLaughlin v. Anderson*, 962 F.2d 187, 189 (2d Cir. 1992). Furthermore, RICO claims should be interpreted in light of the United States Supreme Court's policy to construe RICO broadly. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497-98 (1985). Plaintiffs allege RICO violations under all three subsections of § 1962, premised on predicate acts of wire fraud. All three RICO counts are sufficiently pled, and should therefore be upheld.

### 1.  Plaintiffs have sufficiently alleged a pattern of racketeering activity.

To satisfy the pleading requirements of all three RICO subsections, Plaintiffs have alleged a pattern of racketeering activity by Uber, consisting of numerous and continuing acts of wire fraud. *See* 18 U.S.C. 1961(5) (including acts of fraud as "racketeering activity"); *Brooke v. Schlesinger*, 898 F. Supp. 1076, 1082 (S.D.N.Y. Sept. 25, 1995).

> To successfully make a claim of mail or wire fraud as a predicate act, a plaintiff must allege (1) the existence of a scheme to defraud, (2) the defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme.

*Serin v. N. Leasing Sys., Inc.*, No. 7:06-CV-1625, 2009 WL 7823216, at *7 (S.D.N.Y. Dec. 18, 2009).

Uber argues that Plaintiffs have failed to allege a scheme to defraud, and have failed to allege any misrepresentations by Uber which satisfy the pleading requirements of Rule 9(b). However, the facts set forth in Plaintiffs' operative Complaint adequately allege a scheme to defraud, and allege fraudulent representations with the requisite degree of particularity.

"The term 'scheme to defraud' is measured by a nontechnical standard. It is a reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general [and] business life of members of society." *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 455

35

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

(S.D.N.Y. 1998). The Complaint alleges that Uber has engaged in a scheme to defraud in which it intentionally deceives the riding public in Connecticut about, *inter alia*, the fares it charges, the safety of its vehicles and drivers, the existence and extent of its insurance coverage, its status as a "ridesharing" company, and about its seeming affiliation with the Plaintiffs. *See, e.g.*, Complaint at ¶¶ 41-49, 67-68. Uber makes these misrepresentations to deceive its clients into believing they are being charged legal fares, that Uber has taken legally required steps to assure their safety, and that Uber associates with authorized, Connecticut taxicab and livery companies. *See id.* Uber uses this deception for the purpose of profiting at the expense of lawfully operating taxicab and livery companies, thereby simultaneously undermining and exploiting the Connecticut taxicab and livery infrastructure. Uber uses interstate wire communications in furtherance of its scheme, including "interstate wires including, but not limited to, the use of mobile communications networks, wireless communications networks, credit card processing transactions, bank to bank payments, and transfers of funds." RICO Statement, p. 2. These allegations are sufficient to plead a scheme to defraud for purposes of a RICO action.

Furthermore, contrary to Uber's contentions, Plaintiffs have adequately pled "the contents of the communications, who was involved, where and when they took place, and . . . why they were fraudulent." *See* Motion at p. 29. As to where and when the communications took place, Plaintiffs have alleged that all such communications have been occurring continuously since April 2014, when Uber first began operating in Connecticut, and that Uber customers access its phone applications and websites throughout the state of Connecticut at all times of the day. Complaint at ¶ 27; *RICO Statement*, p. 7. With regard to Uber's false affiliation with the Plaintiffs, the Complaint alleges that the communications involved are the electronic hail by the Uber customer, and the acceptance of the hail by an Uber driver (some of whom are also under

36

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

contract with one of the Plaintiffs). These communications involve Uber and/or its drivers,

partners or contractors, and Connecticut consumers. Such communications have been transmitted

to Connecticut users of Uber's transportation system hundreds, if not thousands of times over a

period in excess of three weeks. Complaint at ¶¶ 88-89. (Note: Plaintiffs' allegation as to the

three (3) week period was based on the date they filed their original complaint.  As of the date

hereof, such communications have been occurring for over nine (9) months.) Such request for

services and subsequent acceptance of the request by a vehicle which appears to be associated

with one of the Plaintiffs, by way of its unique certification, plate, color scheme, logos and/or

marks, is fraudulent, as it represents that Uber is affiliated with lawfully authorized taxicab or

livery companies, and that, therefore, the services provided, including the fares charged, have

been approved by the Plaintiffs. *Id.* at ¶¶ 67-68.

