# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GREENWICH TAXI, INC., ACE TAXI SERVICE, INC., CASINO CAB COMPANY, INC., CURTIN MOTOR LIVERY SERVICE, INC., EAST HARTFORD CAB COMPANY, INC., EXECUTIVE 2000 TRANSPORTATION, LLC, FARMINGTON VALLEY CAB, LLC, GROTON CAB COMPANY, INC., LASSE'S LIVERY SERVICE, INC., SUBURBAN TRANSPORTATION, INC., TAXICABS AND LIVERY COUNCIL OF CONNECTICUT, INC., THE WATERBURY YELLOW CAB & SERVICE COMPANY, INC., TORRINGTON VALLEY CAB, LLC, UNION-LYCEUM TAXI COMPANY, INC., and YELLOW CAB COMPANY OF NEW LONDON & GROTON, INC., | C.A. No.: 3:14-cv-733 (AWT) |
| Plaintiffs, | **DEFENDANT UBER TECHNOLOGIES, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** |
| v. | |
| UBER TECHNOLOGIES, INC. | |
| Defendant. | |
| | March 9, 2015 |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................1

ARGUMENT ......................................................................................................3

I.      Plaintiffs Fail To State A Lanham Act Claim For False Advertising.................................3

      A.      An Alleged Violation Of A Transportation Regulation Is Not A Viable
            False Advertising Claim Under *Dial A Car*.................................3

      B.      Even If This Action Were Distinguishable From *Dial A Car*, Plaintiffs Fail
            To Allege Uber Made Any Misrepresentations. .................................5

            1.      Driver Partners .................................6

            2.      Insurance Coverage .................................7

            3.      Safety .................................9

            4.      Pricing .................................9

      C.      Plaintiffs Fail To Plead Proximate Causation. .................................11

II.      Plaintiffs Fail To State A Lanham Act Claim For False Association. .................................12

      A.      Plaintiffs Fail To Allege They Have Recognizable Trademarks. .................................13

      B.      Plaintiffs Fail To Allege That Uber Used Their Trademarks. .................................13

III.     Plaintiffs Fail To State A Claim For Intentional Interference With Contractual
       Relationships. .................................15

      A.      Plaintiffs Fail To Allege Tortious Conduct. .................................15

      B.      Plaintiffs Fail To Allege Actual Loss. .................................16

      C.      Plaintiffs Fail To Allege That Uber's Alleged Interference Was Intentional. .................................17

      D.      Plaintiffs Fail To Adequately Allege The Existence Of Contracts Between
            Plaintiffs And Drivers And Uber's Knowledge Of Contracts Between
            Plaintiffs And Credit Card Processors. .................................18

IV.     Plaintiffs Fail To State A Claim Under CUTPA. .................................19

      A.      Plaintiffs' CUTPA Claim Should Be Dismissed For Failure to Plead Their
            Lanham Act and Tortious Interference Claims. .................................20

B.      Plaintiffs Fail To Satisfy The Substantial Injury Requirement.............................20

C.      Plaintiffs Fail To Allege Conduct Sufficient To Allege A CUTPA Violation
        Under The Cigarette Rule. ....................................................................................21

D.      Plaintiffs Fail To Plausibly Plead That Uber's Allegedly Unfair Conduct
        Under CUTPA Proximately Caused Their Alleged Injuries...................................23

V.      Plaintiffs Fail To State Claims For Violations Of RICO ....................................................23

A.      Plaintiffs Fail To Allege A Pattern Of Racketeering Activity Sufficient To
        Satisfy Rule 9(b). .................................................................................................24

B.      Plaintiffs Have Failed To State A Claim Under RICO's "Use Or Invest"
        Provision, Section 1962(a).....................................................................................26

C.      Plaintiffs Have Failed To State A Claim Under RICO's "Interest In Or
        Control Over" Provision, Section 1962(b)................................................................27

D.      Plaintiffs Fail To State A Claim Under Section 1962(c). ......................................28

VI.     The Court Should Dismiss Or Stay This Case Under The Doctrine of Primary
        Jurisdiction.......................................................................................................................31

CONCLUSION.................................................................................................................................33

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>CASES</u>

*A. Terzi Prods., Inc. v. Theatrical Protective Union*, 2 F. Supp. 2d 485 (S.D.N.Y. 1998) .............24

*Abrahams v. Young & Rubicam Inc.*, 79 F.3d 234 (2d Cir. 1996)....................................5

*Allstate Ins. Co. v. Seigel*, 312 F. Supp. 2d 260 (D. Conn. 2004)....................................26

*Alpo Petfoods, Inc. v. Ralston Purina Co.*, 720 F. Supp. 194 (D.D.C. 1989)...............................8, 9

*Am. Car Rental, Inc. v. Commissioner of Consumer Protection*, 273 Conn. 296 (2005)...............20

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) ...................................................29

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...............................................................21

*Bacarella Transp. Servs., Inc. v. Rightway Logistics, LLC*, 3:08-CV-1487(PCD), 2009 WL 322871 (D. Conn. Feb. 10, 2009) ........................................................................15

*Bhatia v. Debek*, 287 Conn. 397 (2008).................................................................16

*Bio Tech. Gen. Corp. v. Genentech, Inc.*, 267 F.3d 1325 (Fed. Cir. 2001) ........................5

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 886 F. Supp. 377 (S.D.N.Y. 1995) ...................5

*Boston Cab Dispatch, Inc. v. Uber Technologies, Inc.*, No. CIV.A. 13-10769-NMG, 2014 WL 1338144 (D. Mass. Feb. 28, 2014) ...........................................................31

*Boston Cab Dispatch, Inc. v. Uber Technologies, Inc.*, No. CIV.A. 13-10769-NMG, 2015 WL 314131 (D. Mass. Jan. 26, 2015) ........................................................30, 32

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)...................................29, 30

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, No. 14-CV-121 JPO, 2014 WL 6077247 (S.D.N.Y. Nov. 14, 2014) ...........................................................25

*Center Cadillac, Inc. v. Bank Leumi Trust Co.*, 808 F. Supp. 213 (S.D.N.Y. 1992).....................25

*Checker Cab Philadelphia, Inc. v. Uber Technologies, Inc.*, No. CIV.A. 14-7265, 2015 WL 966284 (E.D. Pa. Mar. 3, 2015)...........................................................22

*Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013)...................................28

*DeLeon v. Little*, 981 F. Supp. 728 (D. Conn. 1997) .......................................................5

*DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497 (E.D.N.Y. 2011) ........................................................................25

*Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484 (D.C. Cir. 1996) ........................................3, 4

*Downes-Patterson Corp. v. First Nat'l Supermarkets, Inc.*, 64 Conn. App. 417 (2001) ...............15

*Ehret v. Uber Technologies, Inc.*, No. C-14-0113 EMC, 2014 WL 4640170 (N.D. Cal. Sept. 17, 2014) ........................................................................................................................9

*Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612 (S.D.N.Y. 2006)..................................25

*Glazer v. Dress Barn, Inc.*, 274 Conn. 33 (2005) ................................................................20

*Golembeski v. Metichewan Grange No. 190*, 20 Conn. App. 699 (1990) .....................................15

*Greater Houston Transp. Co. v. Uber Technologies, Inc.*, No. 14-cv-00941 (S.D. Tex. Apr. 21, 2014) ........................................................................................................................22

*Herman v. Endriss*, 187 Conn. 374 (1982) ........................................................................17

*Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20 (2000)..............................................17

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992) ..................................................31

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010)......................................28

*In re Trilegiant Corp., Inc.*, No. 3:12-CV-00396 VLB, 2014 WL 1315244 (D. Conn. Mar. 28, 2014) ........................................................................................................................25

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014) .....................11, 12

*Lipton v. Nature Co.*, 71 F.3d 464 (2d Cir. 1995)..............................................................10

*Manzo v. Uber Technologies, Inc.*, 13 C 2407, 2014 WL 3495401 (N.D. Ill. July 14, 2014).........10

*McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544 (2d Cir. 1991)............................8

*Plainville Elec. Prods. Co. v. Vulcan Advanced Mobile Power Sys., LLC*, 638 F. Supp. 2d 245 (D. Conn. 2009) ........................................................................................................25

*Raymond Rd. Associates, LLC v. Taubman Centers, Inc.*, No. X02UWYCV075007876S, 2009 WL 939848 (Conn. Super. Ct. Mar. 5, 2009) ........................................................18

*Republic of Colombia v. Diageo N. Am. Inc.*, 531 F. Supp. 2d 365 (E.D.N.Y. 2007)....................29

*Robert S. Weiss & Associates, Inc. v. Wiederlight*, 208 Conn. 525 (1988) .....................................16

*S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp.*, 84 F.3d 629 (2d Cir. 1996) .....................25

*Sanford Hall Agency, Inc. v. Dezanni*, CV044000576, 2004 WL 3090673 (Conn. Super. Ct. Dec. 2, 2004) ........................................................................................................16

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007) ...................................10

*Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 155 F. Supp. 2d 1 (S.D.N.Y. 2001) ........................................................................................................13

*United States v. Autuori*, 212 F.3d 105 (2d Cir. 2000) ..................................................25

*Votto v. Am. Car Rental*, 273 Conn. 478 (2005)...........................................................20

*Yellow Grp. LLC v. Uber Technologies, Inc.*, No. 12-CV-7967 (N.D. Ill. Sept. 30, 2013),
    ECF No. 67 .............................................................................................................22

*Yellow Grp. LLC v. Uber Technologies, Inc.*, No. 12-CV-7967, 2014 WL 3396055 (N.D.
    Ill. Jul. 10, 2014)............................................................................8, 10, 14, 15

## <u>STATUTES</u>

15 U.S.C. § 45(n) ...........................................................................................................21

18 U.S.C. § 1962 ............................................................................................................23

## <u>OTHER</u>

Fed. R. Civ. P. 8(a) ........................................................................................................13

Webster's New World College Dictionary (4th ed. 2008) ...............................................6

## INTRODUCTION

Plaintiffs do not provide any meaningful response to the arguments in Uber's Motion to Dismiss, and the Amended Complaint should be dismissed in its entirety.  Plaintiffs' Opposition only underscores that this lawsuit is nothing more than the effort of a group of transportation companies to maintain their entrenched interests by eliminating a perceived competitor.