As to Uber's false marketing, Plaintiffs have alleged that Uber has made

misrepresentations asserting that, *inter alia*, its drivers are qualified, safe, and properly licensed,

and that its vehicles are properly inspected. *Id.* at ¶¶ 41, 46. These representations involve Uber

and its Connecticut customers, and are transmitted through Uber's website and online media

outlets, either through the present or at least through April of 2013. *See id.* at ¶¶ 42, 46. These

representations are fraudulent because, as explained above, Uber's system of verifying the safety

of its drivers and vehicles is superficial and misleading at best, and grossly deficient in terms of

Connecticut's requirements (fingerprint criminal background checks over 10 prior years), with

which Uber is required to comply. *See id.* at ¶¶ 41-42, 44-47.

Additionally, Uber makes misrepresentations about the extent of its insurance coverage

and its relationships with its drivers. Plaintiffs have alleged that Uber markets its insurance

coverage to consumers and that its representations about its insurance are false. *Id.* at ¶¶ 42, 44-

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

46, 59, 64-66. For example, while Uber represents that its vehicles/drivers are insured either through commercial or personal auto insurance, upon information and belief, Uber only maintains a liability policy with James River Insurance Company, which is not licensed to do business in any state in the United States. Such policy does not appear to insure third-party management companies for Uber, making it nearly impossible to collect on the policy because Uber owns no cars and because the policy contains a myriad of other exclusions and exceptions preventing coverage in most scenarios. *Id.* at ¶ 44. Furthermore, while Uber may claim it has adequate insurance to protect the consuming public, this representation is also belied by its own Waivers of Liability it requires from consumers and its drivers. Complaint, ¶¶ 44-49.

Thus, Plaintiffs have alleged the circumstances of Uber's fraudulent misrepresentations with adequate particularity. Any further specificity is not required, and would not serve any practical purpose:

> while Rule 9(b) may be construed strictly in the context of civil RICO actions, it should not be applied in a manner which would, in effect, obstruct all plaintiffs, including those with valid claims, from initiating civil RICO actions. RICO clearly provides for civil remedies to benefit victims of racketeering, and in the absence of congressional action, these provisions should not be ignored. See 18 U.S.C. § 1964(c); *see also H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) ("RICO may be a poorly drafted statute; but rewriting it is a job for Congress...."). Moreover, even if applied strictly, Rule 9(b) must still be read together with Rule 8(a), which requires a plaintiff to plead only a short, plain statement upon which he is entitled to relief. *See Connolly v. Havens*, 763 F.Supp. 6, 12 (S.D.N.Y.1991).

*Sumitomo*, 995 F. Supp. at 456.

"In addition, the particularity requirement is eased where the facts comprising the alleged fraud are 'peculiarly within the opposing party's knowledge,' allowing pleading based upon information and belief, provided the facts underlying the belief are stated." *Brooke v. Schlesinger*, 898 F. Supp. 1076, 1086 (S.D.N.Y. 1995). This is in accord with the policy that

38

RICO is to be read broadly in light of its remedial purposes, particularly where it is alleged in a private action. *Sedima*, 473 U.S. at 497-98.

Under the circumstances of this case, requiring Plaintiffs to allege any further specifics concerning, for instance, the time and place at which each particular wireless communication was transmitted, would not add anything significant to this Court's analysis, and would only serve to effectively prevent the Plaintiffs from pursuing valid RICO claims. Further, such details are in the possession, custody and/or control of Uber itself.[26]

Moreover, to sufficiently allege a scheme to defraud, it is not necessary that the transmitted communications themselves contain misrepresentations. All that is required is that interstate wire communications were used in furtherance of a fraudulent scheme. *Serin v. N. Leasing Sys., Inc.*, No. 7:06-CV-1625, 2009 WL 7823216, at *7 (S.D.N.Y. Dec. 18, 2009); *Crabhouse of Douglaston Inc. v. Newsday Inc.*, 801 F. Supp. 2d 64, 87-88 (E.D.N.Y. 2011). "In such cases, a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy Rule 9(b)." *Sumitomo*, 995 F. Supp. at 456. The reason for this is that any further detail would serve "neither the reputational interests nor the notice function served by Rule 9(b) would be advanced in any material way by insisting that a complaint contain a list of letters or telephone calls." *Id.* at 456. Thus,

> [i]n complex civil RICO actions involving multiple defendants, therefore, Rule 9(b) does not require that the temporal or geographic particulars of each mailing or wire transmission made in furtherance of the fraudulent scheme be stated with particularity. *Spira*, 876 F.Supp. at 559.4 In such cases, Rule 9(b) requires only that the plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme.