First, with respect to their Lanham Act false advertising claim, Plaintiffs ignore their failure to allege actual misrepresentations by Uber.  In its Motion, Uber challenged Plaintiffs to identify anything in the Amended Complaint that could possibly be construed as a misrepresentation.  In their Opposition, instead of identifying any particular representation that they have alleged as misleading or false, Plaintiffs undermine their credibility by inventing misrepresentations that appear nowhere in the Amended Complaint.  Indeed, their citations to the Amended Complaint virtually never support what, in their Opposition, they claim to have alleged.  Plaintiffs similarly do not address their failure to plead that Uber's alleged false advertising proximately caused their harm and instead ask this Court to draw an untenable chain of inferences linking Uber's alleged false advertising to Plaintiffs' claimed harm.

Second, for their Lanham Act false association claim, Plaintiffs have failed to identify any allegations in the Amended Complaint that show they have any protectable interest in the marks, logos, and colors that their vehicles may bear.  In response to Uber's argument that the alleged appearance of one of Plaintiffs' taxicabs in response to a request placed using Uber cannot constitute an improper "use" of Plaintiffs' marks, Plaintiffs argue that they need not actually allege any "use" of those marks—an argument that is contrary to the statutory language and controlling case law.

Third, for their intentional interference claim based on alleged contracts with drivers, Plaintiffs fail to point to any allegations in the Amended Complaint identifying any particular contractual obligations that Uber interferes with, any tortious conduct by Uber, or any actual losses.  With respect to the same claim based on alleged contracts with credit card processors,

Plaintiffs are unable to identify any allegations that Uber was aware of the existence of such contracts, are unable to identify any allegations that Uber's interference with Plaintiffs' performance of those contracts was tortious, and make the nonsensical claim that *they* suffered actual losses based on the *third-party credit card processors* being deprived of revenues.

Fourth, Plaintiffs' CUTPA claim fails for the same reasons as their Lanham Act and tortious interference claims where the sum and substance of their CUTPA allegations are subsumed within those claims. Plaintiffs' CUTPA claim also fails for the independent reason that they do not establish any of the three prongs of the cigarette rule, including the substantial injury test, which the Connecticut Supreme Court is currently considering as the exclusive test for a violation of CUTPA. In all events, Plaintiffs' Opposition does nothing to redeem the Amended Complaint's failure to allege proximate cause under CUTPA.

Fifth, Plaintiffs attempt to save their RICO claims by again referring to allegations not found anywhere in the Amended Complaint. Plaintiffs' allegations of racketeering activity by Uber are based solely on the insufficient allegations of misrepresentations that underlie their Lanham Act claims, and Plaintiffs fail to recognize the difference between injury resulting from the underlying alleged racketeering activity and injury resulting from statutory RICO violations.

Sixth, Plaintiffs fail to rebut Uber's argument that this action should be stayed or dismissed under the doctrine of primary jurisdiction. The Connecticut Department of Transportation is actively evaluating whether current regulations apply to Uber, and there can be no real dispute that the issues raised in this lawsuit are best resolved through the regulatory and legislative process, rather than through litigation.

For all those reasons, Uber respectfully requests that the Court dismiss or stay Plaintiffs' Amended Complaint, and because Plaintiffs have already amended their complaint, that dismissal should be with prejudice.

**ARGUMENT**

I.   **Plaintiffs Fail To State A Lanham Act Claim For False Advertising.**

A.   **An Alleged Violation Of A Transportation Regulation Is Not A Viable False Advertising Claim Under *Dial A Car.***

Uber established in its opening brief that Plaintiffs' Lanham Act claims, to the extent they are based on alleged violations of transportation regulations, must be dismissed under the reasoning set forth in *Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484 (D.C. Cir. 1996). Mot. at 5–7.  Private parties may not invoke the Lanham Act to create a private cause of action for enforcement of local taxi regulations.  In their Opposition, Plaintiffs barely contest the fact that they cannot base a Lanham Act claim on these alleged regulatory violations.  Opp. at 6.[1] Instead, they argue that their claim is not about regulatory violations, but is merely about alleged misrepresentations.  Opp. at 4–5.

Plaintiffs' argument is contradicted by the allegations in their own pleading.  Count I of the Amended Complaint, for false advertising under the Lanham Act, contains a total of three paragraphs and focuses exclusively on alleged representations about whether Uber operates legally—the type of representations squarely precluded by *Dial A Car*.  The first paragraph of Count I reincorporates all the previous allegations in the Amended Complaint.  Am. Compl. ¶ 73.  The second states: "By representing to consumers in its commercial advertising and promotion that the Defendants' vehicles *are operating lawfully in Connecticut*, as stated above, the Defendants falsely describe facts and falsely represent facts, thereby misrepresenting the nature, characteristics and qualities of its services, in violation of" the Lanham Act.  *Id.* ¶ 74 (emphasis added).  And the third states: "The Defendants [sic] misrepresentations have caused

---

[1]   Plaintiffs ask that this Court apply *Dial A Car* only to Uber's alleged "misrepresentations regarding the legality of its services," and not to Uber's alleged misrepresentation of, for example, "being a 'ridesharing' service . . . ."  Opp. at 6.  Plaintiffs make no such allegation; indeed, the word "ridesharing" appears only once in the entire Amended Complaint, when quoting the title of an alleged Connecticut Insurance Department document.  Am. Compl. ¶ 45.  This Court should disregard that allegation and any other allegations found nowhere in the Amended Complaint.

harm to the Plaintiffs." *Id.* ¶ 75.  Plaintiffs Lanham Act claim, therefore, relies heavily on alleged representations about regulatory violations.[2]

Plaintiffs' extensive reliance on statutes and regulations to support their Lanham Act false advertising claim is prohibited.  Under *Dial A Car*, such a claim cannot be based on violations of transportation laws and regulations, as the so-called misrepresentations are not representations of which the truth can be ascertained by a trier of fact.  82 F.3d at 485  ("Because the [DC Taxicab] Commission itself has not resolved this disagreement, we find that [defendant] appellees' legal status as on-call providers of corporate account services within the District is a contested question of statutory interpretation rather than a clearly established fact.  Therefore, the statements at issue cannot form the basis of a Lanham Act claim.").

Plaintiffs attempt to distinguish *Dial A Car* from this case by emphasizing the fact that, in that case, "[t]he court noted that there was 'no dispute' that the D.C. Taxicab Commission had not addressed whether the defendants' provision of corporate services was in violation of the local ordinances. Opp. at 5–6 (quoting *Dial A Car*, 82 F.3d at 488.).  But the Amended Complaint contains no allegation of any regulatory body addressing whether Uber's alleged provision of services is in violation of any local ordinances; it contains only Plaintiffs' unilateral declarations of such violations.  Plaintiffs' attempt to distinguish *Dial A Car* fails, and Plaintiffs' false-advertising Lanham Act claim should be dismissed.

---

[2]   Indeed, most of Plaintiffs' Amended Complaint focuses on alleged lack of compliance with transportation laws.  Plaintiffs dedicate 21 paragraphs—a third of their so-called factual allegations of misrepresentations—to detailing purportedly applicable rules and regulations and Uber's alleged non-compliance.  Am. Compl. ¶¶ 22-26, 36, 39, 41-43, 51-60.  Even when Plaintiffs summarize their own allegations in opposition to Uber's Motion, nearly all those allegations are based on Uber's alleged non-compliance with some rule or regulation.  Opp. at 7-9 (summarizing allegations of Uber misrepresenting that it is "[o]perating [l]egally," has insurance coverage that "complies with all local regulations," and that its pricing is legal).  In short, virtually every misrepresentation alleged by Plaintiffs necessarily depends on the legality under Connecticut law of the challenged practices.

**B.     Even If This Action Were Distinguishable From *Dial A Car*, Plaintiffs Fail To Allege Uber Made Any Misrepresentations.**

Uber demonstrated in its opening motion that Plaintiffs failed to plead even a single actionable misrepresentation.  Mot. at 7–9.  Regardless of whether the pleading standard of Rule 8 applies or of Rule 9(b) applies, Plaintiffs must, at a minimum, state the content of the alleged misrepresentations.  *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 886 F. Supp. 377, 383 (S.D.N.Y. 1995), *aff'd sub nom. Bio Tech. Gen. Corp. v. Genentech, Inc.*, 267 F.3d 1325 (Fed. Cir. 2001).[3] Plaintiffs have failed to do so and instead attempt to create a straw man by claiming that Uber is demanding proof of their allegations.  Opp. at 6.  Not so.  Uber has argued only that Plaintiffs have failed to *plead* misrepresentations, and Plaintiffs have failed to establish otherwise.[4]

Instead of engaging with Uber's arguments, Plaintiffs muddy the waters by inventing allegations in their Opposition that simply are not in the Amended Complaint.  Plaintiffs first assert that they are alleging misrepresentations based on (1) Uber claiming it is a "ridesharing" service;[5] (2) "overstating the extent of its insurance coverage"; (3) "and/or its false portrayal of its relationships with and the background checks it performs on its drivers."  Opp. at 5.  But Plaintiffs do not provide a citation to the Amended Complaint to support any of those claims.  Nor can they.

---

[3]     As Uber noted in support of its Motion, Plaintiffs fail to satisfy the standards both of Rule 8 and Rule 9(b), regardless of which standard is proper.  Mot. at 7–9.