*Id.* at 456.

---

[26] *Twombly*, 550 U.S. at 556, 586-87 (dismissals prior to giving plaintiff ample opportunity for discovery should be granted very sparingly).

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

Even if the Plaintiffs could not allege with the required specificity that the wire communications themselves were fraudulent, the Plaintiffs have nonetheless alleged sufficient facts demonstrating that Uber used interstate wire communications in furtherance of its fraudulent scheme, regardless of whether those communications were false. Plaintiffs have alleged that Uber has been using interstate wires, including, but not limited to, mobile/wireless communication networks and payment transactions in furtherance of its fraudulent scheme. *RICO Statement*, p. 2. When Uber uses wireless and/or mobile communication services to connect its drivers to consumers through a smartphone application, the wire communication, regardless of whether it, in itself, contains any false representations, is used in furtherance of Uber's scheme to defraud the Connecticut riding public into believing, *inter alia*, that Uber is operating in association with Plaintiffs and is charging legal fares. Plaintiffs' allegations are, therefore, sufficient. *See Sumitomo*, 995 F. Supp. at 456.

**2. Plaintiffs have sufficiently stated a claim under each RICO subsection.**

**i.    Plaintiffs sufficiently state a claim under Section 1962(a).**

Subsection (a) of 18 U.S.C. § 1962 prohibits any person receiving any income derived from a pattern of racketeering activity from using or investing such income "in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." In Count V, Plaintiffs allege that Uber derives "income from [its] wire fraud violations by enlisting lawfully operating taxicab and livery drivers to drive [Uber's] customers through [its] own collection systems, and collecting illegal fees from those payments." Then, "[u]pon information and belief, [Uber] uses some of the income illegally derived from the diverted Connecticut fares in [the] ongoing operation of [its] transportation systems." Complaint at ¶¶ 90-91. Uber's "investment of the proceeds of [its]

*Rome McGuigan, P.C.*   •   *Attorneys at Law*
One State Street   •   Hartford, Connecticut 06103-3101   •   (860) 549-1000   •   Fax (860) 724-3921   •   Juris No. 27726

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

racketeering activity in [its] ongoing operations causes injury to the Plaintiffs by providing investment funds used to expand [Uber's] network of vehicles. These taxicab and livery vehicle substitutes divert business from licensed and legally operating taxicab and livery vehicles that are managed by the Plaintiffs, causing substantial economic injury to the Plaintiffs." *Id.* at ¶ 92.

Uber's challenge to Plaintiffs' subsection (a) claim is premised on Uber's contention that "Plaintiffs interpret § 1962(a) as prohibiting a 'channeling of fraud-derived profits back to a RICO violator," but that "case law squarely rejects such an interpretation. Motion at p. 31. In other words, according to Uber, the alleged RICO enterprise is Uber itself. However, Uber mischaracterizes the RICO enterprise as alleged in the Complaint.

An enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "[A]n enterprise includes any union or group of individuals associated in fact" and . . . RICO reaches 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Boyle v. United States*, 556 U.S. 938, 944-45 (2009); *see also United States v. Turkette*, 452 U.S. 576, 583, (1981). Additionally, while Uber argues that an enterprise under § 1962(a) must be "the victim of unlawful activity," "neither the language nor structure of RICO limits its application to legitimate "enterprises." *Turkette*, 452 U.S. at 587; Motion at pp. 31-32. An enterprise may in fact be an unlawful organization. *Id.* In the instant case, the RICO enterprise is the "ongoing . . . transportation system" which consists of, inter alios, both Uber and its "partners," who are independently-contracted drivers that associate and work together with Uber for the common purpose of earning profits by illegally avoiding Connecticut taxicab and livery laws and taking parasitic advantage of legally operating taxicab and livery authorities. *See, e.g., Complaint* at ¶¶ 91; 5, 9, 32-40. Uber and its partners associate and work together in an