[4]     Regarding the one allegation that could potentially be construed to allege a misrepresentation—that Uber falsely claimed to "t[ake] steps to weed out unsuitable drivers," Am. Compl. ¶ 46, Plaintiffs entirely fail to address Uber's arguments regarding paragraph 46 of the Amended Complaint, Mot. at 7–8, which articulated why even that allegation is deficient. *See* Opp. at 6-9 (containing no reference to Uber's argument).  Their failure to respond should be construed as a concession.  *See, e.g., DeLeon v. Little*, 981 F. Supp. 728, 734 (D. Conn. 1997) (granting summary judgment in favor of defendant where plaintiff "appear[ed] to concede" defendant's argument); *see also Abrahams v. Young & Rubicam Inc.*, 79 F.3d 234, 237 n. 2 (2d Cir. 1996) (deeming plaintiff's claims waived where plaintiff failed to address the propriety of the district court's dismissal of certain claims in either opening or reply appellate briefs).

[5]     *See supra* n. 1.

In another section of their Opposition, Plaintiffs purport to identify a series of alleged misrepresentations through dubious citations to their Amended Complaint. Opp. at 7–9. As set forth below, Plaintiffs have failed to properly plead these misrepresentations as well.

### 1. Driver Partners

Citing a list of six paragraphs from the Amended Complaint, Plaintiffs argue that they adequately allege that Uber somehow misrepresents that drivers who use Uber are Uber's "partners." Opp. at 7 (citing Am. Compl. ¶¶ 32, 46, 60, 62, 68, 77). None of the statements in those paragraphs, or anywhere else in the Amended Complaint, support Plaintiffs' argument. As a threshold matter, Plaintiffs do not even allege what a true "partner" is; they merely allege that Uber *represents* that drivers are partners. They do not make any allegations, however, that support an inference that that alleged representation is false.[6]

The core factual allegation in Paragraph 32 of the Amended Complaint is that Uber owns no vehicles, certificates, permits, or plates, and employs no drivers. Am. Compl. ¶ 32. Nowhere do Plaintiffs allege that any of those are necessary to the existence of a "partner" relationship so as to render Uber's alleged representations false. The allegation in Paragraph 46 says nothing about whether drivers are indeed partners; it merely describes an alleged representation by Uber (which, by Plaintiffs' own allegations, predates Uber's existence in Connecticut by over a year) regarding the process by which Uber selects partners. Similarly, Paragraphs 60 and 62 only refer to partners in that the alleged partnering is "an illegal side deal," not that any representation of that partnering is false. Paragraphs 68 and 77 have nothing to do with representations of partnerships with *drivers* at all; in those paragraphs, Plaintiffs allege that Uber "falsely suggest[s] that [it] 'partners' with lawfully operating taxicab and livery *companies*" in support of the entirely separate false association claim. Am. Compl. ¶ 68 (emphasis added).

---

[6]   The word "partner" refers to "a person who takes part in some activity in common with another or others." Webster's New World College Dictionary 1050 (4th ed. 2008). That definition is sufficiently broad as to encompass the relationship Plaintiffs allege drivers to have with Uber.

Because none of those allegations or any other allegations in the Amended Complaint expressly allege or support a reasonable inference that Uber's alleged representation of drivers being partners somehow is false, they cannot support a false advertising claim.

### 2. Insurance Coverage

Plaintiffs' assertion that they adequately allege that Uber falsely represents its insurance coverage is also based on allegations that appear nowhere in the Amended Complaint. Opp. at 8. Plaintiffs point to, for example, Paragraph 44 of the Amended Complaint, which cites alleged statements by Uber that (1) "UberBLACK cars and SUVs [each are driven by] 'A professional chauffeur with a commercial license and commercial auto insurance" and (2) "all that is required to operate an [u]berX vehicle is: 'a personal license and personal auto insurance.'" Am. Compl. ¶ 44. Plaintiffs do not allege anywhere that, in reality, cars and SUVs used on the UberBLACK platform are *not* driven by professional chauffeurs with commercial licenses and commercial auto insurance, or that drivers who use uberX are *not* operating with their personal licenses and personal auto insurance. Nevertheless, Plaintiffs recast those two allegations in their Opposition, distorting them somehow to mean that "Uber markets itself by stating that it provides corporate insurance, . . . and that it provides up to a $1 million per-incident insurance policy." Opp. at 8. But that allegation is nowhere to be found in the Amended Complaint.[7] Plaintiffs' Opposition relies on the notion that Uber misrepresents that "it has no insurable interest in its drivers." *Id.* However, once again that allegation can found nowhere in the Amended Complaint. There similarly is no allegation in the Amended Complaint that "Uber has no insurable interest in its drivers." *Id.* In short, Plaintiffs never alleged the purported misrepresentations invoked in Plaintiffs' Opposition, and for that reason alone, they cannot support a false advertising claim.

Even if the Amended Complaint contained the allegations that Plaintiffs wishes it did, Plaintiffs do not dispute the *existence* of any insurance policies. *See, e.g.*, Am. Compl. ¶ 44

---

[7]   The only mention of a "$1 million per-incident insurance policy" is with respect to Lyft, which is no longer a party to this case. Am. Compl. ¶ 44.

(alleging that "both of the Defendants have liability policies provided by James River Insurance Co."). Rather, Plaintiffs' true gripe is the hypothetical possibility that "it [would be] nearly impossible to collect on [any of the defendant companies'] policies because these companies own no cars, but also have myriad other exclusions and exceptions preventing coverage in most scenarios." *Id.*[8] Even that, however, does not amount to a sufficient allegation of a misrepresentation by Uber. The falsity of those alleged representations, under Plaintiffs' logic, is purely speculative, as it would depend on the denial of insurance claims. But Plaintiffs do not allege that any insurance claims ever have been denied so as to render those representations false at the time they were made. "Post facto evidence cannot make actionable true claims which later become false." *Alpo Petfoods, Inc. v. Ralston Purina Co.*, 720 F. Supp. 194, 205 n. 12 (D.D.C. 1989), *aff'd in part, rev'd in part*, 913 F.2d 958 (D.C. Cir. 1990) *and modified*, No. CIV. A. 86-2728 (SS), 1991 WL 25793 (D.D.C. Feb. 8, 1991); *see also McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir. 1991) (citing *Alpo*, 720 F. Supp. at 213).

Because (1) Plaintiffs do not actually allege Uber made any representations that Uber itself provides insurance; (2) the *existence* of the insurance referenced in Uber's alleged representations is not disputed; and (3) Plaintiffs' arguments based on representations not actually alleged in the Amended Complaint are purely speculative, this Court should not allow Plaintiffs' false advertising claim to proceed based on allegations about representations of insurance coverage.

---

[8] Plaintiffs also argue, citing *Yellow Grp. LLC v. Uber Technologies, Inc.*, No. 12-CV-7967, 2014 WL 3396055, at *4 (N.D. Ill. Jul. 10, 2014), that the scope of this coverage (which, again, is not raised anywhere with respect to Uber in the Amended Complaint) is at least "subject to reasonable debate." Opp. at 8 n. 11. However, precisely as Uber argued in its Motion here, the *Yellow Grp.* court agreed with Uber that the plaintiffs in that case "d[id] not actually allege" that Uber's alleged statement regarding insurance coverage was false. 2014 WL 3396055, at *4. "Instead, [the] [p]laintiffs allege[d] merely that Uber does not provide the insurance, and that uberX drivers do not have commercial automobile insurance." *Id.*

### 3.    Safety

Plaintiffs attempt a similar sleight of hand with the summary of their vague "Safety" allegations in their Opposition.  Opp. at 8.  There, they claim to have alleged Uber made misrepresentations about "extensive criminal background checks, driving histories, and vehicle inspections," *id.*, when, in reality, the only representation actually alleged in the Amended Complaint is that "Uber tells its customers it inspects these vehicles."  Am. Compl. ¶ 42.  But Plaintiffs fail to allege that, in reality, Uber does not inspect any vehicles, and without that allegation, Plaintiffs' pleading contains only a representation, not a *mis*representation.  And as with the insurance-related representations above, the mere possibility that Uber's "claims of safety," Opp. at 8, end up being false at some point in the future does not make those so-called claims false at the time they were made.  *Alpo*, 720 F. Supp. at 205 n. 12.

### 4.    Pricing

Citing Paragraphs 30, 58–60 of the Amended Complaint, Plaintiffs claim that Uber misrepresents "to consumers that its pricing is as easy as choosing whatever vehicle the consumer wants based on which vehicles are nearby."  Opp. at 8.  Once again, that allegation is not present anywhere in the Amended Complaint.  Paragraph 30 only includes allegations of how the Uber smartphone application works; it does not contain any allegations of any representations by Uber regarding the application.  Am. Compl. ¶ 30.  Paragraph 58 merely includes allegations of the *existence* of "'surge' pricing," *id.* ¶ 58, without including any allegations of *representations* regarding surge pricing, while Paragraphs 59–60 comprise over 6 pages of descriptions of local taxicab laws, once again without any allegations of representations, false or otherwise, by Uber regarding pricing, *id.* ¶¶ 59–60.  Contrary to Plaintiffs' assertion in their Opposition, the Amended Complaint contains no allegations of "misrepresentations as to fees not readily ascertainable."[9]  Opp. at 9.  For that reason alone, this Court should not allow

---

[9]    Further in support of their argument, Plaintiffs cite two cases involving Uber from other jurisdictions.  The first, *Ehret v. Uber Technologies, Inc.*, No. C-14-0113 EMC, 2014 WL 4640170 (N.D. Cal. Sept. 17, 2014), exclusively involves allegations of representations made in relation to the uberTAXI option, which Plaintiffs repeatedly acknowledge is not available in

Plaintiffs' false advertising claim to proceed based on nonexistent allegations of Uber misrepresenting that its pricing is "easy."