"association-in-fact" enterprise for the common purpose of profiting through the flouting and exploiting of Connecticut taxicab and livery laws. The enterprise is an organization engaged in and affecting interstate commerce, functioning as a vehicle-for-hire transportation system. *See id.* at ¶ 91. These allegations are sufficient to plead a RICO enterprise which, contrary to Uber's contention, engages in or affects interstate commerce.

Moreover, even if it were alleged that Uber by itself was the enterprise in Count V, Plaintiffs' RICO claim would still be legally sufficient. Second Circuit case law, as well the weight of authority from most federal jurisdictions, have held that the RICO violator need not be separate or different from the enterprise which is used or invested in by the violator for purposes of § 1962(a). *Official Publications, Inc. v. Kable News Co.*, 884 F.2d 664, 668 (2d Cir. 1989). ("under § 1962(a), it may be possible for a defendant to also be the enterprise"); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 345 (2d Cir. 1994) ("As we noted in Kable News, there is no requirement under section 1962(a) (as opposed to section 1962(c)) that the 'person' be distinct from the 'enterprise'").

### ii.    Plaintiffs sufficiently state a claim under Section 1962(b).

Subsection (b) of 18 U.S.C. § 1962 provides that

> [I]t shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Uber contends that Plaintiffs have failed to allege an "enterprise" for purposes of their § 1962(b) claim. According to Uber, Plaintiffs claim that the enterprise at issue in Count VI is all "legally operating authorities in Connecticut." Uber argues that Plaintiffs have failed to show any ongoing organization between all Connecticut taxicab authorities, and that "[c]ompetitors in the same market 'who independently engage[] in similar types of activity." *See* Motion at p. 33.

42

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

However, as explained above, the RICO enterprise alleged in the Complaint is an association consisting of, *inter alios,* Uber and its "partners," who are independently-contracted drivers that associate and work together with Uber for the common purpose of earning profits by illegally avoiding Connecticut taxicab and livery laws and taking parasitic advantage of legally operating taxicab an livery authorities. *See, e.g.,* Complaint at ¶ 5, 9, 32-40.

Uber also argues that Plaintiffs have failed to allege that Uber exerts any control over the enterprise. *See* Motion at pp. 33-34. This argument is derived from Uber's misconception as to the identity of the RICO enterprise, and, therefore, lacks merit. Moreover, it is clear from the Complaint that Uber exercises substantial control over the enterprise, as it, *inter alia*, created and manages the enterprise's business model, creates the enterprise's policies, and is in charge of enlisting "partners" to join the enterprise. *See* Complaint at ¶¶ 32-40.

Finally, Uber contends that Plaintiffs do not allege any injuries that are distinct from the alleged predicate acts of wire fraud. *See* Motion at p. 34. Again, Uber's argument is premised on a misunderstanding of the identity of the RICO enterprise and, in any event, Plaintiffs have alleged sufficient facts showing that they suffered injuries due to Uber acquiring and/or maintaining control of the enterprise. Largely because the enterprise avoids complying with mandatory state regulations, the enterprise has entered the market illegally, failed to meet established statutory criteria as required to operate a taxicab or livery company and is able to provide taxicab and livery dispatch service through a technologically advanced software application which attract a growing number of customers. As demand for use of this type of technology to summon taxicab and livery services increases, Uber, as the recruiter of new "partners," acquires/maintains increasing control of the enterprise, and uses its leverage to expand the enterprise's operations and profits. The expansion of this transportation-for-hire

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

enterprise detracts directly from Plaintiffs' business, as Plaintiffs are members of a limited pool of authorized taxicab and livery companies in Connecticut. Increased presence and demand of the enterprise controlled by Uber necessarily detracts from the demand for Plaintiffs' services, causing lost profits and loss of business good will. *See id.* at ¶¶ 32-40; 26; *see also* fn. 14, *supra.*

### iii.   Plaintiffs sufficiently state a claim under section 1962(c).

A violation of subsection (c) of 18. U.S.C. § 1962 "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim." *Sedima*, 473 U.S. at 496. However, "the statute requires no more than this." *Id.* at 497. "This less restrictive reading is amply supported by our prior cases and the general principles surrounding this statute." RICO is to be construed broadly, and overly narrow interpretations only serve to eliminate § 1962(c) from the RICO statute. *Id.* 497-98.