But even if Plaintiffs had alleged in the Amended Complaint that Uber misrepresented that its pricing was "easy," those allegations would be "'[s]ubjective claims about products, which cannot be proven either true or false.'" *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007) (quoting *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995)) (modification in quoted material) (internal quotation marks omitted). The so-called easiness of Uber's alleged pricing is not an objective fact that lends itself to proof or disproof, and so it cannot form the basis of a false advertising claim under the Lanham Act. *Id.*

Finally, Plaintiffs cite *Yellow Grp*, 2014 WL 3396055 (sustaining only Lanham Act claims based on alleged operation of uberTAXI option in Chicago). Opp. at 9. However, there, the court dismissed large portions of a complaint against Uber. Plaintiffs make no effort to explain how the few allegations in that case that survived—all of which involved the uberTAXI request option not available in Connecticut—are in any way similar to the allegations in the Amended Complaint here. *Id.*[10]

In sum, Uber's Motion challenged Plaintiffs to identify anything in the Amended Complaint that could possibly be construed as a misrepresentation by Uber. Mot. at 7–9.

---

Connecticut. Am. Compl. ¶¶ 29, 37, 63. The second, *Manzo v. Uber Technologies, Inc.*, 13 C 2407, 2014 WL 3495401 (N.D. Ill. July 14, 2014), involves two distinct disputes, neither of which are present here for the same reasons: (1) a taxicab driver's disputing Uber's alleged misrepresentations regarding the uberTAXI option; and (2) a livery driver's disputing Uber's alleged representations regarding the pricing of the UberBLACK option. The former is inapplicable here due to the lack of an uberTAXI request option in Connecticut, while the latter is inapplicable because Plaintiffs' Amended Complaint does not include any allegations regarding Uber's representation of UberBLACK pricing.

[10] Nor can Plaintiffs demonstrate the sufficiency of their "safety and pricing misrepresentations" by pointing to the existence of a settlement of an entirely different action against Lyft that they purport contained "roughly identical" allegations. Opp. at 9. It is axiomatic under the Federal Rules of Evidence that even a settlement with the named defendant, nevertheless a non-party like Lyft, cannot be used to prove ultimate liability, much less the adequacy of a complaint's allegations. *See* Fed. R. Evid. 408.

10

Plaintiffs failed the challenge, having not identified any particular representation that they have alleged is misleading or false, and relying on allegations that are nonexistent and in any event are unavailing.  Plaintiffs' Lanham Act false advertising claim should be dismissed.

###### C.    Plaintiffs Fail To Plead Proximate Causation.

Plaintiffs fail to satisfy the requirement they themselves articulate in their Opposition—that each one of them must "show economic or reputational injury flowing directly from 'the deception wrought by the defendant's advertising; and that that occurs when the deception of consumers causes them to withhold trade from the plaintiff.'"  Opp. at 10 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1391 (2014)).  Instead, they ask this Court to make implausible inferences based on the deficient allegations in the Amended Complaint.

Plaintiffs liken the allegations in this case to those in *Lexmark*, but Plaintiffs fail to address the numerous differences between the facts as alleged in that case and those alleged here. Opp. at 9–11.  In that case, Static Control alleged injury under the Lanham Act resulting from the Lexmark's allegedly disparaging statements regarding Static Control's products and Static Control's customers.  *Lexmark*, 134 S. Ct. at 1384.  It was Static Control's corporate customers, not Static Control itself, that were in direct competition with Lexmark.  *Id.*  Nevertheless, the Supreme Court held that Static Control sufficiently alleged that the Lexmark's representations proximately caused Static Control's injury.  *Id.* at 1395.

Here, unlike in *Lexmark*, Plaintiffs do not allege that Uber has directly "cast[] aspersions on [their] business[es]," such that Plaintiffs' injuries "flow[] directly from the audience's belief in the disparaging statements."  *Id.* at 1393.  Plaintiffs fail to allege that Uber has said anything at all about Plaintiffs.  Although Plaintiffs cite Paragraphs 34, 61–68, and 81 in support of their assertion that Uber's alleged "misrepresentations are used in comparisons between Uber's products and taxicabs," Opp. at 11, as with the other allegations of misrepresentations that Plaintiffs debuted in their Opposition, these paragraphs fail to allege Uber compared or

disparaged Plaintiffs' services.  Paragraph 34, for example, only speculates as to Uber's motives, while Paragraphs 61–68 and 81 only reference Uber's alleged failure to comply with laws and its alleged false association with Plaintiffs.  Unlike the "relatively unique circumstances" in *Lexmark*, 134 S. Ct. at 1394, where allegations that Lexmark directly and publicly disparaged Static Control's products were sufficient despite the fact that the parties were not direct competitors, Plaintiffs here make no factual allegation that Uber has made any representations regarding their services.

Further, unlike in *Lexmark* where the disparagement allowed for a reasonable inference that injuries flowed directly from those statements, Plaintiffs have shown nothing that allows for a reasonable inference that Uber's alleged "misrepresentations about its services or the services of Plaintiffs are directly swaying customers away from properly licensed taxicabs and livery vehicles."  Opp. at 11.  Plaintiffs have made no effort to connect any allegations of misrepresentations to their alleged injury.  They have alleged no facts regarding any "closed market," *id.*, or that the (inadequately) alleged misrepresentations, as opposed to the myriad other factors that may influence consumers, caused the alleged reduction of sales to Plaintiffs.[11] Therefore, unlike the counterclaim plaintiffs in *Lexmark*, they have failed to allege that Uber's alleged statements proximately caused their injuries, and this Court should dismiss Plaintiffs' false advertising claim under the Lanham Act.

## II.  Plaintiffs Fail To State A Lanham Act Claim For False Association.

Regarding their Lanham Act false association claim, Plaintiffs again use their Opposition to fabricate allegations not found in their Amended Complaint.  New assertions in their

---

[11]  Further, it is unclear from the allegations in the Amended Complaint that Plaintiffs receive "sales" (i.e., taxi and livery fares) directly.  Plaintiffs make repeated reference to "leased vehicles" and "lease revenues," *e.g.*, Opp. at 9, 26, 27, suggesting that Plaintiffs are not the "competitor[s] forced out of business by a defendant's false advertising," but are more similarly situated to "the competitor's landlord" that the Court in *Lexmark* suggested would not be able to sue for its losses.  134 S. Ct. at 1391.

Opposition do not change the fact that the Amended Complaint does not mention recognizable trademarks and fails to allege Uber's "use" of any of Plaintiffs' marks.

### A.     Plaintiffs Fail To Allege They Have Recognizable Trademarks.

Apparently recognizing that they have omitted a necessary element of a Lanham Act false association claim, and with no supporting authority other than misquoted passages from the statute, Plaintiffs argue that the existence of marks is "reasonably inferred from the facts in the Complaint." *Id.* at 15.  The Amended Complaint does not include a single reference to, or even suggests the existence of, any "recognizable logos, designs, [or] color schemes."  Indeed, the words "trademark," "mark," or "logo," do not appear anywhere in the Amended Complaint, and Plaintiffs must provide Uber with notice of the basis of their claim.  Fed. R. Civ. P. 8(a).  The Court should dismiss Plaintiffs' claim for their failure to identify a single protectable mark, logo, or any other designation, belonging to any, let alone all, of the 15 Plaintiffs.  *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 155 F. Supp. 2d 1, 22 (S.D.N.Y. 2001) *aff'd in part and remanded*, 277 F.3d 253 (2d Cir. 2002) (dismissing claim under § 43(a)(1) of the Lanham Act where plaintiff was "unable to establish the existence of its own valid mark").

### B.     Plaintiffs Fail To Allege That Uber Used Their Trademarks.

Plaintiffs also fail to allege that Uber actually "used" their marks as that term is defined under the Lanham Act.  Instead, rather than clarifying their claim, Plaintiffs contradict themselves and inappropriately conflate their false association claim with their false advertising claim.

For example, though Plaintiffs assert that their false association claim "differs from the typical scenario of an infringer passing off another's mark as his own in a manner likely to cause confusion as to the source of the goods or services," Opp. at 14, that is precisely what Plaintiffs assert.  *Id.* ("Uber is using Plaintiffs' marks to refer to Uber's own taxi services.").  Plaintiffs also argue that they are not required to allege that *their* marks have been used in commerce, *id.* at 16, even though they simultaneously accuse Uber of doing precisely that.  *Id.* at 17 (describing

false affiliation arising "when a customer chooses an Uber vehicle that is a taxicab or livery vehicle driven by a Plaintiffs' driver with its identifiable authority, plate, color scheme, design, and logo").

In any case, the claim that Plaintiffs attempted to allege in the Amended Complaint, and the new one they describe in their Opposition, should both be dismissed.  If the claim is based on Uber's alleged "use" of their marks due to the arrival of Plaintiffs' vehicles in response to a request through Uber's application, then it must fail because, as detailed in support of Uber's Motion, that does not constitute a "use" by Uber.  By the time the vehicle has arrived and Plaintiffs' marks appear, the rider's request has already been made and accepted, and so Plaintiffs' marks were not used by Uber in the provision of services.  Mot. at 13–15.  If the claim is based on other allegedly "'fraudulent misrepresentations to Connecticut consumers about fares in the Defendants' vehicles and false claims of an association between the Defendants and the Plaintiffs,'" Opp. at 17 (quoting Am. Compl. ¶ 88), it still fails because it is either entirely duplicative of their insufficient false advertising claim, or because Plaintiffs do not even attempt to identify any "false claims of association" beyond that which they claim arise from Uber's so-called "use" of their marks described above.  Therefore, Plaintiffs' false association claim should be dismissed.

Plaintiffs also cite *Yellow Grp.*, 2014 WL 3396055, wherein the court sustained the plaintiffs' false association claim against Uber based on what Plaintiffs characterize as "arguments similar to the ones made by Plaintiffs" here.  Opp. at 18.  Plaintiffs, however, ignore their own allegation that the uberTAXI option is not available in Connecticut, Am. Compl. ¶ 29, while it is available in Chicago, the city at issue in *Yellow Grp*.  The so-called "use" here of Plaintiffs' marks (which, again, are not identified anywhere in the Amended Complaint) is under circumstances entirely different from those in *Yellow Grp*.  In that case, the plaintiff alleged Uber allowed users to request taxicabs, such that "the very nature of its service" was alleged to be likely to cause confusion as to the association between Uber and the plaintiffs.  *Yellow Grp.*, 2014 WL 3396055 at *5.  The court only found that *"[t]aken together*, . . . these allegations"

14

were "sufficient to survive a motion to dismiss. *Id.* (emphasis added). Taken together here, however, Plaintiffs' allegations are insufficient because they acknowledge that uberTAXI is not available in Connecticut, such that the holding of *Yellow Grp.* does not apply.