Uber challenges Plaintiffs' claim under § 1962(c) on the grounds that Plaintiffs have failed to plead "any type of 'enterprise' at all." Motion at p. 35. Uber argues that to the extent Plaintiffs claim that Uber by itself is the enterprise, the "distinctness" requirement for subsection (c) claims would bar Plaintiffs' action. *Id.* Additionally, Uber argues that to the extent the enterprise consisted of "approved taxicab and livery authorities," Plaintiffs allegations would fail to show Uber's participation in such enterprise. *Id.* at 35-36. Again, these contentions misstate and/or misunderstand the identity of the "enterprise:" The enterprise is the ongoing vehicle-for-hire transportation system consisting of, *inter alios*, Uber and its "partners." Uber and its partner-drivers associate together for the common purpose of earning profits by illegally avoiding Connecticut taxicab and livery laws and taking parasitic advantage of legally operating taxicab and livery authorities. Uber and its partners also work together for the common purpose of

44

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

undermining the existing Connecticut taxicab and livery market by having unregulated vehicles illegally function as taxicabs and/or livery vehicles. *See, e.g.,* Complaint at ¶ 5, 9, 32-40.

As the enterprise is not merely Uber itself, but rather Uber and its partners, who are not employees, the distinctness requirement is met. Moreover, Uber cannot contend that it does not "participate" in the transportation-for-hire enterprise. To prove "conduct" or "participation" in an enterprise, all that is required is that the defendant "have some part in directing [the enterprise's] affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). Liability is not limited to those with primary responsibility or with formal positions in the enterprise. *Id.* The requirement for participation in this case is clearly met. Uber, *inter alia*, is the brains behind the enterprise's business model and manages its operations. It also creates the enterprise's policies, and is in charge of enlisting "partners" to join the enterprise. These allegations are more than sufficient to demonstrate that Uber "participates in the operation or management of the enterprise itself." *See* Complaint at ¶¶ 32-40.

Uber further contends that Plaintiffs have failed to allege that Uber's predicate acts of wire fraud were the proximate cause of the Plaintiffs' injuries. Subsection (c) of § 1962 "requires the plaintiff to establish proximate cause in order to show injury "by reason of" a RICO violation." *Bridge*, 553 U.S. at 654.

> Proximate cause . . . is a flexible concept that does not lend itself to 'a black-letter rule that will dictate the result in every case.' . . . Instead, we "use[d] 'proximate cause' to label generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts," . . . with a particular emphasis on the "demand for some direct relation between the injury asserted and the injurious conduct alleged" . . .

*Id.* at 654-55 (internal citations omitted)

Uber relies heavily on *Anza v. Ideal Steal Supply Corp.*, 547 U.S. 451 (2006). That case, however, is distinguishable. In *Anza*, the plaintiff alleged that the defendant was failing to charge

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

sales tax to cash-paying customers and was submitting fraudulent tax returns to the State of New York. *Id.* at 454. This fraudulent conduct allegedly allowed the defendant to reduce its prices to attract more customers, causing the plaintiff to lose sales. *Id.* at 454-55. The Court found that the plaintiff could not establish that its injuries were proximately caused by the defendant's fraudulent conduct because such alleged harm was too attenuated. *Id.* at 457-58. The cause of the plaintiff's harm (lost sales) was "a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Id.* at 458. The defendant's filing of fraudulent tax returns directly harmed the state, not the plaintiff. The Court further noted that its "conclusion is confirmed by considering the directness requirement's underlying premises." *Id.* at 458. The Court then considered several factors (none of which were determinative in themselves) which either supported or weighed against its conclusion as to proximate cause. *Id.* at 458-460; *Bridge*, 553 U.S. at 654 ("Proximate cause . . . is a flexible concept that does not lend itself to 'a black-letter rule that will dictate the result in every case").