### III. Plaintiffs Fail To State A Claim For Intentional Interference With Contractual Relationships.

Plaintiffs attempt to allege that Uber interferes with relationships (1) between Plaintiffs and their taxicab drivers by inducing the drivers to violate some undisclosed terms of the contracts between Plaintiffs and the drivers, and (2) between Plaintiffs and credit card processing companies by depriving those companies of processing fees that Plaintiffs allegedly are obligated to provide to them.[12]  Opp. at 18; Am. Compl. ¶¶ 84–86.  Neither states a valid claim.

#### A.     Plaintiffs Fail To Allege Tortious Conduct.

Plaintiffs do not adequately address any of Uber's arguments regarding Plaintiffs' failure to allege tortious conduct.  Opp. at 21–23.  They merely parrot the allegations made in the Amended Complaint and summarily characterize Uber's alleged conduct as "improper."  *Id.*  As Uber discussed at length in support of its Motion, that is insufficient.  Mot. at 21–24.  "[Not e]very act of interference is ... tortious."  *Downes-Patterson Corp. v. First Nat'l Supermarkets, Inc.*, 64 Conn. App. 417, 429 (2001) (quoting *Golembeski v. Metichewan Grange No. 190*, 20 Conn. App. 699, 703–04 (1990)).  "At a minimum, a plaintiff must plead and prove at least some improper motive or improper means . . . beyond the fact of the interference itself."  *Bacarella Transp. Servs., Inc. v. Rightway Logistics, LLC*, 3:08-CV-1487(PCD), 2009 WL 322871, at *3 (D. Conn. Feb. 10, 2009).

Plaintiffs respond to Uber's arguments by pointing to allegations that are no more than an insufficient recitation of the bare elements of a claim for tortious interference.  For example, Plaintiffs point to allegations that Uber induces drivers "to operate illegally and in breach of their

---

[12]   This latter type of alleged interference can apply only to taxicab drivers using Uber while operating one of Plaintiffs' taxicabs, because Plaintiffs allege only that such credit card equipment is installed in their taxicabs.  *See* Am. Compl. ¶¶ 69-72.

contracts" and "to make unauthorized side deals with Uber." Opp. at 24. Those allegations, at best, rely on legal conclusions in place of plausible allegations of fact. At no point do Plaintiffs plead facts demonstrating that Uber's alleged interference was in fact tortious as is required to state a claim.

Similarly, in response to Uber's argument that, under Plaintiffs' allegations, Uber is acting pursuant to non-tortious market-driven motives, Mot. at 23, Plaintiffs argue that gaining an economic advantage to Plaintiffs' financial detriment is an improper motive. Opp. at 25. If that were the law, every company competing with another, seeking only economic advantage, could sue competitors for tortious interference. In reality, that is precisely the type of market-driven motive that Connecticut courts have held is proper, even if it is to the detriment of another. *Sanford Hall Agency, Inc. v. Dezanni*, CV044000576, 2004 WL 3090673, at *7 (Conn. Super. Ct. Dec. 2, 2004) (dismissing tortious interference claim because although defendant interfered with contract by hiring plaintiff's employee, plaintiff failed to demonstrate malice); *see also Robert S. Weiss & Associates, Inc. v. Wiederlight*, 208 Conn. 525, 536 (1988) (finding that defendant's knowingly encouraging and inducing an employee to breach his contract with the plaintiff did not constitute tortious conduct).[13]

Plaintiffs have not alleged anything beyond general market-driven behavior and have failed to allege Uber maliciously or intentionally interfered with their contracts. Their intentional interference claim should be dismissed.

### B. Plaintiffs Fail To Allege Actual Loss.

Uber argued in its Motion that Plaintiffs failed to plead actual loss, a required element of their tortious interference claim. Mot. at 27–28. In their Opposition, Plaintiffs first point to "lost

---

[13]   Plaintiffs' reliance on *Bhatia v. Debek*, 287 Conn. 397, 420 (2008) to support their argument that "a reckless indifference to the rights of others or an intentional and wanton violation of those rights" can constitute a malicious act is misplaced. *Bhatia* had nothing to do with a claim of intentional interference; it was a case involving a claim of malicious prosecution, where the court applied a "reckless indifference" standard when determining whether to award punitive damages to the plaintiff, not to determine whether the defendant's interference with the plaintiff's contracts—no such allegations were at issue—was malicious or improper. *Id.*

lease revenues directly caused by the significant diminution of consumer taxi and livery trip activity experienced by the Plaintiffs' drivers because of" Uber.  Opp. at 27.  But that allegation cannot have anything to do with either of the two types of interference in which Plaintiffs allege Uber to engage—the first being with drivers' contractual obligation to Plaintiffs that is, as explained below, not adequately disclosed, and the second being with Plaintiffs' obligations to third-party credit card processors to pay fees.  Am. Compl. ¶¶ 32–33, 69–72.  Indeed, drivers leasing and operating Plaintiffs' vehicles is *necessary* to both of Plaintiffs' theories, so it is nonsensical for Plaintiffs to assert that they somehow lose lease revenues by drivers' concurrently using Uber.

Referring only to Paragraph 86, which consists of a bare allegation that Plaintiffs suffered "substantial harm," Plaintiffs make the incredible claim that the deprivation of revenues to *credit card processors* causes actual losses to *Plaintiffs*.  Opp. at 27.  Plaintiffs do not explain how that is possible.  Plaintiffs merely argue that the processors "will likely not contract with the Plaintiffs if they know that their contractually-owed fees are regularly being diverted."  *Id.*  But the mere possibility of a discontinued contractual relationship, where no actual loss has yet occurred, however, is not sufficient to state a tortious interference claim.  "[I]t is an essential element of the tort of unlawful interference with business relations that the plaintiff suffered actual loss." *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 33 (2000) (citing *Herman v. Endriss*, 187 Conn. 374, 377 (1982)).  Because Plaintiffs fail to allege that they have suffered some actual loss as a result of Uber's alleged inducement of drivers to operate in violation their contracts with Plaintiffs, or as a result of Uber's allegedly preventing third party credit card processors from collecting fees, this Court should dismiss Plaintiffs' claim.

### C.       Plaintiffs Fail To Allege That Uber's Alleged Interference Was Intentional.

In support of its Motion, Uber argued that the absence of the uberTAXI request option, *see* Am. Compl. ¶ 37, which would have enabled users to request the services of drivers operating *taxicabs*, in Connecticut negates any reasonable inference that Uber intended to

interfere with Plaintiffs' contracts, and instead supports only an inference that Uber did *not* intend to do so.  Plaintiffs' response to that argument is internally inconsistent.  Opp. at 22–23.  Plaintiffs claim that, even though they, themselves, allege that actual taxicabs cannot be requested through Uber in Connecticut, "all vehicles [requested through Uber in Connecticut] in substance operate as taxicabs" such that Plaintiffs' allegations regarding their contracts with credit card processors are applicable to all vehicles requested through Uber in Connecticut, *including vehicles that are not connected in any way to Plaintiffs.  Id.*  That Uber can, according to Plaintiffs' allegations, encourage consumers to use its software to request transportation from vehicles unaffiliated with Plaintiffs, while at the same time *intending* to interfere with the performance of contracts that apply *only* to Plaintiffs' actual taxicabs, defies logic, and thus cannot support Plaintiffs' claim.  Therefore, this Court should dismiss it.

>    **D.    Plaintiffs Fail To Adequately Allege The Existence Of Contracts Between Plaintiffs And Drivers And Uber's Knowledge Of Contracts Between Plaintiffs And Credit Card Processors.**

In support of its Motion, Uber argued that Plaintiffs fail to adequately allege the existence of contracts between Plaintiffs and drivers or that Uber had knowledge of those contracts.  Mot. at 25–26; Am. Compl. ¶ 32.  Plaintiffs' response is unpersuasive.

First, Plaintiffs do not adequately allege the nature of their alleged contracts with drivers or the obligations of the contracting parties.  All Plaintiffs provide are vague assertions of some contract that Uber allegedly induces drivers to violate.  Am. Compl. ¶ 32.  In response to Uber's argument, Plaintiffs point to an unpublished decision from the Judicial District of Waterbury in which the court found that the plaintiffs adequately alleged the existence of contractual and beneficial relationships.  Opp. at 19–20 (citing *Raymond Rd. Associates, LLC v. Taubman Centers, Inc.*, No. X02UWYCV075007876S, 2009 WL 939848, at *5 (Conn. Super. Ct. Mar. 5, 2009) (unpublished)).  In that case, the plaintiffs, developers of a shopping mall, alleged that the defendants, developers of a competing shopping mall, tortiously interfered with the plaintiffs' contractual relationships with potential mall tenants by trying to prevent those potential tenants

from leasing space in the plaintiffs' mall. *Id.* at *1. Unlike those allegations, which provided sufficient detail to put the defendants on notice of (1) the parties to the relationships allegedly interfered and (2) the responsibilities of and benefits afforded to the parties of the relationships, here Plaintiffs only state in the most vague terms that some relationships exist between them and drivers. Am. Compl. ¶¶ 32, 33, 85. As Uber argued in support of its Motion, that is insufficient, and therefore, this Court should dismiss Plaintiffs' claim as it relates to Plaintiffs' alleged relationships with drivers.