Uber latches onto particular factors which it believes supports its argument that Plaintiffs have failed to allege proximate cause. Uber contends that "this Court would have to determine what portion of Plaintiffs' lost market share is attributable directly to Uber's allegedly false statements, a matter that has not even been alleged here, and which, in all events, the Supreme Court held is an impermissible inquiry under RICO." First, this assertion misinterprets the holding in *Anza*. While the *Anza* Court explained that the difficulty in calculating damages attributable to racketeering activity is a consideration tending to weigh against a finding of proximate cause, the Court did not hold that difficulty in calculating damages automatically equals failure to establish proximate cause. Moreover, courts have found that proximate cause has been adequately pled, even where apportioning of damages may end up being difficult. *See*

46

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

*Republic of Colombia v. Diageo North America Inc.*, 531 F.Supp.2d 365, 435-36 (E.D.N.Y. 2007) (denying motion to dismiss RICO claim finding that while damages and causation may be difficult to prove, dismissal was not appropriate at such early stage in the litigation, as court could not hold as a matter of law that plaintiffs could not prove causation with reasonably certainty after further discovery and evidence).

Furthermore, the circumstances of the instant case are distinguishable from those in *Anza*. As alleged in the Complaint, the vehicle-for-hire industry in Connecticut is a closed market, as the DOT issues a finite number of taxicab Certificates and livery Permits, and only vehicles having a proper Certificate or Permit may legally operate in Connecticut as taxicab or livery vehicles. Complaint at ¶ 26. By contrast, in *Anza*, anyone could theoretically enter the steel mill market, and their actions could have affected the plaintiff's sales in any number of ways. Additionally, the defendant could have lowered its prices for many reasons unrelated to the alleged fraud, and the fact that defendant committed fraud did not necessarily mean it would lower its prices. *Id.* at 458-59. There were simply too many factors at play to link the defendant's fraud to plaintiff's loss of sales. In the instant case, each ride unlawfully provided through Uber's system constitutes business that would have otherwise gone to lawfully operating taxicab or livery companies, including the Plaintiffs. Because there is a limited pool of taxicab and livery authorities in Connecticut, the link between Uber's fraudulent conduct and Plaintiffs' loss of sales and profits is sufficiently direct. Moreover, *Anza* simply involved far more links in the causal chain. The plaintiff in *Anza* alleged that defendants filed false tax returns, which in turn allowed them to reduce their prices and attract customers, which in turn caused the plaintiff to lose business. It was the reduction of prices that caused plaintiff's losses and defendant could have reduced its prices for any number of reasons. Here, Plaintiffs allege that Uber used

47

misrepresentations to attract customers, which directly took that business away from the Plaintiffs. Because only authorized taxicab and livery companies can provide vehicle-for-hire services in Connecticut, Uber's very entrance into the market via its fraudulent representations directly caused injury to the Plaintiffs.

Uber argues that Connecticut consumers, not Plaintiffs, are the targets of such conduct, and Plaintiffs are harmed only indirectly. Motion at p. 37. However, while consumers, as opposed to the Plaintiffs, are the ones who relied upon Uber's fraudulent misrepresentations, "a person can be injured 'by reason of' a pattern of mail fraud even if he has not relied on any misrepresentations." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649, 128 S. Ct. 2131 (2008). "Nor is first-party reliance necessary to ensure that there is a sufficiently direct relationship between the defendant's wrongful conduct and the plaintiff's injury to satisfy the proximate-cause principles articulated in Holmes and Anza." *Id.* at 657-58. Thus, the fact that Plaintiffs were not the parties who relied upon Uber's fraud does not mean they were not directly injured as a result of such fraud.

Additionally, it is notable that "[t]he requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims." *Anza*, 547 U.S. at 460. In the present case, "[t]here is no class of potential plaintiffs who have been more directly injured by the alleged RICO conspiracy than the defendant's business competitors, who have a greater incentive to ensure that a RICO violation does not go undetected or unremedied, and whose recovery would indirectly cure the loss suffered by these plaintiffs." *Commercial Cleaning Services, L.L.C. v. Colin Service Systems, Inc.*, 271 F.3d 374, 385 (2d Cir. 2001) (plaintiff cleaning service

48

company alleged competing company's racketeering activity – hiring of illegal immigrants –

proximately caused plaintiffs loss of contracts and customers to defendant).