Second, in response to Uber's argument that Plaintiffs fail to allege Uber's knowledge of their contracts with credit card processors, Plaintiffs merely cite allegations about Plaintiffs' allegedly "legal billing systems" and the contracts themselves, but they include no mention of Uber having any *knowledge* of any contracts Plaintiffs may have with credit card processors, Opp. at 20 (citing Am. Compl. ¶¶ 32, 69–70), as is required to state a claim, Mot. at 25–26. Plaintiffs point to no other allegations that expressly state or support an inference that Uber had knowledge of Plaintiffs' alleged contracts with credit card processors. Therefore, this Court should dismiss Plaintiffs' claim as it relates to Plaintiffs' alleged relationships with credit card processors.

## IV.    Plaintiffs Fail To State A Claim Under CUTPA.

In support of its Motion, Uber argued that Plaintiffs failed to state a claim under the CUTPA because (1) Plaintiffs failed to state Lanham Act claims, (2) Plaintiffs failed to satisfy the heightened pleading requirements of Rule 9(b), (3) the "substantial injury" requirement should apply and Plaintiffs have not satisfied it, (4) Plaintiffs also have failed to satisfy the "cigarette rule," and (5) Plaintiffs have failed to allege that the alleged practices proximately caused Plaintiffs' injuries. Mot. at 16–20. Plaintiffs fail to rebut these arguments in their Opposition.

19

### A.    Plaintiffs' CUTPA Claim Should Be Dismissed For Failure to Plead Their Lanham Act and Tortious Interference Claims.

Plaintiffs contend that their Lanham Act and tortious interference claims support their CUTPA claim.  Opp. at 29–30.  However, given that Plaintiffs' Lanham Act and tortious interference claims must be dismissed for the reasons given above, their CUTPA claim cannot be predicated on them.

Further, Plaintiffs claim that they have satisfied the heightened pleading requirements of Rule 9(b), but they offer no substantive arguments in support of that assertion.[14]  They provide no argument, no citations, and no analysis.  Their CUTPA claim should be dismissed on that ground as well.

### B.    Plaintiffs Fail To Satisfy The Substantial Injury Requirement.

Plaintiffs start by accusing Uber of overstating the extent to which the viability of the cigarette rule has been questioned by Connecticut courts.  Opp. at 30–31.  But courts have consistently questioned the rule's continued viability.  *See Am. Car Rental, Inc. v. Commissioner of Consumer Protection*, 273 Conn. 296, 305 n. 6 (2005) ("[A] serious question exists concerning whether the cigarette rule remains the guiding rule utilized by the federal trade commission."); *Votto v. Am. Car Rental*, 273 Conn. 478, 484 n. 3 (2005) ("We note that we recently have recognized that a question exists as to whether the cigarette rule remains the guiding rule utilized by the Federal Trade Commission."); *Glazer v. Dress Barn, Inc.*, 274 Conn. 33, 82 n. 34 (2005) ("[A] serious question exists concerning whether the cigarette rule remains the guiding rule utilized under federal law.").  Here, given that the Connecticut Supreme Court is currently considering the question of which requirement applies,[15] it would be prudent for this Court to reserve ruling until the Connecticut Supreme Court has rendered a decision, particularly given the widespread public policy concerns that Plaintiffs repeatedly invoke.

---

[14]   Plaintiffs merely point to § III.A.2 of their Opposition, which itself contains no mention of Rule 9(b).

[15]   *See* Mot. at 17–18.  Oral argument was held in the appeal of *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208 (2008) on January 13, 2015.

Assuming the cigarette rule is no longer applicable, the "substantial injury" test would apply, and Plaintiffs cannot satisfy it. Plaintiffs argue in their Opposition that, "[v]iewing the Complaint as a cohesive document, and reading it as a whole rather than line by line," substantial injury is "implied from Uber's countless misrepresentations and unfair practices." Opp. at 31. Plaintiffs, in effect, are asking the Court to eschew the requirement under Rule 8(a) that a pleading contain a "short and plain statement of the claim" that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Plaintiffs have failed to meet that fundamental requirement, as "implications" are simply not well-pleaded facts stating a plausible claim.

Moreover, Plaintiffs also fail to allege any facts demonstrating that the alleged injury was "not reasonably avoidable by consumers themselves" nor "outweighed by countervailing benefits to consumers or competition." 15 U.S.C. § 45(n). In their Opposition, Plaintiffs try to rewrite their allegations to address that deficiency. Even if that was appropriate, their efforts would fail for the reason that Plaintiffs rely on academic arguments as to the countervailing benefits in place of factual allegations.

Therefore, this Court should dismiss Plaintiffs' claim for their failure to satisfy the "substantial injury" test.

### C.   Plaintiffs Fail To Allege Conduct Sufficient To Allege A CUTPA Violation Under The Cigarette Rule.

In support of its Motion, Uber explained that, even if the "cigarette rule" still applied, Plaintiffs have failed to adequately plead any of its three prongs. Mot. at 19–20. Regarding the first prong, Uber noted that Plaintiffs failed to plausibly allege that Uber's conduct offends established public policy, particularly because the policy is subject to reasonable debate. *Id.* at 19. In response, Plaintiffs make a vague reference to a "general consensus" regarding a regulatory framework for taxicabs and livery vehicles that support a "broader public policy" of public safety and fair competition. Opp. at 32. They then make reference to the laundry list of statutes and regulations included in their Amended Complaint, suggesting that allegations of

Uber's non-compliance with those statutes and regulations imply that Uber's conduct offends public policy. *Id.* That is not, however, a reasonable inference to draw.

In addition to the fact that those statutes' applicability to a technology company like Uber is far from established, Mot. at 6–7, Plaintiffs' reference to other litigation involving Uber and similarly situated plaintiffs is a red herring. Plaintiffs are not attempting to advance the public interest through this litigation. They, like the plaintiffs in the lawsuits they cite, are *private* taxicab companies. *See, e.g.*, Opp. at 4 n. 4, 6 n. 6, 8 n. 11. And in every single case where preliminary injunctive relief was sought by those plaintiffs, U.S. courts have declined to enjoin Uber's operations. *See, e.g.*, Order Denying Mot. for Preliminary Injunction at 2, *Yellow Grp. LLC v. Uber Technologies, Inc.*, No. 12-CV-7967 (N.D. Ill. Sept. 30, 2013), ECF No. 67 (declining to enjoin Uber's alleged conduct as it would not be in the public interest); *see also Checker Cab Philadelphia, Inc. v. Uber Technologies, Inc.*, No. CIV.A. 14-7265, 2015 WL 966284, at *4 (E.D. Pa. Mar. 3, 2015) ("[W]ith respect to the injunctive relief Plaintiffs seek for their state unfair competition claim, this Court finds that these issues are best left to the state and local legislative bodies and regulatory authorities charged with implementing and enforcing the ordinances and regulations that Plaintiffs here seek to enforce by way of private litigation.") (citing Order Denying Mot. for Temporary Restraining Order, *Greater Houston Transp. Co. v. Uber Technologies, Inc.*, No. 14-cv-00941 (S.D. Tex. Apr. 21, 2014)). The fact that private parties have sued Uber in attempts to protect their private interests does nothing to support the notion that Uber's actions violate public policy.

Plaintiffs employ similar reasoning with respect to the second prong—that Uber's alleged conduct cannot plausibly be unfair, immoral, or deceptive. Opp. at 34. Plaintiffs invoke "broader understandings reflective of what is needed for the safety of the public," *id.*, but Plaintiffs do not provide any plausible facts supporting the allegation that any of Uber's alleged conduct amounts to unfair, immoral, or deceptive conduct. Therefore, Plaintiffs fail to adequately allege the second prong required by the cigarette rule. Finally, Plaintiffs cannot

22

satisfy the third prong of the rule, which requires "substantial injury," for the reasons described in the preceding section.

**D.     Plaintiffs Fail To Plausibly Plead That Uber's Allegedly Unfair Conduct Under CUTPA Proximately Caused Their Alleged Injuries.**

In their Opposition, Plaintiffs contend that "they have met the pleading requirements for proximate cause" for precisely the same reasons as they set forth in § III.A.3 of their Opposition relating to proximate cause and the Lanham Act.  Opp. at 45.  While Uber, in support of its Motion similarly incorporated many of its arguments regarding Plaintiffs' failure to allege proximate cause in their Lanham Act claims, Uber did discuss CUTPA-specific authority as well.  Mot. at 20–21.  Plaintiffs make no attempt to address any of that authority, Opp. at 34, and so for that reason alone, this Court should dismiss Plaintiffs' CUTPA claim regardless of how it disposes of Plaintiffs' Lanham Act claim.

**V.     Plaintiffs Fail To State Claims For Violations Of RICO**

In essence, Plaintiffs' RICO claims all are based on the same type of alleged racketeering activity, wire fraud.  Opp. at 35.  Plaintiffs claim that that wire fraud is based on exactly the same misrepresentations that Plaintiffs allege in support of their Lanham Act claims.  *Id.* at 36–37 (referencing allegations that Uber misrepresents that its legality, safety, insurance coverage, relationships with drivers, and association with companies such as Plaintiffs).  Plaintiffs then contend that Uber engages in that alleged racketeering activity such that it violates each of the three RICO subsections, 18 U.S.C. §§ 1962(a), (b), and (c).  *Id.* at 40–49.  Similar to the strategy Plaintiffs employed in their Opposition with respect to their Lanham Act allegations, Plaintiffs invent allegations that do not appear in the Amended Complaint in an attempt to save their deficient RICO claims.  The allegations of predicate wire fraud are based on either nonexistent or deficient allegations of misrepresentations, and the allegations of the three distinct RICO subsection violations go beyond the limitations defined by well-settled case law on RICO claims.