For the same reasons, the other cases cited by Uber, which rely on *Anza*, are also readily

distinguishable, as they do not involve the kind of distinct, limited market involved in this case

and/or otherwise implicated a larger number of links in the causal chain. *See, e.g., Gristede's

Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 444 (E.D.N.Y. 2007) (plaintiff alleged

defendant competitor failed to apply taxes to its cigarettes, which in turn allowed defendant to

sell at reduce prices, causing plaintiff to lose sales.

Lastly, Uber contends that Plaintiffs have failed to allege "but for" causation, because

> Plaintiffs have made no showing that the alleged acts of wire fraud – distinct from the
> general availability of Uber's request service itself – is the but-for cause of Plaintiff's
> harm. If the alleged misrepresentations ceased, Uber would still offer its transportation-
> request service to Connecticut users, and Plaintiffs' alleged harms would, at least
> according to Plaintiffs, continue to exist.

Motion at p. 39.

The problem with this argument, however, is that as alleged in the Complaint, Uber is

only able to offer its transportation services by virtue of its misrepresentations. If, for instance,

Uber did not misrepresent material facts such as the safety of its operations, the legality of its

rates, the extent of its insurance coverage, the scope of its safety and background checks, and the

legality of its very existence in the vehicle-for-hire market, Uber would not be able to obtain its

volume of customers. Thus, the acts of fraud are inseparable from Uber's offering of its services,

because the fact that Uber is offering such services *at all* is illegal. As alleged in the Complaint,

Uber obtains customers by using material misrepresentations, and Uber's illegal taking of

customers directly takes them away from the Plaintiffs, who are members of a limited pool of

authorized taxicab and livery authorities.

49

Rome McGuigan, P.C. • Attorneys at Law
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

**F. The Court should not abstain from deciding these state issues.**

As a last ditch effort, Uber incorrectly asserts that this Court should decline to exercise jurisdiction over this case because "[a]t their core, Plaintiffs' claims seek to enforce Connecticut's existing statutory and regulatory transportation laws against Uber." In making this leap, Uber argues that the doctrine of primary jurisdiction should cause this Court to abstain from deciding all of the issues presented in this litigation. This argument was already flatly rejected by another district court presented with the issue in the same context. *See Boston Cab Dispatch, Inc.,* 2014 WL 1338144, at *26.

As stated above in Section III.A.1., Plaintiffs are not suing to enforce state statutes and regulations, they are suing to enforce their rights as established under federal law, namely the Lanham Act and RICO, as established under CUTPA and Connecticut tort law, as well as via their legally protected interests in their operating authorities. Additionally, even if it was Plaintiffs' goal to enforce state law (other than CUTPA), Uber overstates the reach of the available administrative remedies available through the DOT and DMV. As broad as the powers of these agencies are, as Plaintiffs describe in their Complaint and Uber reiterates in its motion (p. 40), the agencies still are not authorized to enforce federal law, CUTPA or Plaintiffs' other common law claims. These are all private causes of action.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Uber's Motion to Dismiss. Further, Plaintiffs request leave to file a Second Amended Complaint in the event, *arguendo*, all or part of the Motion is granted.

## V.   REQUEST FOR ORAL ARGUMENT

Plaintiffs hereby respectfully request oral argument on Uber's Motion.

50

BY: _____/s/_____

    Mary Alice Moore Leonhardt (ct02996)
    mmooreleonhardt@rms-law.com
    Glenn E. Coe (ct05372)
    William W. Kaliff (ct03565)
    Daniel J. Csuka (ct29446)
    Rome McGuigan, P.C.
    One State Street
    Hartford, CT 06103
    Tel. (860) 549-1000
    Fax (860) 724-3921

    Their Attorneys

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

51

## CERTIFICATION

    I hereby certify that on February 5, 2015, a copy of the foregoing was filed electronically and served by mail to anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

<div align="right">

/s/
_____
Mary Alice Moore Leonhardt, Esq.

</div>

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726