A.      **Plaintiffs Fail To Allege A Pattern Of Racketeering Activity Sufficient To Satisfy Rule 9(b).**

Plaintiffs apparently rely on the same alleged misrepresentations for their RICO claim as they do for their Lanham Act claims.  *Id.* at 36–37.  Plaintiffs contend in their Opposition that Uber "makes . . . misrepresentations to deceive its clients into believing they are being charged legal fares, that Uber has taken legally required steps to assure their safety, and that Uber associates with authorized, Connecticut taxicab and livery companies," *id.* at 36, in addition to allegedly "mak[ing] misrepresentations about the extent of its insurance coverage and its relationships with its drivers."  As detailed above, some of the alleged misrepresentations, such as those regarding insurance coverage, are not even present in the Amended Complaint.  For others, Plaintiffs do not adequately allege that any of these so-called misrepresentations are, in fact, misrepresentations.  Rather, Plaintiffs allege that Uber makes certain vague representations, which Plaintiffs fail to allege are even false.  *See, e.g.*, *supra* §§ I.A.1 (alleged misrepresentation of Uber's relationship with drivers), I.A.2 (alleged misrepresentation regarding insurance coverage, I.A.3 (alleged misrepresentation regarding safety), and I.A.4 (alleged misrepresentation regarding pricing).  Finally, Plaintiffs misguidedly base their claim on Uber's allegedly "fraudulent" representations of affiliation with Plaintiffs.   Opp. at 37.  Plaintiffs contend, however, that these representations occur when one of Plaintiffs' vehicles appears "*subsequent* [to a] request."  *Id.* (emphasis added).  Such conduct logically cannot be fraudulent because that so-called "representation of affiliation" cannot be material, as it does not occur until *after* the request has been made.

Further, for the reasons articulated *supra* in §§ I.A and I.B., Plaintiffs have failed to allege any misrepresentations by Uber, and therefore, Plaintiffs also fail to allege that Uber has engaged in even a single act of wire fraud.  *See A. Terzi Prods., Inc. v. Theatrical Protective Union*, 2 F. Supp. 2d 485, 499 (S.D.N.Y. 1998) (A scheme to defraud requires 'fraudulent or deceptive means, such as material misrepresentation or concealment.'") (quoting *Center*

24

*Cadillac, Inc. v. Bank Leumi Trust Co.*, 808 F. Supp. 213 (S.D.N.Y. 1992), *aff'd*, 99 F.3d 401 (2d Cir. 1995)).

Even if Plaintiffs had pled misrepresentations, Plaintiffs' allegations would still fail to plead wire fraud because they have not pled a "scheme to defraud," a required element of wire fraud. *Plainville Elec. Prods. Co. v. Vulcan Advanced Mobile Power Sys., LLC*, 638 F. Supp. 2d 245, 251 (D. Conn. 2009) (quoting *S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996)). A scheme to defraud "has been described as a plan to deprive a person 'of something of value by trick, deceit, chicane or overreaching.'" *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000). False advertising is not equivalent to a "scheme to defraud." As Plaintiffs acknowledge, Uber provides a transportation request service that consumers in Connecticut use to obtain transportation. Uber is not, therefore, "depriv[ing]" its users "of something of value by trick [or] deceit," *id.*, it is providing a valuable service to its users. And even if Plaintiffs had properly alleged certain of Uber's marketing representations are false, which they did not, that cannot transform Uber's entire service into a "scheme to defraud." Wire fraud simply has no application to the facts pled here.[16]

This Court, therefore, should dismiss all three of Plaintiffs' RICO claims for failure to plead wire fraud.

---

[16]   *See, e.g.*, *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, No. 14-CV-121 JPO, 2014 WL 6077247, at *14 (S.D.N.Y. Nov. 14, 2014) (finding no scheme to defraud based on defendants' website content, because even if the content was allegedly "illegal," there was no element of deception); *Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612, 630 (S.D.N.Y. 2006) (rejecting argument that defendants' marketing materials were predicate acts of mail and wire fraud simply because in violation of federal law); *In re Trilegiant Corp., Inc.*, No. 3:12-CV-00396 VLB, 2014 WL 1315244 (D. Conn. Mar. 28, 2014) (holding that a practice was not inherently "fraudulent" simply because members of Congress had labeled it "improper"); *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 511 (E.D.N.Y. 2011) (holding that payroll checks sent to plaintiffs for amounts that allegedly violated the Fair Labor Standards Act did not further any scheme to defraud).

**B.    Plaintiffs Have Failed To State A Claim Under RICO's "Use Or Invest" Provision, Section 1962(a).**

As Uber noted in support of its Motion, Plaintiffs' allegations that Uber's alleged investment of its alleged racketeering income back into itself "to expand [its] network of vehicles," Am. Compl. ¶¶ 91–92, are insufficient to state a claim under § 1962(a) because that is merely an allegation of a RICO violator [person] reinvesting its racketeering proceeds back into the same RICO enterprise, and thus that the resultant injury is not due to the investment, but due to the racketeering activity itself.  Mot. at 31–32 (citing cases).  In response, Plaintiffs assert that Uber is not the alleged RICO enterprise, the so-called transportation system is.  Opp. at 41.  That does not salvage Plaintiffs' argument.  Plaintiffs' failure to plead a § 1962(a) claim is not due to Plaintiffs' failure to identify a distinct RICO "person" and RICO "enterprise."[17]  Rather, it is due to the fact that Plaintiffs "ha[ve] not alleged 'investment injury' distinct from the injuries it sustained as a result of the predicate acts."  *Allstate Ins. Co. v. Seigel*, 312 F. Supp. 2d 260, 272 (D. Conn. 2004).  Plaintiffs' Amended Complaint does not include any allegations that their alleged injuries resulting from Uber's alleged § 1962(a) violation are distinct from their alleged injuries resulting from Uber's alleged racketeering activity.  Plaintiffs describe the former as the "diver[sion of] business from licensed and legally operating taxicab and livery vehicles that are managed by the Plaintiffs, [which] caus[es] substantial economic injury to the Plaintiffs."  Am. Compl. ¶ 92.  Plaintiffs describe the latter in a nearly identical way.  Opp. at 36 (Uber's alleged racketeering activity is "for the purpose of profiting at the expense of lawfully operating taxicab and livery companies, thereby simultaneously undermining and exploiting the Connecticut taxicab and livery infrastructure").  "Because [Plaintiffs] ha[ve] not alleged 'investment injury' distinct from the injuries [they] sustained as a result of the predicate acts, the Court [should] grant [Uber's] motion to dismiss [Plaintiffs'] § 1962(a) claim against [it]."  *Allstate*, 312 F. Supp. 2d at 272.

---

[17]    Such a requirement does exist for other RICO subsections, however.

Further, Plaintiffs fail to distinguish Uber's authority establishing that the enterprise in a § 1962(a) claim must be the "victim" of the unlawful activity, not its perpetrator.  Mot. at 31–32.  Yet Plaintiffs' § 1962(a) claim fails to allege that Uber had led an enterprise that has taken over some legitimate business, and Plaintiffs therefore fail to state a claim under that subsection for that reason as well.

### C.  Plaintiffs Have Failed To State A Claim Under RICO's "Interest In Or Control Over" Provision, Section 1962(b).

Faced with Uber's argument that Plaintiffs' alleged § 1962(b) RICO enterprise, the "legally operating taxicab authorities in Connecticut," Am. Compl. ¶ 96, is not properly alleged, Plaintiffs once again resort to fabricating allegations that directly contradict those in the Amended Complaint.

Uber established that Plaintiffs either failed to allege the existence of an enterprise, or at best alleged that the enterprise at issue consisted of the entire transportation system in Connecticut, including Uber and Plaintiffs.  Mot. at 32–33.  In their Opposition, Plaintiffs now claim that the "enterprise" consists of Uber and the independent-contractor drivers who use Uber's software to receive requests for transportation.  Opp. at 41–42.  But that theory is nowhere to be found in the Amended Complaint.  To support their claim that the enterprise consists of Uber and drivers who use Uber, Plaintiffs cite Paragraphs 5, 9, 32–40, and 91 of the Amended Complaint, none of which define the "enterprise" at issue here.[18]  *Id.* at 41.

The theory actually expressed in the Amended Complaint—distinct from Plaintiffs' arguments in their Opposition—is that the enterprise consists of the entire transportation system in Connecticut, including Plaintiffs.  Am. Compl. ¶ 96 (alleging Uber is "increasing its control of the legally operating taxicab authorities in Connecticut); ¶ 98 (alleging "[b]y exercising an increasing level of control over the taxicab and livery operations of the Plaintiffs . . ., the Defendants are causing substantial economic harm to the Plaintiffs"); ¶ 100 (alleging defendants

---

[18]  Am. Compl. ¶¶ 5, 9 (identifying plaintiffs), ¶¶ 32–40 (describing Uber's alleged operations); ¶ 91 (alleging Defendants use RICO income in ongoing operations).

"have participated in the business of the Plaintiffs and their drivers by means of racketeering conduct").  But as Uber noted in support of its Motion, that purported enterprise, which consists only of "[c]ompetitors in the same market who independently engaged in similar types of" activity, without more, cannot be an 'enterprise' under RICO."  Mot. at 33 (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 375 (3d Cir. 2010)) (internal quotation marks omitted).  Plaintiffs' failure to adequately allege a RICO enterprise alone is fatal to their § 1962(b) claim.

In addition, similar to Plaintiffs' failure with respect to their § 1962(a) claim, Plaintiffs fail to allege any injury from Uber's alleged violation of § 1962(b) that is distinct from Uber's alleged wire fraud activity.  Mot. at 34.  Plaintiffs attempt to recover from this, once again, by naming an "enterprise" that is not identified anywhere in the actual Amended Complaint, Opp. at 43, but that does Plaintiffs no good.  Even with that change, the harm Plaintiffs allegedly suffer from the underlying racketeering activity does not differ from the harm Plaintiffs allegedly suffer from Uber's alleged violation of § 1962(b).  *Compare* Opp. at 36 (Uber's alleged racketeering activity is "for the purpose of profiting at the expense of lawfully operating taxicab and livery companies, thereby simultaneously undermining and exploiting the Connecticut taxicab and livery infrastructure"); *with* Opp. at 43–44 (Uber's increased "control" over the alleged enterprise "detracts directly from Plaintiffs' businesses, and "[i]ncreased presence and demand of the enterprise controlled by Uber necessarily detracts from the demand for Plaintiffs' services.").  Plaintiffs' failure to allege an injury due to Uber's alleged § 1962(b) violation that is distinct from Uber's alleged racketeering activity alone is fatal to Plaintiffs' § 1962(b) claim, and so this Court should dismiss it on that basis alone.

### D.  Plaintiffs Fail To State A Claim Under Section 1962(c).

In order to state a claim under section 1962(c), a plaintiff must allege the existence of a RICO "person" that is distinct from the RICO "enterprise."  *See, e.g., Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013).  As discussed above, and as Uber established in its

Motion, Plaintiffs failed to plead even the *existence* of a proper RICO enterprise, much less that the enterprise is distinct from the RICO person.  Mot. at 32–36.

Uber also established that Plaintiffs failed to plead that Uber's alleged "wire fraud" proximately caused their alleged injuries, relying primarily on the Supreme Court's opinion in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), which held that a plaintiff's lost market share was too attenuated from the defendant's alleged tax fraud.  Mot. at 36–39.  Although the defendant's tax fraud allegedly allowed it to save money, then lower its prices and steal market share from the plaintiff, there were too many steps in the causal chain to establish proximate cause, and the direct victim was the State of New York, not plaintiff.  *Anza*, 547 U.S. at 458–60.

Plaintiffs fail to convincingly distinguish *Anza*.  Plaintiffs first acknowledge, as they must, that difficulty in calculating damages weighs against establishing proximate cause.  Opp. at 46; *Anza*, 547 U.S. at 459 ("The element of proximate causation recognized in Holmes is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation.").  Then Plaintiffs cite to *Republic of Colombia v. Diageo N. Am. Inc.*, 531 F. Supp. 2d 365, 435–36 (E.D.N.Y. 2007), which held that although ascertaining what losses were caused by the defendant would be difficult, the RICO claim should proceed.  The court relied heavily on the fact that "there is no person who has been injured more directly than Plaintiffs."  *Id.* at 436.  That is a critical factor that distinguishes *Diageo* from Plaintiffs' allegations in this case.  Here, Plaintiffs claim that Uber is defrauding Connecticut consumers, and if that is true, the consumers are the direct victims of Uber's alleged fraud, and Plaintiffs are not the proper parties to assert this claim.  *Anza*, 547 U.S. at 460 (stating "requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can" assert a claim).  "There is no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly."  *Id.*[19]

---

[19]   Plaintiffs cite *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649 (2008) for the proposition that a person can be injured by mail fraud even if he has not relied on any misrepresentations.  Opp. at 48.  While that may be true in some cases, for the reasons discussed, the causal chain between Uber's alleged misrepresentations and Plaintiffs' injuries is far too

Plaintiffs also argue that because they operate in "closed market," that it is easier to trace their losses to Uber's conduct.  Opp. at 47.  That is false for a number of reasons.  First, the "closed market" allegation is not in the Amended Complaint and should be disregarded when considering whether Plaintiffs have pled proximate cause.  Second, Plaintiffs' argument is a vast over simplification of their claim, and their argument that any ride that goes to a driver using Uber should go to one of the Plaintiffs does not reflect reality or their allegations.  Opp. at 47.  There are other taxicab companies beyond the Plaintiffs in this case, and a ride requested through Uber could have gone to a taxicab company not involved in this lawsuit.  Further, users of Uber who never would have chosen a taxicab cannot be counted as part of Plaintiffs' losses.

Complicating matters further, Plaintiffs' base their § 1962(c) claim on allegations of wire fraud in the form of misrepresentations to consumers, and analyzing whether a particular alleged misrepresentation to a consumer caused Plaintiffs' damages is a hopelessly complex task.  Another district court declined to sustain similarly situated plaintiffs' nearly identical § 1962(c) claim against Uber for that very reason.  *Boston Cab Dispatch, Inc. v. Uber Technologies, Inc.*, No. CIV.A. 13-10769-NMG, 2015 WL 314131, at *8 (D. Mass. Jan. 26, 2015) (dismissing claim under § 1962(c) due to the plaintiffs' failure to allege that Uber's alleged misrepresentations "caused them direct injury" and the fact that "the direct victims of the alleged fraud are capable of pursuing their own claims").  Even assuming Plaintiffs have properly alleged Uber made a misrepresentation to consumers, Plaintiffs must allege that the misrepresentation is what caused their harm.  But if the consumers never saw the representation, or if the consumers saw an alleged representation—for example, a marketing claim that Uber complies with all regulations—but the representation was not material to the consumers' choice to use Uber, then the alleged misrepresentation cannot have caused Plaintiffs' damages.  In other words, Plaintiffs

---

remote, and nothing like the direct causal chain at issue in *Bridge*, which involved defendants who rigged bids on property tax liens to prevent plaintiffs from also bidding on the same liens. *Bridge*, 553 U.S. at 642–44.

have not alleged any basis for distinguishing between rides requested through Uber that occurred because of alleged misrepresentations and rides requested through Uber that would have occurred regardless of any misrepresentations.[20]  Nor have they alleged facts showing that if the alleged misrepresentations ceased, that consumers would stop using Uber's application and Plaintiffs' alleged damages would disappear.[21]  Mot. at 39; *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (holding RICO plaintiff must alleged "but for" causation and proximate causation).

**VI.  The Court Should Dismiss Or Stay This Case Under The Doctrine of Primary Jurisdiction.**

In its Motion, Uber argued that because all of Plaintiffs' claims depend on the resolution of issues that are within the special competence of an administrative body, and are, in fact, currently being examined by the Connecticut General Assembly and the Connecticut Department of Transportation, this case should be dismissed or stayed under the doctrine of primary jurisdiction.  Mot. at 39–42.  In response, Plaintiffs claim that that argument "was already flatly rejected by another district court presented with the issue in the same context."  Opp. at 50 (citing *Boston Cab Dispatch, Inc. v. Uber Technologies, Inc.*, No. CIV.A. 13-10769-NMG, 2014 WL 1338144, at *26 (D. Mass. Feb. 28, 2014), *report and recommendation adopted in part, rejected in part*, No. CIV.A. 13-10769-NMG, 2014 WL 1338148 (D. Mass. Mar. 27, 2014)). That is incorrect.  As an initial matter, the passage Plaintiffs cite is from a report and recommendation of the magistrate judge to which Uber's motion to dismiss was referred, and the specific recommendation Plaintiffs characterize as "flatly reject[ing]" Uber's argument was, in

---

[20]   An additional layer that defeats proximate cause is that the taxi fares go to the drivers and not to the Plaintiffs directly, Am. Compl. ¶ 85(i), so Plaintiffs would have to somehow link their drivers' lost revenue to Plaintiffs' lost lease or rental revenue.

[21]   Plaintiffs argue that "Uber would not be able to obtain its volume of customers" if it ceased its alleged misrepresentations.  Opp. at 49.  But this allegation is nowhere in the Amended Complaint and defies common sense.  People choose to use Uber because it is more convenient than requesting transportation through other means, not because of Plaintiffs' alleged misrepresentations.

fact, rejected by the district judge.  2014 WL 1338148, at *7 (rejecting magistrate's recommendation not to dismiss Lanham Act § 43(a)(1)(A) claim).

Further, Plaintiffs do little more than contend, citing no authority, that they are not suing to enforce regulations but are suing to enforce their rights.  Opp. at 50.  Even a cursory reading of the Amended Complaint, however, leaves no doubt that its gravamen is that Uber is being allowed to ignore regulations that otherwise apply to Plaintiffs, and thereby avoiding the costs of compliance with such regulations.  While Plaintiffs may claim otherwise, it is apparent that their true goal is to impose the costs of complying with those rules and regulations on Uber through private litigation.  But whether and how such regulation does or should apply to the technology-based services provided by Uber is a quintessentially regulatory function, particularly where, as here, the expertise of agencies like the Departments of Transportation and Motor Vehicles is in play.

The Court should decline Plaintiffs' invitation to determine whether Connecticut's taxicab regulations apply to a technology company like Uber where that exact question is pending before the Connecticut regulators.  As evidenced by the recent report commissioned by the Connecticut Department of Transportation, the issue of whether these regulations apply to a company like Uber is under debate and examination.[22]  More specifically, the report concludes by outlining several regulatory options that include doing nothing and maintaining the status quo two tier system or creating a "separate or hybrid system of regulations to address the unique aspect of" technology companies like Uber.  Patel Decl, Ex. A, at 39.  Considering the substantial legislative and regulatory activity currently underway, the issues presented by this action are best reposed in the hands of the regulators.

This Court should, therefore, exercise its discretion to dismiss or stay this action in its entirety.

---

[22]   A copy of the report is attached hereto as Exhibit A to the Declaration of Amit B. Patel.

32

## CONCLUSION

For the foregoing reasons, Uber respectfully requests that the Court dismiss the Amended Complaint with prejudice.

DEFENDANT
UBER TECHNOLOGIES, INC.

/s/ Kevin M. Smith
Kevin M. Smith (ct24774)
Melissa Fernandez (ct29519)
Wiggin and Dana, LLP
One Century Tower
265 Church Street
New Haven, Connecticut 06510
Tel: (203) 498-4400
Fax: (203) 782-2889
ksmith@wiggin.com
mfernandez@wiggin.com

Stephen A. Swedlow (*pro hac vice*)
Amit B. Patel (*pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Tel: (312) 705-7400
Fax: (312) 705-7401
stephenswedlow@quinnemanuel.com
amitbpatel@quinnemanuel.com

Arthur M. Roberts (*pro hac vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
50 California St., 22nd Floor
San Francisco, California 94111
Tel: (415) 875-6600
Fax: (415) 875-6700
arthurroberts@quinnemanuel.com

## CERTIFICATE OF SERVICE

I hereby certify that, on March 9, 2015, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Kevin M. Smith
Kevin M. Smith (ct24774)
Wiggin and Dana, LLP
One Century Tower
265 Church Street
New Haven, Connecticut  06510
Tel: (203) 498-4400
Fax: (203) 782-2889
Email: ksmith@wiggin.com